1   **NOT FOR PUBLICATION**
2
3                    **UNITED STATES DISTRICT COURT**
4                  **FOR THE DISTRICT OF NEW JERSEY**
5
6   _____
7                                          )
8   IN RE FORD MOTOR CO. E-350              )        Civ. No. 03-4558 (HAA)
9   VAN PRODUCTS LIABILITY                  )        MDL 1687
10  LITIGATION (NO. II)                     )
11  _____)        **OPINION & ORDER**
12
13  Daniel R. Lapinski, Esq.
14  Kevin P. Roddy, Esq.
15  Jennifer Sarnelli, Esq.
16  WILENTZ, GOLDMAN & SPITZER P.A.
17  90 Woodbridge Center Drive, Suite 900
18  Woodbridge, New Jersey 07095
19
20  Ira Press, Esq.
21  KIRBY MCINERNEY, LLP
22  825 Third Avenue, 16th Floor
23  New York, New York 10022
24  *Attorneys for Plaintiffs*
25
26  C. Scott Toomey, Esq.
27  Diane L. Scialabba, Esq.
28  CAMPBELL CAMPBELL EDWARDS & CONROY, P.C.
29  3 South Broad Street, Suite 2C
30  Woodbury, New Jersey 08096
31
32  Garrett W. Wotkyns, Esq.
33  S. Bradley Perkins, Esq.
34  O'MELVENY & MYERS LLP
35  1625 Eye Street, N.W.
36  Washington, D.C. 20006
37
38  James D. Smith, Esq.
39  Meridyth M. Andresen
40  BRYAN CAVE LLP
41  Two North Central Avenue, Suite 2200
42  Phoenix, Arizona 85004
43  *Attorneys for Defendant*

TABLE OF CONTENTS

I.    BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.   ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
      A.   Choice of Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
      B.   Presence of an Express Warranty. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
      C.   Express and Implied Warranties: Pre-Litigation Notice. . . . . . . . . . . . . . . . 11
           1.    Alabama. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
           2.    Arkansas. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
           3.    California. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
           4.    Illinois. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
      D.   Express and Implied Warranties: Actual Injury. . . . . . . . . . . . . . . . . . . . . . 26
           1.    California. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
           2.    New Jersey. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
      E.   Express and Implied Warranties: Time Bar. . . . . . . . . . . . . . . . . . . . . . . . . 31
      F.   Implied Warranty. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
           1.    Implied Warranty: Failure to Allege Lack of Merchantability. . . . . . 38
           2.    Implied Warranty: Durational Limitations. . . . . . . . . . . . . . . . . . . . 39
      G.   Unjust Enrichment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
      H.   State Consumer Fraud. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
           1.    Alabama. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
           2.    Arkansas. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
           3.    California. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
                 a.    The California UCL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
                 b.    The California FAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
                 c.    The California CLRA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
           4.    Illinois. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51
           5.    New Jersey . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

III.  CONCLUSION AND ORDER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

2

**ACKERMAN,** Senior District Judge:

Before the Court is a motion (Doc. No. 33) by Defendant Ford Motor Company ("Ford") to dismiss the Consolidated and Amended Class Action Complaint in this multidistrict litigation. For the reasons set forth below, Defendant's motion to dismiss will be granted in part and denied in part.

I.   BACKGROUND

On June 16, 2005, the Judicial Panel on Multidistrict Litigation ("MDL Panel") transferred five actions[1] to this Court for consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, 374 F. Supp. 2d 1353 (J.P.M.L. 2005). Following the transfer to this Court, Plaintiffs filed on January 1, 2006, a Consolidated and Amended Class Action Complaint ("Complaint"). In the Complaint, Plaintiffs allege that their Ford E-350 "15-passenger" vans are defectively designed due to a high center of gravity that leads to an unusually high rollover rate, and therefore an increased risk of death or injury. No Plaintiffs or members of the proposed class have actually suffered a rollover. Plaintiffs, however, claim economic harm because the alleged defect makes the E-350 vans unsuitable and unfit for transporting 15 passengers.

Plaintiffs bring the following causes of action: (1) breach of express warranty; (2) breach of implied warranty; (3) unjust enrichment; and (4) violation of state consumer fraud statutes.

---

[1] *New Bethlehem Baptist Church v. Ford Motor Co.*, No. 2:05-519 (N.D. Ala.); *Eleventh Street Baptist Church v. Ford Motor Co.*, No. 4:05-4020 (W.D. Ark.); *Greater All Nation Pentecost Church of Jesus Christ v. Ford Motor Co.*, No. 2:05-1765 (C.D. Cal.); *Pentecostal Temple Church of God in Christ v. Ford Motor Co.*, No. 1:05-1340 (N.D. Ill.); *Social Clubhouse, Inc. v. Ford Motor Co.*, No. 2:03-4558 (D.N.J.).

96      Specifically, Plaintiffs seek damages for the alleged diminution in value of their vehicles as a

97      result of the vehicles' alleged defects; the cost of purchasing or leasing additional vehicles and of

98      training drivers; equitable relief requiring Ford to correct the alleged defect and enjoining Ford

99      from selling any more extended passenger vans unless the alleged defect is corrected; restitution;

100      disgorgement of revenues; and applicable statutory damages.

101          The Complaint asserts claims on behalf of eight named Plaintiffs, including: New

102      Bethlehem Baptist Church (Alabama) ("New Bethlehem"), Eleventh Street Baptist Church

103      (Arkansas) ("Eleventh Street"), Greater All Nation Pentecost Church of Jesus Christ (California)

104      ("Greater All Nation"), Pentecostal Temple Church (Illinois) ("Pentecostal"), Faith Tabernacle

105      Church (New Jersey) ("Faith Tabernacle"), Macedonia Free Will Baptist Church (New Jersey)

106      ("Macedonia Free Will"), Greater Holy Trinity Baptist Church (New Jersey),[2] and Social

107      Clubhouse, Inc. (New Jersey).  The Complaint also asserts claims on behalf of a putative

108      nationwide class that includes: "all persons and entities who purchased or otherwise lawfully

109      acquired E350 '15-passenger' vans (a/k/a E350 Super Club Wagons, Econoline '15-passenger'

110      vans, or E350 Super Duty Extended Length passenger vans) manufactured by Defendant Ford

111      Motor Company . . . model years 1991-2005, and who reside in the fifty states and/or the District

112      of Columbia."  (Compl. ¶ 1.)  This class includes persons or entities who purchased new or used

113      vans between January 1, 1991 and the date of the filing of the Complaint, inclusive.  The

114      proposed class, however, specifically excludes those who claim damages for personal injury as a

115      result of purchasing or leasing a Ford E350 van.  (Compl. ¶ 63.)

116

117

---

[2] On May 4, 2007, Greater Holy Trinity Baptist Church voluntarily dismissed its lawsuit.

118    **II.    ANALYSIS**

119         Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint, or a

120    count therein, for failure to state a claim upon which relief may be granted.  In evaluating a

121    motion to dismiss pursuant to Rule 12(b)(6), the court "must accept as true all well-pleaded

122    allegations of the complaint[] and construe them liberally in the light most favorable to the

123    plaintiffs." *Labov v. Lalley*, 809 F.2d 220, 221 (3d Cir. 1987).  "While a complaint attacked by a

124    Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation

125    to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions,

126    and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v.*

127    *Twombly*, – U.S. –, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).  A complaint

128    must contain "enough facts to state a claim to relief that is plausible on its face," and the

129    "[f]actual allegations must be enough to raise a right to relief above the speculative level on the

130    assumption that all the allegations in the complaint are true." *Twombly*, 127 S. Ct. at 1965, 1974.

131    A court need not accept "'unsupported conclusions and unwarranted inferences,'" *Baraka v.*

132    *McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res., Inc. v. Pa. Power*

133    *& Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), and "[l]egal conclusions made in the guise of

134    factual allegations . . . are given no presumption of truthfulness," *Wyeth v. Ranbaxy Labs., Ltd.*,

135    448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

136         As a general rule, a court "may only consider the pleading which is attacked by an FRCP

137    12(b)(6) motion in determining its sufficiency."  *Pryor v. NCAA*, 288 F.3d 548, 560 (3d Cir.

138    2002).  However, a court "may consider documents which are attached to or submitted with the

139    complaint, as well as legal arguments presented in memorand[a] or briefs and arguments of

140    counsel." *Id.* (emphasis omitted).
141
142        **A.    Choice of Law**
143
144        At the outset, this Court must determine which law to apply to Plaintiffs' claims.  When a

145    federal court is called upon to decide matters of state law, it must apply the choice-of-law rules of

146    the state in which its sits.  *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  "New

147    Jersey choice of law principles require an interest analysis, in which the forum court compares

148    the interests of the states whose laws are potentially involved in the underlying action and

149    determines which state has the greatest interest in having its law applied."  *In re Ford Motor Co.*

150    *Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 347-48 (D.N.J. 1997) (citing *Gantes v.*

151    *Kason Corp.*, 145 N.J. 478 (1996)).

152        Ford maintains that the laws of each Plaintiff's home state must be applied because those

153    states have interests that outweigh the interests of any one state, such as Michigan, where the

154    E350s were designed and manufactured.  In their pleading, Plaintiffs assert that "all 50 states and

155    the District of Columbia" provide consumer protection laws, but in the alternative, Plaintiffs

156    plead, if any one jurisdiction's law applies, that it is Michigan, "the state in which Ford is

157    headquartered."  (Compl. ¶¶ 73, 96.)  In their brief, Plaintiffs do not otherwise seriously contest

158    Ford's choice of law argument, citing law from all five jurisdictions where Plaintiffs reside in

159    discussing Plaintiffs' claims on the merits.

160        The Court agrees with Ford.  As another court in this District determined upon similar

161    facts:

162            Each plaintiff's home state has an interest in protecting its consumers
163            from in-state injuries caused by foreign corporations and in
164            delineating the scope of recovery for its citizens under its own laws.

165          These interests arise by virtue of each state being the place in which
166          plaintiffs reside, or the place in which plaintiffs bought and used their
167          allegedly defective vehicles or the place where plaintiffs' alleged
168          damages occurred.

169

170          While it might be desirable, for the sake of efficiency, to settle upon
171          one state – like Michigan or New Jersey – and apply its laws in lieu
172          of the other 49 jurisdictions, due process requires individual
173          consideration of the choice of law issues raised by each class
174          member's case before certification. Since the laws of each of the fifty
175          states vary on important issues that are relevant to plaintiffs' causes
176          of action and defendants' defenses, the court cannot conclude that
177          there would be no conflict in applying the law of a single jurisdiction,
178          whether it be Michigan, or New Jersey, as the plaintiffs suggest.
179          Thus, the court will apply the law of each of the states from which
180          plaintiffs hail.

181

182  *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. at 348. Similarly, this

183  Court concludes that the states in which the plaintiffs reside have a greater interest in the

184  underlying litigation than Michigan or any one state. The named plaintiffs bringing the

185  Complaint are residents of Alabama, Arkansas, California, Illinois, and New Jersey. Except

186  where there is no material difference, the Court "will apply the law of those states to determine

187  whether the causes of action brought by these named plaintiffs are legally cognizable." *In re*

188  *Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, Nos. 96-3125, -1814, -3198, 2001 WL

189  1266317, at *5 (D.N.J. Sept. 30, 1997).

190        **B.**     **Presence of an Express Warranty**

191       In the First Cause of Action of their Complaint, Plaintiffs allege breach of express

192  warranty under UCC § 2-313, as codified by each of the states at issue. According to Plaintiffs,

193  with each sale of an E350 van, Ford expressly warranted by its representations that the van could

194  "legally and practically" accommodate "15-passenger[s.]" (Compl. ¶ 78.) In turn, Ford breached

195   its warranty by selling a defective vehicle which could not safely transport 15 passengers.  (*Id.* ¶

196   79.)

197          In the instant motion to dismiss, Ford asserts that Plaintiffs have failed to properly allege

198   the existence of any specific statement or affirmation that could support an express warranty

199   claim.  Ford argues that many of the statements that Plaintiffs allege were made by Ford occurred

200   after Plaintiffs had already purchased their respective vehicles, and thus could not have formed

201   the basis for Plaintiffs' respective bargains.  Although Plaintiffs cite many of Ford's

202   advertisements and public statements, Ford insists that such advertisements could not create

203   express warranties.  In particular, Ford argues that its statements that the E350 van "is a very safe

204   vehicle," and that the E350 van is "America's Most Trustworthy" constitute "classic examples of

205   non-actionable opinion," or puffing.  (Def.'s Br. at 16.)  Notably, Plaintiffs do not suggest

206   otherwise.  And courts have routinely deemed such statements non-actionable.  *See, e.g.*,

207   *Lithuanian Comm. Corp., Ltd. v. Sara Lee Hosiery*, 214 F. Supp. 2d 453, 459 (D.N.J. 2002)

208   ("[I]n contracts for the sale of goods governed by New Jersey's U.C.C., a seller's statement about

209   the value of goods cannot create a warranty."); *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399

210   (E.D. Cal. 1994) ("Advertising that amounts to 'mere' puffery is not actionable because no

211   reasonable consumer relies on puffery."); *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d

212   801, 847 (Ill. 2005) ("Describing a product as 'quality' or as having 'high performance criteria'

213   are the types of subjective characterizations that Illinois courts have repeatedly held to be mere

214   puffing."); *Mason v. Chrysler Corp.*, 653 So.2d 951, 953-54 (Ala. 1995) (holding that a national

215   advertising campaign referring to a vehicle's quality engineering, reliability and smooth riding

216   was puffing); *Cornish v. Friedman*, 126 S.W. 1079, 1083 (Ark. 1910) ("[M]ere words of praise

217    and commendation or which merely express the vendor's opinion, belief, judgment, or estimate,

218    do not constitute a warranty.").

219           Plaintiffs, however, do not concede Ford's argument in full.  Instead, Plaintiffs pin their

220    express warranty claim on Ford's purported "core description" of the E350 van as a "15-

221    passenger van."  Plaintiffs argue that "Ford does not deny that it advertised, described and

222    labeled the E350 as a 15-passenger van . . . .  Indeed, Ford, simply by the act of outfitting the

223    E350 with seats for fifteen passengers, expressly warrants that the van is in fact capable of

224    transporting 15 passengers."  (Pls.' Br. at 9.)  Because the E350 vans "could not safely carry 15

225    passengers," Plaintiffs argue, Ford's express warranty that the vehicles were "15-passenger" vans

226    was breached.

227           Section 2-313 of the UCC recognizes three general classes of statements or

228    representations by which a seller may create an express warranty:

229               (a)     Any affirmation of fact or promise made by the seller to the
230                         buyer which relates to the goods and becomes part of the
231                         basis of the bargain creates an express warranty that the goods
232                         shall conform to the affirmation or promise.
233               (b)     Any description of the goods which is made part of the basis
234                         of the bargain creates an express warranty that the goods shall
235                         conform to the description.
236               (c)     Any sample or model which is made part of the basis of the
237                         bargain creates an express warranty that the whole of the
238                         goods shall conform to the sample or model.
239

240    *See* Ala. Code § 7-2-313(1); Ark. Code Ann. § 4-2-313(1); Cal. Com. Code § 2313(1); Ill. Comp.

241    Stat. Ann. § 5/2-313(1); N.J.S.A. § 12A:2-313(1).  Importantly, under the UCC, "[i]t is not

242    necessary to the creation of an express warranty that the seller use formal words such as 'warrant'

243    or 'guarantee' or that he have a specific intention to make a warranty."  *See, e.g.*, N.J.S.A. §

244   12A:2-303(2).  However, "an affirmation merely of the value of the goods or a statement

245   purporting to be merely the seller's opinion or commendation of the goods does not create a

246   warranty."  *Id.*

247   Plaintiffs sufficiently allege that Ford's description of the E350 as a "15-passenger" van

248   constitutes an express warranty under UCC § 2-313.  First, accepting Plaintiffs' allegations as

249   true, Ford's representation that the E-350 van was capable of transporting 15 people was not a

250   subjective statement relating to the good's value, but rather an objective representation

251   warranting the van's design and safety.  Second, this Court observes that whether a given

252   statement constitutes an express warranty is normally a question of fact for the jury.  *See Betaco,*

253   *Inc. v. Cessna Aircraft Co.*, 32 F.3d 1126, 1130 (7th Cir. 1994) ("[Defendant] does not challenge

254   the jury's determination that [its] representation as to the relative range of the CitationJet

255   constituted an express warranty."); *Union Ink Co., Inc. v. AT&T Corp.*, 352 N.J. Super. 617, 645

256   (App. Div. 2002) ("Whether the advertisements contained material misstatements of fact, or were

257   merely puffing, as alleged by defendants, presents a question to be determined by the trier of

258   fact."); *Lucky Mfg. Co. v. Activation, Inc.*, 406 So. 2d 900, 905 (Ala. 1981) (recognizing that jury

259   found express warranty as to written representation); *Greenman v. Yuba Power Products, Inc.*, 59

260   Cal. 2d 57, 60 (1963) ("The jury could also reasonably have concluded that statements in the

261   manufacturer's brochure . . . constituted express warranties"); *Cornish*, 126 S.W. at 1083

262   ("[W]hether a particular assertion is an affirmance of a positive fact, or, on the other hand, only

263   praise and commendation, opinion or judgment, is a question for the jury, where the meaning is

264   ambiguous, and the intention of the parties may be gathered from the surrounding

265   circumstances.") (citation omitted).

266        Here, several issues cannot be resolved on a motion to dismiss, including: whether Ford's

267 description of the E350 van as a "15-passenger" van or Ford's outfitting the vans with seats for

268 15 passengers independently supports an express warranty; if so, whether any such warranty was

269 the basis of the bargain between Plaintiffs and Ford; and whether Ford breached any such

270 warranty.  Therefore, this Court will deny Ford's motion to dismiss Plaintiffs' express warranty

271 claims.

272        **C.      Express and Implied Warranties: Pre-Litigation Notice**

273        Ford argues that the breach of express and implied warranty claims asserted by Plaintiffs

274 New Bethlehem (Alabama), Eleventh Street (Arkansas), Greater All Nation (California), and

275 Pentecostal Temple (Illinois) must be dismissed based upon Plaintiffs' failure to allege

276 compliance with the notice requirement of section 2-607(3)(a) of the Uniform Commercial

277 Code.[3]

278        Defendant asserts that the laws of Alabama, Arkansas, California, and Illinois require a

279 buyer, prior to the filing of a complaint, to notify a seller that there has been a breach; failure to

280 provide such notice serves as a bar to suit.  *See Hart v. Yamaha-Parts Distribs., Inc.*, 787 F.2d

281 1468, 1474 (11th Cir. 1986); *Fieldstone Co. v. Briggs Plumbing Prods. Inc.*, 62 Cal. Rptr. 2d

282 701, 708-709 (Cal. Ct. App. 1997); *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 590 (Ill.

283 1996); *Williams v. Mozark Fire Extinguisher Co.*, 888 S.W.2d 303, 305-06 (Ark. 1994); *Parker*

284 *v. Bell Ford, Inc.*, 425 So. 2d 1101, 1103 (Ala. 1983).

285        Nowhere in the Complaint does any Plaintiff plead that it provided direct notice of the

_____

[3] Defendants do not argue that the New Jersey Plaintiffs' claims suffer from the same
infirmity.

286     alleged breach to Defendant or any immediate seller of the vehicles.  However, according to

287     Plaintiffs, the pre-litigation notice requirements of the state statutes at issue were satisfied

288     because: (1) Ford had actual notice of the alleged defect of the E350 van model generally; (2)

289     Ford had constructive notice of the alleged defect based upon the filing of the complaint; (3)

290     Ford failed to allege any prejudice due to any lack of notice; and (4) the sufficiency of Plaintiffs'

291     notice is a question of fact not to be decided on a motion to dismiss.  (Pls.' Br. at 33-36.)  For the

292     reasons discussed below, this Court will grant Defendant's motion to dismiss for failure to plead

293     pre-litigation notice as to the Plaintiffs from Alabama, Arkansas and Illinois, but not as to the

294     California Plaintiff.  The breach of warranty claims that are dismissed are done so without

295     prejudice and with leave to amend.  If Plaintiffs from Alabama, Arkansas and Illinois can allege

296     that they provided pre-litigation notice to Ford in any way recognized under the respective laws

297     of those states, they may do so in an amended complaint.

298            The pre-litigation notice requirement stems from § 2-607(3) of the Uniform Commercial

299     Code, which provides: "Where a tender has been accepted (a) the buyer must within a reasonable

300     time after he discovers or should have discovered any breach notify the seller of breach or be

301     barred from any remedy."  This language has been adopted in the codes of each state at issue.

302     Ala. Code § 7-2-607(3)(a); Ark. Code Ann. § 4-2-607-(3)(a); Cal. Com. Code. § 2607(3)(A); 810

303     Ill. Comp. Stat. 5/2-607(3)(a).

304            The notice requirement of § 2-607(3)(a) is supported by a number of justifications, such

305     as to prevent stale claims, allow sellers to marshal evidence for a defense, and allow sellers to

306     correct the defect or mitigate damages.  *See Hobbs v. Gen. Motors Corp.*, 134 F. Supp. 2d 1277,

307     1283 (M.D. Ala. 2001); *Jackson v. Swift-Eckrich*, 830 F. Supp. 486, 491 (W.D. Ark. 1993);

308    *Goldstein v. G.D. Searle & Co.*, 62 Ill. App. 3d 344, 350 (Ill. App. Ct. 1978), *holding limited by*

309    *Bd. of Educ. of City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428, 462 (Ill. 1989); *Pollard v. Saxe*

310    *& Yolles Dev. Co.*, 525 P.2d 88, 92 (Cal. 1974).

311            With this background in mind, the Court first considers Plaintiffs' contention that direct

312    notice of the breach of warranty should be excused because Ford had actual notice of the alleged

313    defects of the E350 vans.  Specifically, Plaintiffs allege that Ford was "fully aware of the alleged

314    defect from the earliest stages of the E350's development, [and] was further warned by the NTSB

315    and NHTSA, to which agencies the Defendant gave extensive responses."  (Pls.' Br. at 33.)  To

316    be sure, Plaintiffs' Complaint alleges numerous occasions upon which Defendant likely became

317    aware of the possibility that its E350 vans contained design defects.  (Compl. ¶¶ 21-55.)  For

318    example, Plaintiffs allege that in April 2001, the NHTSA released a study that found that "'15-

319    passenger' vans manufactured and sold by Ford, when loaded with ten or more occupants,

320    exhibited a rollover rate in single vehicle crashes (crashes in which no other vehicle was

321    involved) that was nearly three times the rate of crashes involving vehicles that were 'lightly

322    loaded' (i.e., having just a driver and no passengers)."  (*Id.* ¶ 28.)  Plaintiffs also allege that in an

323    April 2002 recommendation to consumers, the NHTSA announced that 15-passenger vans should

324    be operated only by specially trained, experienced drivers, rather than ordinary or unskilled

325    drivers.  (*Id.* ¶ 31.)  According to Plaintiffs, Ford issued a September 5, 2002 press release in

326    response to this NHTSA recommendation in which Ford asserted that the E350 vans were "very

327    safe" vehicles, yet "warned its E350 van customers that 'it is important that 15-passenger vans be

328    operated by trained, experienced drivers,' that drivers should avoid 'sharp turns' and 'abrupt

329    maneuvers,' and that 'extra precautions should be taken.'"  (*Id.*)  Plaintiffs assert that on two

330  occasions in 2002, the alleged hazards of Ford's E350 vans were the subject of segments on the

331  television program "60 Minutes II." (*Id.* ¶¶ 38, 61.)  Based upon these alleged events, among

332  others, Plaintiffs insist that Defendant had actual, if not direct, notice of the alleged defects.

333      Plaintiffs contend that in a "majority of cases," actual notice sufficiently complies with

334  the notice requirement of UCC § 2-607(3).  (Pls.' Br. at 33 (citing James J. White & Robert S.

335  Summers, Uniform Commercial Code 611 n.1 (4th ed. 1995); U.C.C. § 1-201(25).)[4]  However,

336  whether there exists a majority or minority position regarding the purpose of the UCC's notice

337  requirement is of limited value.  This Court is not writing on a blank slate; it must canvas the

338  interpretation of the pre-litigation notice requirement in Alabama, Arkansas, California, and

339  Illinois.  As discussed above, choice-of-law analysis requires that this Court render a decision in

340  accordance with the prevailing law of the appropriate forum state.  Accordingly, the Court turns

341  to an analysis of the laws in the four states at issue.

342      **1.    Alabama**

343      This Court finds that Alabama Plaintiff New Bethlehem failed to comply with the notice

344  requirement.  Defendant asserts that New Bethlehem's warranty claims are barred because the

345  Complaint fails to allege compliance with Alabama Code § 7-2-607(3)(a), which describes a

346  buyer's obligation upon learning of a defect in a product he has accepted:

347      (3)    Where a tender has been accepted: (a) The buyer must within
348          a reasonable time after he discovers or should have
349          discovered any breach notify the seller of the breach or be
350          barred from any remedy[.]

351

352  Ala. Code § 7-2-607(3)(a).  The Alabama Supreme Court has recognized that, although this

---

[4] For this proposition, however, Plaintiffs cite no specific cases from, or applying the law of, Alabama, Arkansas, California, or Illinois.

14

353     provision "does not indicate what constitutes sufficient notice," the corresponding Committee

354     Comment states that "[t]he notification which saves the buyer's rights under this Article need

355     only be such as informs the seller that the transaction is claimed to involve a breach, and thus

356     opens the way for normal settlement through negotiation." *Jewell v. Seaboard Indus., Inc.*, 667

357     So.2d 653, 660 (Ala. 1995) (citing Ala. Code § 7-2-607 cmt. 4). The Court noted that UCC § 7-

358     1-201(26) "provides that a person 'notifies or gives a notice or notification to another by taking

359     such steps as may be reasonably required to inform the other in ordinary course whether or not

360     such other actually comes to know of it.'" *Id.* Further, "[t]he question of sufficient notice 'must

361     be tested in light of the facts of the particular case.'" *Id.*

362          The Alabama Supreme Court has recognized that pre-litigation notice, as required by

363     Alabama Code § 7-2-607(3)(a), is a "condition precedent to recovery" for a breach of warranty

364     action. *Parker*, 425 So. 2d at 1102; *see also Hart v. Yamaha-Parts Distribs., Inc.*, 787 F.2d

365     1468, 1474 (11th Cir. 1986) ("The Alabama courts have held that notice of breach is a condition

366     precedent to bringing a breach of warranty action . . . which must be affirmatively pleaded in the

367     complaint.") (citations omitted).

368          However, in certain circumstances, such as personal injury actions, the notice requirement

369     for asserting warranty claims has been abrogated by Alabama courts. *Hobbs*, 134 F. Supp. 2d at

370     1283 (citing *Simmons*, 368 So. 2d 509 (Ala. 1979)). The court's departure in certain

371     circumstances from strict enforcement of the UCC notice requirement evinces a policy on the

372     part of the Alabama Supreme Court to evaluate the underlying justifications for notice in a given

373     case. *See Hobbs*, 134 F. Supp. 2d at 1284. For example, according to the Alabama Supreme

374     Court, the policies which support the notice requirement are not applicable to personal injury

375    actions where "notice is inconsequential in preventing or mitigating the harm since the injury has

376    already occurred." *Simmons*, 368 So. 2d at 514.

377          Following a detailed discussion of the treatment by Alabama courts of the notice

378    requirement under § 7-2-607(3)(a), a district court in Alabama held in *Hobbs* that a breach of

379    warranty action against a car manufacturer was barred for failure to give timely notice.  The court

380    in *Hobbs* acknowledged that another district court in Alabama had previously determined "albeit

381    in dicta, that under Alabama law, if a plaintiff is a buyer, and not a third party beneficiary of a

382    consumer warranty, the plaintiff must notify the seller of an alleged breach of warranty before

383    being allowed to pursue a warranty action against the remote manufacturer."  *Id.* at 1286 (citing

384    *Snell v. G.D. Searle & Co.*, 595 F. Supp. 654 (N.D. Ala. 1984)).  Further distilling this idea, the

385    court in *Hobbs* determined that under Alabama law:

386              for remote manufacturers to be held liable for an unintentionally-
387              created express warranty, as are sellers under the UCC, remote
388              manufacturers should be afforded the same protections as sellers,
389              either by way of notice provided directly to them, or through notice
390              provided to them by the direct seller from the buyer.

391

392    *Id.* at 1285.  Therefore, the notice requirement applies to suits against car manufacturers, like

393    Defendant Ford in the instant matter, as it does to sellers.

394          Notably, the court recognized that the Alabama Supreme Court's decision in *Parker*

395    stands for the proposition that "in the context of economic harm rather than personal injury, the

396    filing of a lawsuit is not considered to be sufficient notice under Alabama law."  *Id.* at 1285

397    ("Notice must, therefore, precede the filing of the complaint."); *see also Rampey v. Novartis*

398    *Consumer Health, Inc.*, 867 So. 2d 1079, 1086 (Ala. 2003).  Hence, New Bethlehem's argument

399    that notice-by-suit is sufficient under Alabama's notice requirement is without merit.

400       The court in *Hobbs* recognized that as a general matter, "the issue of sufficiency of notice

401   is a question of fact for a jury to determine.  Where, however, no notice is given, there is no issue

402   of sufficiency for a jury to determine."  *Id.* (citing *Parker*, 425 So. 2d at 1103).  In other words,

403   where no form of notice recognized under Alabama law is given, the issue of *sufficiency* of

404   notice need not be determined by a jury; logically, no notice is insufficient notice.  *See id.* at 1286

405   n.3.  Thus, the issue remains one of law, not fact, and this Court may properly address the issue

406   of notice on the instant motion to dismiss.

407       As noted above, Plaintiff New Bethlehem also challenges a strict application of the notice

408   requirement under Alabama law where a defendant has "actual notice" of an alleged defect.

409   According to Plaintiff New Bethlehem, "[a]ll that is required is that the seller know that the

410   transaction is still troublesome and must be watched."  (Pls.' Br. at 33-34 (internal quotation

411   marks omitted).)  There are several problems with Plaintiff's argument.  Plaintiff New Bethlehem

412   does not allege that Ford, or any immediate seller of its E350 van, knew that New Bethlehem's

413   specific "transaction" was "troublesome and must be watched."  Additionally, the statement that

414   "actual notice is sufficient to satisfy 2-607" is correct, but in a limited context.  After a careful

415   inspection of the treatise to which Plaintiff cites, and specifically the footnote in which the

416   authors suggest that a "majority of cases find actual notice to suffice," this Court is not persuaded

417   that the Alabama Supreme Court would recognize such an exception to the notice requirement as

418   Plaintiff New Bethlehem now pursues.  First, the authors rely on no Alabama case to support this

419   proposition.[5]  Second, in no case relied upon by the authors does a court hold that absent

---

[5] The authors also do not cite to any case from Arkansas or California to support this proposition.

17

420    knowledge of problems with the product of a specific transaction, a manufacturer's general

421    awareness of an alleged defect with a product line satisfies the notice requirement of § 2-

422    607(3)(a).  Recognition of "actual notice" as an exception to the notice requirement, in the cases

423    cited by the authors, and in every other case applying Alabama law of which this Court is aware,

424    is limited to situations where a seller has actual knowledge of the defect of the product sold in a

425    *particular transaction*, prior to the filing of a lawsuit.  Contrary to Plaintiffs' argument,

426    generalized knowledge of alleged defects in a product line has not been held to suffice.

427         Evidently, prior to filing suit, New Bethlehem took no steps to notify Defendant

428    regarding the alleged breach of warranties, or any problem it was having in connection with its

429    E350 van.  As such, Defendant was not "afforded the same protections" under the UCC as are

430    provided for sellers.  *See Hobbs*, 134 F. Supp. 2d at 1285.  Given its importance, this Court is not

431    persuaded that the Alabama Supreme Court would create an exception to the notice requirement

432    that exonerates plaintiffs from taking any affirmative steps to notify a seller that a particular

433    transaction is problematic prior to bringing a claim for breach of warranty.  Similarly, this Court

434    is not persuaded that the Alabama Supreme Court would waive the notice requirement where a

435    defendant does not allege prejudice.

436         Therefore, New Bethlehem's claims for breach of warranty will be dismissed without

437    prejudice.  If New Bethlehem can allege that it provided pre-litigation notice to Ford in any way

438    recognized under Alabama law, it may do so in an amended complaint.

439         **2.**    **Arkansas**

440         Defendant argues similarly that Arkansas Plaintiff Eleventh Street's warranty claims are

441    barred for failure to allege compliance with Arkansas Code § 4-2-607(3)(a), which provides that

18

442    a "buyer must within a reasonable time after he discovers or should have discovered any breach

443    notify the seller of breach or be barred from any remedy."  For the following reasons, this Court

444    agrees with Defendant and will dismiss without prejudice Eleventh Street's warranty claims.

445           Plaintiff Eleventh Street's argument that notice by complaint satisfies the notice

446    requirement under Arkansas law is without merit.  *See Williams v. Mozark Fire Extinguisher Co.*,

447    888 S.W.2d 303, 306 (Ark. 1994) ("[N]otice must be more than a complaint." ); *see also*

448    *Jackson,* 830 F. Supp. at 491 (W.D. Ark. 1993) (recognizing that although "notice need not be in

449    writing," it nevertheless "must be more than a complaint").  The more difficult question,

450    however, is whether the Supreme Court of Arkansas would recognize other exceptions to the pre-

451    litigation notice requirement, such as actual notice.  As a district court in Arkansas noted: "The

452    content of the notification need merely be sufficient to let the seller know that the transaction is

453    still troublesome and must be watched." *Jackson*, 830 F. Supp. at 491.  Here, the Court is unable

454    to evaluate the "content of the notification," *i.e.*, whether Eleventh Street included a claim for

455    damages, threatened litigation, or other resort to remedy, because Eleventh Street does not allege

456    that it provided Defendant with *any* notification.  Thus, prior to filing the Complaint, Plaintiffs

457    pursued no course of communication that would have "open[ed] the way for negotiation of a

458    normal settlement." *Id.*

459           In addition, the Arkansas Supreme Court has recognized that the purpose of the statutory

460    notice requirement for breach "is twofold." *Mozark Fire Extinguisher*, 888 S.W.2d at 306.

461    "First, it is to give the seller an opportunity to minimize damages in some way, such as by

462    correcting the defect.  Second, it is to give immunity to a seller against stale claims." *Id.* (citing

463    *L.A. Green Seed*, 438 S.W.2d at 720).  Although the seller in *Mozark Fire Extinguisher* could no

464    longer minimize damages because the system was destroyed, the Court noted that the "other

465    statutory purpose," *i.e.*, immunity against stale claims, "is present." *Id.*  Thus, the Court declined

466    to ignore the statutory requirement.  *See id.*

467         Here, unlike the destroyed fire extinguishing system in *Mozark Fire Extinguisher*,

468    Eleventh Street alleges no comparable injuries to itself as a result of the E350 vans' alleged

469    defect.  Therefore, the first statutory purpose recognized by the Arkansas Supreme Court –

470    providing a seller an opportunity to minimize damages in some way, such as by correcting the

471    defect – remains present.  Although the notice requirement under Arkansas law is "not stringent,"

472    *Jackson*, 830 F. Supp. at 491, for similar reasons as discussed above with respect to Alabama

473    law, this Court is not persuaded that the Arkansas Supreme Court would adopt an exception

474    based on a manufacturer's general awareness of the alleged warranty breaches for an entire line

475    of products.  This Court is aware of no case applying Arkansas law that requires, or even

476    suggests, such an application of the statutory notice requirement of § 4-2-607(3)(a).  Likewise,

477    this Court is not persuaded that the Arkansas Supreme Court would waive the notice requirement

478    where a defendant does not allege prejudice.

479         Plaintiff Eleventh Street also asserts that the question of sufficiency of notice "for

480    purposes of § 4-2-607(3)(a), is a question of fact, inappropriate to be decided on a motion to

481    dismiss."  (Pls.'s Br. at 35 (citing *Jackson*, 830 F. Supp. at 491).)  But, as discussed above, where

482    a plaintiff alleges no pre-litigation notice at all, the issue of the notice's sufficiency is moot and

483    appropriately can be decided as a matter of law at this stage.  Eleventh Street's claims for breach

484    of warranty will be dismissed without prejudice.

485         **3.    California**

486              Under California Commercial Code § 2607(3)(A), a "buyer must, within a reasonable

487    time after he or she discovers or should have discovered any breach, notify the seller of breach or

488    be barred from any remedy."  In certain circumstances, the Supreme Court of California has

489    excused the notice requirement.  For instance, in *Greenman v. Yuba Power Products*, a plaintiff

490    who had been injured while using a power tool brought claims for breach of warranty against the

491    retailer and manufacturer of the tool.  377 P.2d 897, 888 (Cal. 1963).  The injured plaintiff

492    actually provided the retailer and manufacturer written pre-litigation notice of the claimed

493    breaches of warranties, but he only did so about ten months after he was injured.  The

494    manufacturer argued that the plaintiff had not provided notice within a reasonable time and was

495    therefore barred by the statutory notice requirement.[6]  *Id.* at 899.  The Court held that the

496    statutory notice requirement was "not an appropriate one for the court to adopt in actions by

497    injured consumers against manufacturers with whom they have not dealt."  *Id.* at 900.  The Court

498    reasoned:

499                  As between the immediate parties to the sale [the notice requirement]
500                   is a sound commercial rule, designed to protect the seller against
501                   unduly delayed claims for damages.  As applied to personal injuries,
502                   and notice to a remote seller, it becomes a booby-trap for the unwary.
503                   The injured consumer is seldom "steeped in the business practice
504                   which justifies the rule," and at least until he has had legal advice it
505                   will not occur to him to give notice to one with whom he has had no
506                   dealings.
507
508    *Id.* (quoting William L. Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer),

509    69 Yale L.J. 1099, 1130 (1960)) (citation omitted).

---

[6] At the time, the notice requirement appeared in section 1769 of the Civil Code, which provided that if a "buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor."  *Id.*

510        By contrast, a California appellate court in *Fieldstone Co. v. Briggs Plumbing Products,*

511   *Inc.*, held that a residential developer who had purchased sinks from plumbers, as opposed to the

512   plaintiff in *Greenman*, was "a sophisticated development company which has built many

513   thousands of homes over the last two decades."  62 Cal. Rptr. 2d 701, 708 (Cal. Ct. App. 1997).

514   The court determined that the statutory notice provision should apply because the plaintiff in

515   *Fieldstone* was not "unaware of his rights as against the manufacturer until he had received legal

516   advice."  *Id.* (citing *Presiding Bishop v. Cavanaugh*, 32 Cal. Rptr. 144 (Cal. Ct. App. 1963)).

517        Based on these two cases applying the California statutory notice requirement, and

518   viewing Greater All Nation's allegations in a favorable light, this Court finds that Greater All

519   Nation's position as a consumer is more analogous to the injured plaintiff in *Greenman*.

520   According to the Complaint, Greater All Nation brings the instant action based upon its October

521   1999 purchase of one used E350 van.  (Compl. ¶ 9.)  Greater All Nation is a not-for-profit

522   religious organization that apparently uses its E350 van "to transport church members to retreats,

523   volunteer events and other community functions."  (*Id.*)  Thus, by any measure, Greater All

524   Nation is not in the business of purchasing vans, and, as opposed to the residential developer in

525   *Fieldstone*, likely was entirely unaware of its rights vis a vis Defendant Ford until it received

526   legal advice.  *See Fieldstone*, 62 Cal. Rptr. 2d at 708.

527        At the same time, this Court notes that *Greenman* is not directly analogous to this case.

528   The injured plaintiff in *Greenman*, unlike California Plaintiff Greater All Nation, did in fact

529   provide written pre-litigation notice of claimed breaches of warranties to the retailer and to the

530   manufacturer.  *Id.* at 898.  Additionally, the decision in *Greenman* occurred in the context of a

531   personal injury action.  Thus, it is unclear whether the Supreme Court of California would have

532      arrived at the same broad conclusion in *Greenman* had the plaintiff not suffered any personal

533      injury, and had the plaintiff not notified either the retailer or the manufacturer prior to bringing

534      suit.  Nevertheless, given the prior application of the statutory notice requirement in California

535      cases, this Court is not persuaded that the Supreme Court of California would apply § 2607(3)(A)

536      so strictly, and necessarily foreclose Greater All Nation from pursuing its breach of warranty

537      claims.  Therefore, Defendant's motion to dismiss on this ground will be denied.

538          **4.      Illinois**

539          Under 810 ILCS 5/2-607, "the buyer must within a reasonable time after he discovers or

540      should have discovered any breach notify the seller of breach or be barred from any remedy[.]"

541      Like other jurisdictions, Illinois recognizes several methods of notice.

542           In *Connick*, purchasers of a Samurai sport utility vehicle (SUV) sought to recover for,

543      *inter alia*, breach of express and implied warranties based upon the allegation that the Samurais

544      manufactured by defendant were "unsafe because [they] had an excessive risk of rolling over

545      during sharp turns and accident avoidance maneuvers."  675 N.E.2d at 588.  The Supreme Court

546      of Illinois recognized that the notice requirement can be fulfilled either by direct notice or under

547      two exceptions: when a "seller has actual knowledge of the defects of a particular product" or, in

548      certain circumstances, when a "seller is deemed to have been reasonably notified by the filing of

549      [a] buyer's complaint alleging breach of UCC warranty."  *Id.* (citing *Malawy v. Richards Mfg.*

550      *Co.*, 501 N.E.2d 376 (1986), and *Perona v. Volkswagen of Am., Inc.*, 684 N.E.2d 859, 863 (Ill.

551      App. Ct. 1997)).  Ultimately, however, the Court dismissed plaintiffs' breach of warranty claims,

552      holding that the plaintiffs failed to allege direct notice to the defendant and, importantly, were

553      unable to rely on either exception to the direct notice requirement.  *Connick*, 675 N.E. 2d at 591.

554     The Court reasoned that, despite public reports of the product's general defects, the "complaint

555     does not allege that Suzuki had actual knowledge of the alleged breach of the *particular* products

556     purchased by the named plaintiffs in this lawsuit." *Id.* at 590 (emphasis added). In addition, the

557     filing of a complaint did not suffice to constitute notice "where the breach has not resulted in

558     personal injury" because "the UCC indicates a preference that the breach be cured without a

559     lawsuit." *Id.* at 591.

560     Here, Plaintiffs likewise assert compliance with the notice requirement of § 2-607 based

561     upon Ford's actual or constructive notice of the alleged E350 van defects. Plaintiffs' description

562     of the events that necessarily would have informed Ford of the alleged defects of the E350 vans,

563     *e.g.*, the NHTSA reports, Ford's response to the NHTSA recommendations, and the 60 Minutes

564     II broadcasts, is comparable to the events the *Connick* plaintiffs claimed "separately or

565     cumulatively" provided actual notice to the defendant manufacturer. *Id.* at 589-90 (noting an

566     unfavorable Consumers Union report, an investigation by seven states' attorneys general, and the

567     commencement of the various actions). According to the court in *Connick*, it was undisputed

568     that the defendant was actually aware of the safety concerns of the Samurai SUV. *Id.* at 590.

569     Nevertheless, the Court held that a manufacturer's awareness of problems with a *product line* is

570     not a substitute for awareness problems "with the *particular* product purchased by a *particular*

571     buyer." *Id.* (emphasis added). *Connick* also stands for the proposition that constructive

572     awareness based upon the filing of a complaint is not an exception to the notice requirement in

573     non-personal injury actions.[7] *Id.* at 590-91.

___

[7] Plaintiffs rely on a prior Illinois Supreme Court decision for the proposition that "the filing of a lawsuit by injured consumers constitutes sufficient notice." (Pls.' Br. at 34 (citing *Goldstein v. G. D. Searle & Co.*, 378 N.E.2d 1083, 1088 (Ill. App. Ct. 1978).) That decision was

574    In the instant matter, Plaintiffs have satisfactorily alleged that Defendant Ford was

575    actually aware of the alleged design defects of the E350 van product line prior to the filing of

576    Plaintiffs' Complaint.  There is, however, no indication from Plaintiffs' Complaint that, prior to

577    the filing of the Complaint, Defendant was ever apprised of a problem with Pentecostal Temple's

578    particular van, or of any potential warranty claims to be brought by Pentecostal Temple.

579    Therefore, Pentecostal Temple's pleadings are insufficient pursuant to the limited scope of the

580    actual notice exception as described by the Illinois Supreme Court.  And because Pentecostal

581    Temple asserts only economic harm and no personal injuries, the limited exception of

582    constructive notice, *i.e.*, notice-by-suit, is not available with regard to the Illinois notice

583    requirement.

584    Relying on a decision from a district court in the Northern District of Illinois, Plaintiffs

585    argue that dismissal is inappropriate because Defendant has failed to allege any prejudice due to

586    lack of notice.  (Pls.'s Br. at 34 (citing *Blommer Chocolate Co. v. Bongards Creameries, Inc.*,

587    635 F. Supp. 911, 918 (N.D. Ill. 1985)).)  This Court finds instructive the fact that the Illinois

588    Supreme Court in *Connick* did not specifically recognize lack of prejudice as one of the two

589    noted exceptions to the direct notice requirement under 810 ILCS 5/2-607(3).  *Connick*, 675

590    N.E.2d at 589.  Additionally, in *Connick*, the court recognized that "the UCC indicates a

591    preference that the breach be cured without a lawsuit."  *Id.* at 591.  This preference, therefore,

---

limited by the Illinois Supreme Court in *Board of Education of City of Chicago v. A, C and S, Inc.*, 546 N.E.2d 580, 596 (Ill. 1989), to cases involving personal injuries to consumers. *Brookings Mun. Utilities, Inc. v. Amoco Chem. Co.*, 103 F. Supp. 2d 1169, 1177 n.8 (D.S.D. 2000).  Here, Illinois Plaintiff Pentecostal Temple asserts economic harm, not personal injuries, and Plaintiffs' proposed class specifically excludes any person who claims damages for personal injury as a result of purchasing or leasing an E350 van.

592      militates against requiring that Defendant allege prejudice due to a lack of direct pre-litigation

593      notice because, here, a lawsuit ensued nevertheless.  This Court, therefore, finds that Plaintiffs'

594      "failure to allege prejudice" argument is unsupported under Illinois law as an exception to the

595      notice requirement.  Accordingly, mindful of Court's holding in *Connick*, this Court is

596      constrained to grant Defendant's motion to dismiss Plaintiff Pentecostal Temple's breach of

597      warranty claims for failure to comply with the notice requirement of 810 ILCS 5/2-607(3).

598          To recap, this Court will dismiss the breach of express and implied warranty claims of the

599      Alabama, Arkansas and Illinois Plaintiffs.  However, if they can allege that they provided pre-

600      litigation notice to Ford in a manner recognized under the respective laws of those states, they

601      may do so in an amended complaint.  As for California Plaintiff Greater All Nation, its breach of

602      warranty claim will survive.

603          **D.**      **Express and Implied Warranties: Actual Injury**

604          Ford also moves to dismiss Plaintiff's express and implied warranty claims for failure to

605      adequately allege an actual injury.[8]  No Plaintiff has sustained a rollover or claimed any personal

606      injury as a result of purchasing or leasing an E350 van.  In fact, the proposed Plaintiff Class

607      expressly excludes anyone who claims personal injury damages.  (Compl. ¶ 63.)  Hence,

608      although the Complaint alleges that the E350 vans "are defectively designed due to [the van's]

609      high center of gravity leading to an unusually high rollover rate," (*id.* ¶ 17) Plaintiffs and

610      members of the proposed Class, by definition, have never experienced a rollover-related accident

611      or physical injury.  According to Plaintiffs, however, the alleged defect of the E350 vans resulted

---

[8] Other elements of Plaintiffs' implied warranty claims are discussed in greater detail later in this Opinion.  *See infra* Section II.F.

612    in "loss of use of the van's full capacity, diminishment of the van's resale value and increased

613    insurance costs." (Pls.' Br. at 14.)

614          Because the Court will dismiss the warranty claims of the Alabama, Arkansas, and

615    Illinois Plaintiffs for lack of pre-litigation notice, the Court will only examine the "actual injury"

616    issue as it concerns the California and New Jersey Plaintiffs.

617         **1.**    **California**

618          Ford argues that, under California law, Plaintiff Greater All Nation's breach of warranty

619    claims must be dismissed absent a present and manifest injury.  For the reasons discussed below,

620    this Court does not find that California precedent mandates dismissal of Greater All Nation's

621    breach of warranty claims on this ground.

622          In *American Suzuki Motor Corp. v. Superior Court*, a case relied upon by Ford, the issue

623    before the California Court of Appeals was whether plaintiffs could state a cause of action for

624    breach of implied warranty where "they have suffered no personal injury or property damage

625    from a vehicle they claim is defectively designed, *and it is impliedly conceded that their vehicles

626    have – since the date of purchase – remained fit for their ordinary purpose*."  44 Cal. Rptr. 2d

627    526, 527 (Cal. Ct. App. 1995) (emphasis added).  The California appellate court answered this

628    question in the negative, reversing the trial court's class certification.  *Id.* at 531.

629          Importantly, Greater All Nation has not conceded that its Ford E350 has remained fit for

630    its ordinary purpose.  Plaintiffs specifically allege that their "E350 vans were totally unfit to

631    accommodate and safely transport 15 passengers, and, accordingly, Ford breached its implied

632    warranty of merchantability in violation of UCC § 2-314."  (Compl. ¶ 84.)  Yet, whether a vast

633    majority of Ford E350s "did what they were supposed to do for as long as they were supposed to

634   do it" – *i.e.*, whether they were fit for their ordinary purpose – remains an open question which

635   this Court cannot determine on a motion to dismiss, especially where, unlike plaintiffs in

636   *American Suzuki*, Greater All Nation does not concede merchantability.  *American Suzuki*,

637   therefore, does not mandate dismissal of Greater All Nation's breach of warranty claim.

638         The only other California case upon which Ford relies for this point is *Khan v. Shiley Inc.*,

639   266 Cal. Rptr. 106 (Cal. Ct. App. 1990).  There, the court suggested that "[n]o matter which

640   theory is utilized [including breach of express and implied warranty] where a plaintiff alleges a

641   product is defective, proof that the product has malfunctioned is essential to establish liability for

642   an injury *caused by the defect*."  *Id.* at 855.  (emphasis in original).  However, a more recent

643   California appellate court decision has challenged the propriety of the "sweeping language in

644   *Khan*," and in particular the quoted sentence.  *See Hicks v. Kaufman & Broad Home Corp.*, 107

645   Cal. Rptr. 2d 761, 771 (Cal. App. Ct. 2001).  "[T]hat sentence does not accurately reflect the

646   holding in *Khan* nor the state of the law on breach of warranty claims."  *Id.*  According to *Hicks*,

647   "the primary right alleged to have been violated in *Khan* was not the right to take a product free

648   from defect but the right to be free from *emotional distress* caused by worry the defect would

649   result in physical injury."  *Id.* (emphasis added).  Accordingly, *Hicks* held that a product's

650   malfunction is not an element of a cause of action for breach of warranty where "the primary

651   right alleged to have been violated . . . [is] the right to take a product free from defect."  *Id.* at

652   771; *see also id.* at 773 n.54.  Instead, to establish a breach of express or implied warranty, a

653   plaintiff must ultimately prove that a product contains an inherent defect that is "substantially

654   certain to result in malfunction during the useful life of the product."  *Id.* at 773.  ("We see no

655   reason why [plaintiff] should have to wait for the inevitable injuries to occur before recovering

656 damages to repair the defect and prevent the injuries from occurring.").  A cause of action for

657 breach of warranty "does not require proof the product has malfunctioned."  *Id.* at 768.

658   In *Hicks*, plaintiffs pursued breach of warranty claims based upon the allegedly defective

659 concrete foundations of their houses.  It is unclear whether the "substantial certainty"

660 requirement described in *Hicks* would necessarily apply in the instant matter.  That is not

661 something this Court need or should decide today.  And this Court finds *Hicks*'s criticism of the

662 sweeping language of *Khan* to be highly persuasive.  A California court likely would not find that

663 product malfunction is a necessary element of Greater All Nation's breach of warranty claims.

664 *See id.* at 771-72.  Hence, California Plaintiff Greater All Nation's breach of warranty claims will

665 not be dismissed for failure to plead actual injury.

666   **2.** **New Jersey**

667   Ford relies on several cases in support of its argument that New Jersey Plaintiffs'

668 warranty claims should be dismissed for failure to allege actual injury.  For example, in *Yost v.*

669 *General Motors Corp.*, 651 F. Supp. 656, 657 (D.N.J. 1986), the district court dismissed the

670 plaintiff's breach of warranty and fraud claims because the plaintiff failed to allege that he

671 suffered any present damages: "All he is able to allege is that the potential leak is 'likely' to

672 cause damage and 'may' create potential safety hazards."  *Id.*  By contrast, Plaintiffs here assert

673 that the E350 van is presently defective, and that such defect currently creates a potential safety

674 hazard.  *See Connick*, 656 N.E. 2d at 178-79 (distinguishing *Yost* where plaintiffs did not allege

675 the engine was actually defective).  Additionally, Plaintiffs allege damages not discussed in *Yost*,

676 including loss of use of the van's full capacity and increased insurance costs.  Given these

677 differences, this Court is not convinced that *Yost* mandates dismissal of Plaintiffs' breach of

678   warranty claims.

679         Ford next draws this Court's attention to *Walus v. Pfizer, Inc.*, 812 F. Supp. 41, 42

680   (D.N.J. 1993), for the court's assertion that "New Jersey courts have never allowed recovery

681   based on a product that is and has been working normally."  812 F. Supp. at 42.  Although *Walus*

682   provides sweeping language regarding a product liability claim, that decision did not concern

683   breach of warranty claims.  Thus, *Walus* also does not mandate dismissal of Plaintiffs' claims.

684         In another case, *Thiedemann v. Mercedes-Benz USA, LLC,* 872 A.2d 783, 793 (2005), the

685   Supreme Court of New Jersey affirmed a grant of summary judgment for a defendant car

686   manufacturer based upon alleged violations of the New Jersey Consumer Fraud Act ("CFA"),

687   N.J.S.A. §§ 56:8-1 to -20.  Specifically, plaintiff had alleged a defect in the fuel gauges in

688   Mercedes-Benz vehicles.  Although plaintiff had asserted a claim for breach of the implied

689   warranty of merchantability under N.J.S.A. § 12A:2-314, the Court limited its review to the

690   "enigmatic requirement of an 'ascertainable loss'" under the CFA.  872 A.2d at 786-87.  Because

691   plaintiff made no attempt to sell his vehicle, and did not "present any expert evidence to support

692   an inference of loss in value notwithstanding the lack of any attempt to sell the vehicle, *i.e.*, that

693   the resale market for the specific vehicle had been skewed by the 'defect,'" the court determined

694   that plaintiff's CFA diminution in value argument was "too speculative."  *Id.* at 795.  Hence,

695   even though the car owner could not satisfy his burden on summary judgment, the court in

696   *Thiedemann* clearly acknowledged that diminution in value could qualify as an ascertainable loss

697   under the CFA.  *Id.* at 792.

698         *Thiedemann* does not mandate dismissal of the New Jersey Plaintiffs' breach of warranty

699   claims at this juncture.  *Thiedmann* dealt exclusively with the CFA's ascertainable loss

30

700    requirement; moreover, the Supreme Court of New Jersey certainly did not foreclose entirely the

701    use of "diminution in value" as a form of ascertainable loss.  Apparently, the court contemplated

702    the possibility of certain proofs of diminution in value such as "expert evidence directed to [a]

703    defective vehicle's loss in value or some other similarly quantifiable lost benefit-of-the-bargain."

704    *Id.*  Perhaps in the future this Court, on a full record at a later procedural stage, will determine

705    whether the New Jersey Plaintiffs' diminution-in-value claim is "too speculative."  *Thiedemann*,

706    183 N.J. 234, 238 (2005) *Id.* at 795.  That is not an appropriate inquiry, however, at this stage on

707    a motion to dismiss.

708         For the reasons discussed above, Ford has not demonstrated that the New Jersey

709    Plaintiffs' breach of warranty claims should be dismissed under New Jersey law for failure to

710    allege actual injury, and this Court is aware of no New Jersey precedent that suggests dismissal.[9]

711    Accordingly, Ford's motion to dismiss New Jersey Plaintiffs' breach of warranty claims for

712    failure to plead actual injury will be denied.

713         To summarize, after an exhaustive review of caselaw from California and New Jersey,

714    this Court is satisfied that the California and New Jersey Plaintiffs' warranty claims do not

715    require dismissal for failure to plead actual injury as a matter of law.

716         **E.    Express and Implied Warranties: Time Bar**

---

[9] *Sinclair v. Merck & Co.*, 195 N.J. 51 (2008), handed down on June 4, 2008, and cited by Ford in supplemental briefing, is inapposite.  There, the Supreme Court of New Jersey dismissed a Products Liability Act ("PLA") claim for failure to allege a "physical injury" as required by the statute.  *Id.* at 64.  Here, Plaintiffs do not pursue a PLA claim, in part because, by design, the PLA "except[s] actions for harm caused by breach of an express warranty[,]" which Plaintiffs expressly allege.  N.J.S.A. § 2A:58C-1b(3).  The *Sinclair* Court also does not mandate dismissal of unjust enrichment and state consumer fraud claims where a party does not plead a PLA claim.  *See Sinclair*, 195 N.J. at 65.

31

717          Defendant moves to dismiss the breach of express and implied warranty claims of

718    Plaintiffs Eleventh Street (Arkansas), Greater All Nation (California), Pentecostal Temple

719    (Illinois), and the New Jersey parties on the grounds that they are barred by their states' relevant

720    statute of limitations.[10]   Again, because the Court will dismiss the breach of warranty claims

721    alleged by the Alabama, Arkansas, and Illinois Plaintiffs for failure to comply with notice

722    requirements, the Court will here only address Ford's time bar argument as to the California and

723    New Jersey Plaintiffs.

724          A district court may "dismiss a complaint for failure to state a claim, based on a time-bar,

725    where 'the time alleged in the statement of a claim shows that the cause of action has not been

726    brought within the statute of limitations.'"   *Bieregu v. Ashcroft*, 259 F. Supp. 2d 342, 355 n.11

727    (D.N.J. 2003) (quoting *Bethel v. Jendoco Constr. Co.*, 570 F.2d 1168, 1174 (3d Cir. 1978)).   The

728    Court looks to the allegations of the complaint when assessing a dismissal on statute of

729    limitations grounds: "When reviewing a Rule 12(b)(6) dismissal on statute of limitations

730    grounds, we must determine whether the time alleged *in the statement of a claim* shows that the

731    cause of action has not been brought within the statute of limitations."   *Cito v. Bridgewater Twp.*

732    *Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989) (emphasis in original).   Although a statute of

733    limitations defense is not included in the enumerated defenses listed in Rule 12(b)(6), the defense

734    may be raised in a motion to dismiss where it is clear on the face of a complaint that the action is

735    not brought within the statute of limitations.   *See Oshiver v. Levin, Fishbein, Sedran & Berman*,

736    38 F.3d 1380, 1384 n.1 (3d Cir. 1994).   District courts are cautioned, however, that "[i]f the bar

---

[10] Ford does not move to dismiss Plaintiff New Bethlehem's (Alabama) warranty claims based on statute of limitations grounds.

737    is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the

738    complaint under Rule 12(b)(6)."  *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002)

739    (internal citation and quotation marks omitted).

740    　　　　Section 2-725 of the Uniform Commercial Code provides the relevant statute of

741    limitations:

742    　　　　　　　　(1)　　An action for breach of any contract for sale must be
743    　　　　　　　　　　　commenced within 4 years after the cause of action has
744    　　　　　　　　　　　accrued.
745    　　　　　　　　　　　. . . .
746    　　　　　　　　(2)　　A cause of action accrues when the breach occurs, regardless
747    　　　　　　　　　　　of the aggrieved party's lack of knowledge of the breach.  A
748    　　　　　　　　　　　breach of warranty occurs when tender of delivery is made[.]
749    　　　　　　　　　　　. . . .
750    　　　　　　　　(4)　　This Section does not alter the law on tolling of the statute of
751    　　　　　　　　　　　limitations . . . .

752
753    This language has been adopted without change in California and New Jersey.  *See* Cal. Com.

754    Code. § 2725; N.J.S.A. § 12A:2-725.  According to this provision, Plaintiffs' claims for breach

755    of warranty accrued when "tender of delivery" was made for their E350 vans.  Thus, at the latest,

756    the four-year statute of limitations commenced against each named Plaintiff when they actually

757    obtained their individual vehicles.  This analysis, however, is substantially complicated by the

758    fact that Plaintiffs do not clearly specify the model year or purchase date of every E350 at issue

759    in the instant matter.  The Court gathers the following information from paragraphs 6-12 of the

760    Complaint:

761    　　　　•　　Greater All Nation (California) purchased a used E350 van of unspecified model

762    　　　　　　year on October 29, 1999;

763    　　　　•　　Faith Tabernacle (New Jersey) purchased a used E350 van of unspecified model

764    　　　　　　year on August 30, 2001;

33

765        •        Macedonia Free Will (New Jersey) purchased two new 2002 E350 vans on an

766                 unspecified date; and,

767        •        Social Clubhouse (New Jersey) purchased five different E350 vans including

768                 those from model years 1993, 1994, 1997, and 2002.  The 1997 model was

769                 purchased on August 8, 2002, and the 2002 model was purchased on April 9,

770                 2003.

771    Unless otherwise specified, it is also unclear whether each E350 van was purchased in new or

772    used condition.

773        The earliest complaint filed by any individual Plaintiff in the instant matter was that of

774    Social Clubhouse, which filed its original complaint in the Superior Court of New Jersey on

775    August 11, 2003.  Greater All Nation, which purchased a van on October 29, 1999, first filed suit

776    in California state court on February 17, 2005.  Thus, Greater All Nation filed suit more than 4

777    years after purchasing its respective vehicles.  As listed above, only some of the vans purchased

778    by New Jersey Plaintiffs appear to have been purchased less than four years prior to filing suit.

779        Plaintiffs propose several reasons why their breach of warranty claims are not barred by

780    the relevant statutes of limitations.  Plaintiffs' chief argument is that Ford's fraudulent

781    concealment tolled the statute of limitations.  Due to Ford's false and misleading statements,

782    Plaintiffs argue that their causes of action accrued only when Ford's breach was or should have

783    been discovered.  "Here, Plaintiffs had no reason to discover Defendant Ford's false and

784    misleading statements because the problems with the E350 were not publicized until shortly

785    before the plaintiff filed suit."  (Pls.' Br. at 38.)  The Official Comment to UCC § 2-725 states:

786    "Subsection (4) makes it clear that this Article does not purport to alter or modify in any respect

34

787 the law on tolling of the Statute of Limitations as it now prevails in the various jurisdictions."

788 Thus, Plaintiffs' warranty claims are not time-barred if they allege proper grounds for equitable

789 tolling. *See* Cal. Com. Code. § 2725(4); *Mills*, 108 Cal. App. 4th at 641 (enforcing statute of

790 limitations for breach of warranty claim "subject to tolling or estoppel"); *Simpson v. Widger*, 311

791 N.J. Super. 379, 390 (App. Div. 1998) ("[T]he presence of fraud may toll the running of the

792 statute" for breach of warranty claims); *see also Foodtown v. Sigma Mktg Sys., Inc.*, 518 F. Supp.

793 485, 488 (D.N.J. 1980).

794   To establish fraudulent concealment for the purposes of tolling a statute of limitations,

795 the Ninth Circuit has recognized that, applying California law, a "complaint must show: (1) when

796 the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the

797 plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of

798 fact sufficient to put him on inquiry." *Conerly v. Westinghouse Electric Corp.*, 623 F.2d 117,

799 120 (9th Cir. 1980) (citing *Baker v. Beech Aircraft Corp.*, 114 Cal. Rptr. 171, 175 (Cal. Ct. App.

800 1974)). New Jersey law sets forth comparable elements. *See Dewey v. Volkswagen AG*, – F.

801 Supp. 2d –, Nos. 07-2249, -2361, 2008 WL 878324, at *13 (D.N.J. Apr. 1, 2008).

802   Defendant argues that Plaintiffs have failed to plead the fraudulent concealment elements

803 necessary to avoid a limitations-based dismissal. Specifically, Defendant argues that Plaintiffs

804 must allege "actual reliance" on statements made by Defendant. It is true that "reliance" is an

805 element of a claim for misrepresentation. For example, in *Simpson*, a case cited by Plaintiffs,

806 "[a] misrepresentation amounting to actual legal fraud consists of a material representation of a

807 presently existing or past fact, made with knowledge of its falsity and with the intention that the

808 other party rely thereon, *resulting in reliance by that party to his detriment.*" 311 N.J. Super. at

809   392 (citing *Jewish Ctr. of Sussex County v. Whale*, 432 A.2d 521 (N.J. 1981)) (emphasis added).

810   Although Plaintiffs could have done so with greater precision, this Court finds that for the

811   purposes of withstanding a motion to dismiss, Plaintiffs have sufficiently pled reliance on

812   Defendant's alleged misrepresentation and omissions.  Notably, in the Complaint, Plaintiffs

813   allege that Defendant's conduct constituted acts of "deception, fraud, false pretenses, false

814   promises, misrepresentation and/or a knowing concealment, suppression, or omission of material

815   facts with the intent that Plaintiffs . . . would *rely* upon such concealment, suppression, or

816   omission in connection with the sale, marketing, advertisement and subsequently performance of

817   the E350 van."  (Compl. ¶ 93.) (emphasis added).  In addition, Plaintiffs assert that Ford's

818   conduct "ha[d] the capacity to, and did, deceive consumers into believing that they were

819   purchasing a vehicle that could be used safely, legally and practically to accommodate and

820   transport 15 passengers."  (*Id.*)

821   The Court finds that the California and New Jersey Plaintiffs allege a claim for fraudulent

822   concealment in the context of tolling the statute of limitations.  Although Ford proffers that

823   claims for breach of warranty accrue on the date of delivery rather than on the date of discovery,

824   it fails to articulate why the principles of equitable tolling premised on fraudulent concealment

825   are not available to Plaintiffs as a matter of law.  Assuming the truth of Plaintiffs' allegations,

826   and drawing inferences in a light most favorable to them, Plaintiffs sufficiently contend that they

827   discovered Ford's alleged fraudulent concealment between the years 2002 and 2005, under

828   circumstances owing to the revelation of the alleged defects by the media and other public

829   reports.  For instance, Plaintiffs allege that the television program "Sixty Minutes II" publicized

830   the concerns regarding the vans' safety on September 9, 2002, and that a former Ford test driver

36

831    testified to the vans' defects in January 2003.  (Compl. ¶ 23.)  Furthermore, Plaintiffs allege that

832    they are not at fault for failing to discover the alleged defects earlier because Ford acted

833    wrongfully by issuing repeated assurances of the vans' safety despite Ford's alleged knowledge

834    of the falsity of their warranty.  (*Id.* ¶¶ 2, 22-23, 31, 36-37, 48-52, 54.)  Thus, looking first at

835    Greater All Nation, its 2005 filing does not run afoul of the four-year statute of limitations

836    because Plaintiffs allegedly discovered the breach within four years prior to 2005.  Similarly, the

837    earliest filing by a New Jersey Plaintiff was in 2003, also well within four years of Plaintiffs'

838    supposed discovery of Defendant's alleged concealment.

839           In sum, reading Plaintiffs' Complaint with latitude, the California and New Jersey

840    Plaintiffs' warranty claims are not barred by the relevant statutes of limitations and exceptions

841    thereto because "the bar is not apparent on the face of the [C]omplaint."  *Robinson*, 313 F.3d at

842    135 (internal citation and quotation marks omitted).  Ford's motion to dismiss the California and

843    New Jersey Plaintiffs' warranty claims on statute of limitations grounds will be denied.

844           **F.     Implied Warranty**

845           In the second cause of action of their Complaint, Plaintiffs allege breach of implied

846    warranty under UCC § 2-314, as codified by each of the states at issue.  Because the Court has

847    already dismissed the warranty claims brought by Plaintiffs New Bethlehem (Alabama), Eleventh

848    Street (Arkansas), and Pentecostal Temple (Illinois) for failure to comply with notice

849    requirements, the Court examines only the California and New Jersey Plaintiffs' Second Cause

850    of Action on the merits.

851           According to Plaintiffs:

852                  83.     . . .  Ford impliedly warranted that the E350 vans were

37

853                          merchantable and w[ere] fit for the ordinary purposes for
854                          which a 15-passenger van is used.
855
856          84.      The E350 vans were totally unfit to accommodate and safely
857                          transport 15 passengers, and accordingly, Ford breached its
858                          implied warranty of merchantability on [sic] violation of UCC
859                          § 2-314.
860                                      . . . .
861          86.      Plaintiffs and members of the Class have been damaged as a
862                          result of the conduct complained of herein, and the conduct
863                          continues and the harm or risks of harm is ongoing.
864
865    (Compl. ¶¶ 83-84, 86.)

866         Defendant argues that Plaintiffs' claims for breach of the implied warranty of

867    merchantability should be dismissed for several reasons in addition to those discussed previously,

868    including: failure to allege the E350 vans were not merchantable at the time of sale;

869    enforceability of the durational limitations of Ford's implied warranty, and lack of privity.

870    (Def.'s Br. at 28-29.)  For the following reasons, Defendant's motion to dismiss the California

871    and New Jersey Plaintiffs' implied warranty claims will denied.

872               **1.**      **Implied Warranty: Failure to Allege Lack of Merchantability**

873         Section 2-314 of the Uniform Commercial Code has been adopted by California and New

874    Jersey.  Cal. Com. Code § 2314; N.J.S.A. § 12A:2-314.  As both parties acknowledge, to state a

875    claim for breach of the implied warranty of merchantability under § 2-314 of the UCC, a plaintiff

876    must allege (1) that a merchant sold goods, (2) which were not "merchantable" at the time of

877    sale, (3) injury and damages to the plaintiff or its property, (4) which were was caused

878    proximately and in fact by the defective nature of the goods, and (5) notice to the seller of injury.

879    *See* 1 James J. White & Robert S. Summers, Uniform Commercial Code § 9-7, at 510-11 (4th ed.

880    1995) (footnote omitted).

881         Pursuant to the implied warranty of merchantability, a merchant warrants that goods sold

882    are fit for the ordinary purposes for which the goods are used.  *See, e.g.*, N.J.S.A. § 12A:2-314.

883    Merchantability does not mean that the goods are perfect or that they are exactly as the merchant

884    described them to be, but only that they are "reasonably fit for the purpose intended."

885    *Jakubowski v. Minn. Mining & Mfg. Co.*, 199 A.2d 826, 831 (N.J. 1964).  The implied warranty

886    of merchantability need not be specifically mentioned in a contract; instead, it arises by operation

887    of law.  *See, e.g.*, N.J.S.A. § 12A:2-314.

888         Ford argues that Plaintiffs' implied warranty of merchantability claims should be

889    dismissed for failure to allege "that their vehicles were not merchantable at the time of sale."

890    (Def.'s Br. at 30.)  Plaintiffs, however, alleged in the second cause of action in their Complaint

891    that due to a design defect, "the E350 vans were *totally unfit* to accommodate and safely

892    transport 15 passengers and, accordingly, Ford breached its implied warranty of *merchantability*

893    in violation of UCC § 2-314."  (Compl. ¶ 84 (emphasis added).)  Based upon the aforementioned

894    language of the Complaint, this Court finds that Plaintiffs have sufficiently alleged a breach of

895    the implied warranty of merchantability.  Specifically, Plaintiffs assert that at the time of the sale,

896    their E350 vans they were "totally unfit," *i.e.*, not reasonably fit for their intended purpose of

897    safely transporting 15 passengers, and, therefore, not merchantable.  Hence, this requirement has

898    been sufficiently pled.

899         **2.      Implied Warranty: Durational Limitations**

900         Ford argues that by virtue of the limited written warranties that come with each E350 van,

901    it has limited its liability for breach of the implied warranty of merchantability to vehicle

902  malfunctions that occur during the warranty coverage period.  (Def.'s Br. at 31.)  Section 2-316

903  of the UCC provides that parties may limit or exclude entirely the warranty of merchantability

904  that is otherwise implied in a contract for a sale of goods.[11]

905          In the Second Cause of Action of the Complaint, Plaintiffs allege that "[a]ny express

906  limitation or negation of Ford's implied warranties that E350 vans were fit to accommodate and

907  safely transport 15 passengers, when such was not the case, would be unreasonable and

908  unconscionable and, accordingly, is unenforceable pursuant to UCC § 2-316."  (Compl. ¶ 85.)

909  Pursuant to § 2-302(a) of the UCC, this Court may strike a clause of a contract "[i]f the court as a

910  matter of law finds the contract or any clause of the contract to have been unconscionable at the

911  time it was made[.]"  *See* Cal. Com. Code § 2302; N.J.S.A. § 12A:2-302.  Further, § 2-302(b)

912  provides that "[w]hen it is claimed or appears to the court that the contract or any clause thereof

913  may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence

914  as to its commercial setting, purpose and effect to aid the court in making the determination."

915  *See id.*

916          As noted above, Plaintiffs alleged that the durational limitations on the implied warranty

_____

[11] The following language has been codified by California and New Jersey law:

(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous.  Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

*See* Cal. Com. Code § 2316; N.J.S.A. § 12A:2-316.

40

917    of merchantability that accompanied Plaintiffs' E350s are "unreasonable and unconscionable

918    and, accordingly, [are] unenforceable."  Based on UCC § 2-302(b), this Court cannot make this

919    determination at the motion to dismiss stage.  *See In re Ford Motor Co. Ignition Switch Products*

920    *Liability Litig.*, Nos. MDL No. 1112, Civ. A. 96-3125,  96-1814, 1999 WL 33495352, at *12

921    (D.N.J. May 14, 1999) ("[The court is] unable at this juncture to determine, as a matter of law,

922    whether or not Ford's durational limitation of the implied warranty of merchantability that

923    accompanied plaintiff's Ford vehicles at the time of their original retail sale was

924    unconscionable.") (vacated in part on other grounds by July 27, 1999 order).  Accordingly,

925    Ford's motion to dismiss on this ground will be denied, and the California and New Jersey

926    Plaintiffs' implied warranty claim shall remain at issue.

927        **G.    Unjust Enrichment**

928        In the Third Cause of Action of their Complaint, Plaintiffs allege unjust enrichment on

929    the part of Ford.  Generally, to claim unjust enrichment, a plaintiff must allege that "(1) at

930    plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it

931    unjust for defendant to retain benefit without paying for it."  *In re K-Dur Antitrust Litig.*, 338 F.

932    Supp. 2d 517, 544 (D.N.J. 2004).  Although there may exist slight variations in various state

933    claims for unjust enrichment, any differences are not material to the instant motion to dismiss on

934    the grounds proffered by Ford.  *See In re Terazosin Hydochloride*, 220 F.R.D. 672, 697 n.40

935    (S.D. Fla. 2004) ("The standards for evaluating each of the various states classes' unjust

936    enrichment claims are virtually identical.  Courts have recognized that state claims of unjust

937    enrichment are universally recognized causes of action that are materially the same throughout

938    the United States.") (citation and quotation marks omitted).

41

939             Essentially, Plaintiffs allege that they purchased a defective product that was marketed

940      and sold by Ford or its agents for the price of a non-defective product and that, as a consequence,

941      Ford received a benefit from the sales at Plaintiffs' expense.  While Plaintiffs do not explicitly

942      allege the presumed difference in value between a defective and non-defective van, Plaintiffs do

943      contend that a defective van's value is "greatly reduced" from the value of a non-defective van.

944      (Compl. ¶ 88.)  Plaintiffs also allege that Ford obtained additional benefits in the form of

945      revenues from repairs to E350 vans that failed after the expiration of the 90-day "Limited

946      Warranty."  "As a result Ford has been unjustly enriched, having retained the benefits of its sales

947      of defective E350 vans and payment for repair services."  (Compl. ¶ 90.)  Based on these

948      statements, Plaintiffs sufficiently allege a claim for unjust enrichment.

949             Ford argues that Plaintiffs' unjust enrichment claims must be dismissed because Plaintiffs

950      have not alleged any cognizable injury.  However, Ford cites no case dismissing an unjust

951      enrichment claim for failure to plead a cognizable injury.  Thus, this Court does not find that

952      Plaintiffs' unjust enrichment actions merit dismissal for failure to plead injury.

953             Next, Ford asserts that unjust enrichment is not a cause of action in California, and thus

954      Greater All Nation's claim for unjust enrichment should be dismissed.  (Def.'s Reply Br. at 25.)

955      In *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1100 (N.D. Cal. 2006), a district court

956      observed that uncertainty exists as to whether a court applying California law may recognize a

957      claim for unjust enrichment as a separate cause of action.  The *Nordberg* court concluded,

958      however, that causes of action labeled as "unjust enrichment" may nonetheless be understood as

959      claims for restitution.  *Id.* ("Although their Eighth cause of action is entitled 'unjust enrichment'

960      it is clear that plaintiffs are seeking restitution.").  Thus, although Plaintiffs' cause of action as it

961   relates to Greater All Nation and members of the putative Class from California may have

962   mischaracterized the legal theory underlying this claim, Ford's argument for dismissal is

963   unavailing.

964         Ford also argues that unjust enrichment is based on quasi-contract, and that such

965   equitable proceedings are barred when there are adequate remedies at law.  Although Plaintiffs

966   allege breach of express and implied warranty in the first and second causes of action of the

967   Complaint, the Court, at this juncture, cannot resolve these legal issues.  *See In re K-Dur*

968   *Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004) ("Plaintiffs, however, are clearly

969   permitted to plead alternative theories of recovery.  Consequently, it would be premature at this

970   stage of the proceedings to dismiss the . . . unjust enrichment claims on this basis.").  Therefore,

971   the presence of these potential remedies at law does not mandate dismissal of Plaintiffs' unjust

972   enrichment claims.  *See, e.g.*, *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 155 F.

973   Supp. 2d 1069, 1104 (S.D. Ind. 2001), *rev'd on other grounds*, 288 F.3d 1012 (7th Cir. 2002).

974         Accordingly, Ford's motion to dismiss with regard to Plaintiffs' unjust enrichment claim

975   will be denied.[12]

976   **H.      State Consumer Fraud**

977         In their Fourth Cause of Action, Plaintiffs allege that Ford violated state consumer fraud

978   statutes.  "State consumer-protection laws vary considerably, and courts must respect these

979   differences rather than apply one state's law to sales in other states with different rules."  *In re*

_____

[12] According to Ford, Plaintiffs' unjust enrichment claims are also time barred.  Although Plaintiffs failed to address this issue in their opposition brief, Ford also did not articulate why principles of fraudulent concealment or equitable tolling, as methods of tolling the relevant statutes of limitations, are not available to Plaintiffs in connection with their unjust enrichment claims.

980   *Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002) (citing *BMW of N. Am., Inc. v.*

981   *Gore*, 517 U.S. 559, 568-73 (1996)).  Thus, this Court will examine Plaintiffs' fourth claim

982   separately under the law of each relevant jurisdiction: Alabama, Arkansas, California, Illinois,

983   and New Jersey.

984                    **1.      Alabama**

985          The Alabama Deceptive Trade Practices Act ("Alabama DTPA") provides a cause of

986   action for a "consumer," Ala. Code § 8-19-10, who is defined as "any natural person who buys

987   goods or services for personal, family or household use."  Ala. Code § 8-19-3(2).  "Only

988   'consumers' have private rights of action under this section."  *Deerman v. Fed. Home Loan*

989   *Mortg. Corp.*, 955 F. Supp. 1393, 1399 (N.D. Ala. 1997).  Plainly, Plaintiffs are not natural

990   persons; nor have they purchased the E350 vans for personal, family or household use.  Plaintiffs

991   offer no argument or authority to the contrary, and this Court finds as a matter of law that

992   Alabama Plaintiff New Bethlehem lacks standing to bring this claim.  *See EBSCO Indus., Inc. v.*

993   *LMN Enter., Inc.*, 89 F. Supp. 2d 1248, 1266 (N.D. Ala. 2000) (dismissing Alabama DTPA claim

994   for lack of standing); *see also In re Bextra and Celebrex Mktg. Sales Practices & Prod. Liab.*

995   *Litig.*, 495 F. Supp. 2d 1027, 1036 (N.D. Cal. 2007) ("It is undisputed that the [plaintiffs] are not

996   'natural persons,' and thus they do not have a private right of action [under the Alabama

997   DTPA].") (quoting Ala. Code § 8-19-3(2)).  Thus, New Bethlehem's Alabama DTPA claim will

998   be dismissed.

999                    **2.      Arkansas**

1000          Eleventh Street fails to state a cognizable claim under the Arkansas Deceptive Trade

1001   Practices Act ("Arkansas DTPA").  Under that statute, the responsibility for civil enforcement

1002   rests largely with the Attorney General.  *See* Ark. Code Ann. § 4-88-113(a)-(e).  A private cause

1003   of action is limited to instances where a person has suffered "actual damage or injury as a result

1004   of an offense or violation as defined in this chapter."  Ark. Code Ann. § 4-88-113(f).

1005          Defendant cites *Wallis v. Ford Motor Co.*, 208 S.W.3d 153, 159 (Ark. 2005) for the

1006   proposition that Plaintiffs fail to plead actionable injury to sustain a claim under the Arkansas

1007   DTPA.  208 S.W.3d at 159.  In that case, the Supreme Court of Arkansas held that an DTPA

1008   claim could not be maintained where an SUV owner's only alleged injury was a diminution in

1009   value of the vehicle.  Plaintiff had sought to certify a class consisting of Ford Explorer owners

1010   and lessees based upon Ford's alleged concealment of a design defect that caused Explorers to

1011   roll over under normal operations.  *Id.* at 154.  Like Plaintiffs in the instant matter, "Wallis [did]

1012   not allege any personal injury or property damage caused by the design defect, nor [did] he allege

1013   that the Explorer malfunctioned in any way."  *Id.*  Wallis's entire damages claim instead rested

1014   on his assertion that his Explorer's value had been "substantially diminished" as a result of the

1015   design defect.  *Id.* at 155.  Yet the Court noted that "actual damage or injury is sustained when

1016   the product has actually malfunctioned or the defect has manifested itself."  *Id.* at 161.

1017   Accordingly, the Court held that Wallis did "not state a cognizable cause of action under []DTPA

1018   where the only injury complained of is a diminution in value of the vehicle."  *Id.*

1019          *Wallis* is squarely on point here.  Plaintiffs' allegation of damages for diminution of value

1020   is insufficient as a matter of law under the Arkansas DTPA.  In addition, even though Plaintiffs

1021   also cite "loss of use" damages, *Wallis* elaborated that "actual damage or injury is sustained when

1022   the product has actually malfunctioned or the defect has manifested itself."  *Id.* at 161.  Here,

1023   Plaintiffs do not allege damages resulting from any malfunction or manifest defect.  In other

45

1024 words, Plaintiffs do not adequately allege *actual* damages as required for an Arkansas DPTA

1025 claim under *Wallis*.  Because Arkansas law bars private rights of action under the Arkansas

1026 DPTA where no actual damages are alleged, this Court must dismiss Eleventh Street's statutory

1027 consumer fraud claim.

1028         **3.      California**

1029         Plaintiff Greater All Nation asserts claims under three California statutes: the California

1030 Unfair Competition Law ("California UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; the

1031 California False Advertising Law ("California FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*;

1032 and the California Consumers Legal Remedies Act ("California CLRA"), Cal. Civ. Code § 1750,

1033 *et seq.*  For the following reasons, the Court will dismiss Plaintiffs' claim under the California

1034 CLRA, but permit Plaintiffs' claim under the California UCL and FAL to proceed.

1035                 *a.      The California UCL*

1036         The California UCL permits civil recovery for "any unlawful, unfair or fraudulent

1037 business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. &

1038 Prof. Code, § 17200.  The UCL's purpose is to protect both consumers and competitors from

1039 unlawful, unfair or fraudulent business practices "by promoting fair competition in commercial

1040 markets for goods and services."  *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002).  Until the

1041 UCL was amended in 2004, the statute "authorized 'any person acting for the interests of itself,

1042 its members or the general public' . . . to file a civil action for relief."  *Californians for Disability*

1043 *Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 228 (2006) (quoting former § 17204).  As Plaintiffs

1044 argue, standing to bring such an action did not depend on a showing of injury or damage.  *See*

1045 *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211 (1983)

1046   ("Allegations of actual deception, reasonable reliance, and damage are unnecessary."),

1047   *superseded by statute*, Cal. Bus. & Prof. Code § 17204 (2004), *as recognized in Mervyn's*, 39

1048   Cal. 4th at 228.

1049          Now amended, however, the California UCL defines who may sue to enforce the statute:

1050   any "association, or . . . person who has suffered *injury in fact and has lost money or property* as

1051   a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204 (emphasis added); *see also*

1052   *Standfacts Credit Servs. v. Experian Info. Solutions, Inc.*, Nos. 04-0358, -1055, 2006 WL

1053   4941834, at *1-2 (C.D. Cal. Oct. 12, 2006) ("[S]ince [the plaintiff] has failed to allege that it . . .

1054   has lost money or property, it lacks standing to bring its UCL claims.") (internal quotation marks

1055   omitted); *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 852 (Cal. Ct. App. 2008) ("Proposition 64,

1056   approved by the voters at the November 2, 2004, General Election, changed the standing

1057   requirements for a UCL claim to create a two-prong test: A private person now has standing to

1058   assert a UCL claim only if he or she (1) 'has suffered injury in fact,' and (2) 'has lost money or

1059   property as a result of such unfair competition.'").

1060          This Court must determine whether Plaintiffs allege injury in fact and money or property

1061   damages within the meaning of amended § 17204.  The Court finds that they do.  Since § 17204

1062   was amended, few California courts have had occasion to directly address what constitutes injury

1063   in fact and loss of money or property as a result of unfair competition for purposes of

1064   determining standing.  Among those courts that have interpreted the new standing requirements,

1065   § 17204 has been interpreted to permit UCL suits when a plaintiff has: (1) expended or lost

1066   money (or property), *see, e.g.*, *Monarch Plumbing Co. v. Ranger Ins. Co.*, No. 06-1357, 2006

1067   WL 2734391, at *6 (E.D. Cal. Sept. 25, 2006); or (2) been denied money to which it has a right,

47

1068    *see, e.g.*, *Starr-Gordon v. Mass. Mut. Life Ins. Co.*, No. 03-68, 2006 WL 3218778, at *6-7 (E.D.

1069    Cal. Nov. 7, 2006) ("[D]isgorgement [under the UCL] is permissible only to the extent that it

1070    constitutes restitution") (internal quotation omitted); *see also Hall*, 158 Cal. App. 4th at 854-55

1071    (collecting cases).

1072        Admittedly, none of the allegations in these cases resemble those before the Court here,

1073    where Plaintiffs allege diminution in value and loss of use damages.  However, the California

1074    Court of Appeal decision in *Hall v. Time, Inc.* offers instructive guidance.  In *Hall*, a customer

1075    agreed to try a book from a publisher for a "free trial period" and later paid for it via a collection

1076    agency after the free trial period expired.  158 Cal. App. 4th at 850.  The customer subsequently

1077    brought a California UCL action, alleging that the publisher used fraudulent tactics to trick

1078    customers into believing that they were not obligated to pay for the book.  *Id.* at 850-52.  The

1079    court held that there was no injury in fact, in part because the customer did *not* allege that "the

1080    book was unsatisfactory, or [that] the book was worth less than what he paid for it."  *Id.* at 855.

1081    In reaching this conclusion, the court also noted that a common dictionary definition for "[a] loss

1082    is '[a]n undesirable outcome of a risk; the disappearance *or diminution of value*, usu[ally] in an

1083    unexpected or relatively unpredictable way.'"  *Id.* (quoting Black's Law Dict. 963).

1084        *Hall* is readily distinguishable from this case because here, Plaintiffs allege injury in fact

1085    and money or property damages based on their contentions, as enumerated earlier, that the E350

1086    vans have diminished in monetary value because they are incapable of safely transporting 15

1087    passengers.  In other words, the E350 vans are "unsatisfactory" or "worth less" than what

1088    Plaintiffs paid for them.  Furthermore, liberally construing Plaintiffs' allegations, Plaintiffs

1089    sufficiently allege that Ford's fraudulent behavior *caused* Plaintiffs pecuniary damages.  (Compl.

48

1090    ¶ 62 ("*As a result of* . . . the actual risks posed by operation of the defective E350 vans, Plaintiff

1091    and Class members have sustained economic losses including, but not limited to, a significant

1092    diminution in the value of their vans.") (emphasis added); *id.* ¶ 93 ("Ford's [fraudulent] conduct .

1093    . . did[] deceive consumers into believing that they were purchasing a vehicle that could be used

1094    safely, legally, and practically to accommodate and transport 15 passengers.").)  Given that

1095    Plaintiffs allege that the E350 vans are unsatisfactory and have diminished in value, this Court

1096    cannot find, as a matter of law, that Plaintiffs fail to plead a proper UCL claim.  Thus, the Court

1097    will deny Ford's motion to dismiss Plaintiffs' California UCL claim.[13]

1098                            *b.    The California FAL*

1099            In order to state a claim under the California FAL, Plaintiffs must allege that statements

1100    or other representations appearing on Defendant's product labels are "likely" to deceive a

1101    reasonable consumer.  *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995).  If an alleged

1102    misrepresentation would not deceive a reasonable person or amounts to mere puffery, then this

1103    claim may be dismissed, as a matter of law, on a motion to dismiss.  *Haskell v. Time, Inc.*, 857 F.

1104    Supp. 1392, 1399 (E.D. Cal. 1994).  The term "likely" indicates that deception must be probable,

1105    not just possible.  *Freeman*, 68 F.3d at 289.  California courts have defined the "reasonable

---

[13] Ford's argument that Plaintiffs' California UCL claim is barred by the statute of limitations is unavailing.  The discovery rule is inapplicable to a UCL claim, but as found earlier, Plaintiffs state a proper claim for "equitable tolling based on fraudulent concealment."  *Stutz Motor Car of Am., Inc. v. Reebok Int'l., Ltd.*, 909 F. Supp. 1353, 1364 (C.D. Cal. 1995); *see also Suh v. Yang,* 987 F. Supp. 783, 795 n.8 (N.D. Cal. 1997) ("The doctrine of equitable tolling suspends the running of the statute of limitations if the plaintiff proves that the defendant fraudulently concealed the existence of the cause of action so that the plaintiff, acting as a reasonable person, did not know of its existence.") (internal quotation omitted).

1106    consumer" as an ordinary member of the public who acts reasonably in the situation presented.

1107    *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 510, 512 (Cal. App. 2003).  A California

1108    FAL claim must be pled with particularity, *Bennett v. Suncloud*, 56 Cal. App. 4th 91, 97 (Cal. Ct.

1109    App. 1997), here in accordance with Rule 9(b), *see* Fed. R. Civ. P. 9(b) ("[A] party must state

1110    with particularity the circumstances constituting fraud[.]").

1111            This Court finds that Plaintiffs properly plead a cause of action under the California FAL.

1112    In addition to Plaintiffs' exhaustive, particularized allegations discussed by the Court in Section

1113    II.E, *supra*, describing the circumstances surrounding Ford's alleged fraudulent concealment,

1114    Plaintiffs allege that "Ford's conduct herein is an unfair practice that has the capacity to, and did,

1115    deceive customers into believing that they were purchasing a vehicle that could be used safely,

1116    legally and practically to accommodate and transport 15 passengers."  (Compl. ¶ 93.)  This Court

1117    has already found that Plaintiffs adequately allege an express warranty claim based on Ford's

1118    description of the E350 vans as a "15 passenger" van.  *See supra* Section II.B.  Based on that

1119    determination, and the Court's finding that Plaintiffs sufficiently allege fraudulent concealment

1120    in the context of equitable tolling, the Court finds that Plaintiffs adequately allege that Ford's

1121    description is "likely" to deceive a reasonable customer into believing the E350 was capable of

1122    safely transporting 15 passengers.  Accordingly, Plaintiffs' California FAL claim withstands

1123    Ford's motion to dismiss.

1124                    *c.      The California CLRA*

1125            Ford challenges Plaintiffs' California CLRA claim on the ground that Greater All Nation

1126    lacks standing.  The California CLRA applies to any contract "undertaken by any person in a

1127    transaction intended to result or which results in the sale or lease of goods or services to any

50

1128    consumer." Cal. Civ. Code § 1770(a).  Section 1761(d) defines "consumer" to mean "an

1129    individual who seeks or acquires, by purchase or lease, any goods or services for personal,

1130    family, or household purposes." Cal. Civ. Code § 1761(d).  "Accordingly, the CLRA does not

1131    apply to commercial or government contracts, or to contracts formed by nonprofit organizations

1132    and other non-commercial groups." *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003); *see also*

1133    *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1303 (S.D. Cal. 2003).  Plaintiff Greater All

1134    Nation, a nonprofit church organization, does not fit within the CLRA's limited definition of

1135    "consumer," and thus does not have standing to file suit.  The Court will dismiss Plaintiffs'

1136    California CLRA claim.

1137        **4.      Illinois**

1138        Ford challenges Plaintiffs' claim brought under the Illinois Consumer Fraud Act ("Illinois

1139    CFA"), 815 ILCS § 505/1, *et seq.*  To state a claim under the Illinois CFA, Plaintiffs must allege

1140    (1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on the

1141    deception; and (3) that the deception occurred in the course of conduct involving trade and

1142    commerce.  *Siegel v. Levy Org. Dev. Co.*, 153 Ill.2d 534, 542 (1992); *see also First Midwest*

1143    *Bank, N.A. v. Sparks*, 289 Ill. App. 3d 252, 257 (Ill. App. Ct. 1997) ("Concealment is actionable

1144    where it is employed as a device to mislead and the concealed fact must be such that had the

1145    other party been aware of it, he would have acted differently.").  Plaintiffs need not allege

1146    reliance, *see Harkala v. Wildwood Realty, Inc.*, 200 Ill. App. 3d 447, 453 (Ill. App. Ct. 1990),

1147    though a proper claim must allege that the consumer fraud proximately caused Plaintiffs' injury,

1148    *see Wheeler v. Sunbelt Tool Co.*, 181 Ill. App. 3d 1088, 1109 (App. Ct. 1989).  Plaintiffs' Illinois

1149    CFA claim must be pled with particularity.  *Connick*, 675 N.E.2d at 593.

1150         The Court finds that Plaintiffs sufficiently state a claim under the Illinois CFA.  As

1151 previously detailed in this Opinion, Plaintiffs allege that Ford deceived Plaintiffs by withholding

1152 information concerning the safety of E350 vans, that Ford intended that Plaintiffs rely, and that

1153 this deception occurred during the course of commerce.[14]  (Compl. ¶¶ 2, 14-17, 48-54, 93, 98.)

1154 Ford argues that a claim sounding in fraudulent concealment requires an allegation of a fiduciary

1155 duty, *see Lionel Trains, Inc. v. Albano*, 831 F. Supp. 647, 650 (N.D. Ill. 1993), but Ford "has not

1156 directed the court to any persuasive authority holding that these requirements of common law

1157 fraud are incorporated into a claim of statutory fraud under Illinois' Consumer Fraud Act," *Celex

1158 Group, Inc. v. Executive Gallery, Inc.*, 877 F. Supp. 1114, 1129 (N.D. Ill. 1995).  The Court finds

1159 this requirement inapplicable in this context.  *See id.* at 1130 (concluding "that the common law

1160 requirement of a duty to disclose is not required in order for an omission or concealment to be

1161 actionable under the Consumer Fraud Act"); *see also White v. DaimlerChrysler Corp.*, 368 Ill.

1162 App. 3d 278, 285 (Ill. App. Ct. 2006) ("Defendant . . . reads into the [Illinois CFA] a duty

1163 requirement that does not exist."); *Miller v. William Chevrolet/GEO, Inc.*, 326 Ill. App. 3d 642,

1164 658 (Ill. App. Ct. 2001) ("[C]ourts have recognized that the common law duty requirements do

1165 not appear in the Act's broad language.").  That the Illinois CFA has less restrictive elements

1166 than common law fraud is no accident, given its broader scope and remedial legislative purpose.

1167 *See Eshaghi v. Hanley Dawson Cadillac Co., Inc.*, 214 Ill. App. 3d 995, 1001 (Ill. App. Ct. 1991)

1168 ("In interpreting the Consumer Fraud Act, courts have declined to use the restrictive elements of

1169 common law fraud and have been willing to give effect to the legislative goals behind enactment

---

[14] Ford's arguments that the statute of limitations bars Plaintiffs' claim, and that Plaintiffs failed to plead with particularity, lack merit.  *See supra* Sections II.H.2; II.H.3.a.

of this genre of consumer protection legislation.").  Without clear state authority requiring

Plaintiffs to plead a fiduciary relationship with Ford under the Illinois CFA, the Court here

declines to legislate an additional element from the bench.

Moreover, Illinois courts have regularly found actionable CFA claims in like

circumstances to this case, where a plaintiff brings suit against an automobile manufacturer for

allegedly deceiving the consumer about safety risks.  *See, e.g.*, *Lipinski v. Martin J. Kelly

Oldsmobile, Inc.*, 325 Ill. App. 3d 1139, 1143 (Ill. App. Ct. 2001) (finding proper claim under

Illinois CFA where plaintiff alleged that defendant knowingly concealed a defect in vehicle prior

to sale, thus constituting an actionable omission); *Perona v. Volkswagen of Am., Inc.*, 292 Ill.

App. 3d 59, 67-69 (Ill. App. Ct. 1997) (holding that plaintiffs properly stated a claim under the

Illinois CFA in class action brought against car manufacturer for concealing safety risks);

*Connick*, 675 N.E.2d at 594 ("Plaintiffs alleged that Suzuki was aware of the Samurai's safety

problems, including its tendency to roll over and its inadequate protection for passengers. . . .

Plaintiffs further alleged that Suzuki failed to disclose these defects."); *Totz v. Cont'l Du Page

Acura*, 236 Ill. App. 3d 891, 903 (Ill. App. Ct. 1992) (holding that failure of a used car dealer to

disclose a known history of vehicle damage was actionable under the Illinois CFA, regardless of

the existence of a common law duty to disclose).  The Court will deny Ford's motion to dismiss

Plaintiffs' Illinois CFA claim.

### 5.    New Jersey

The New Jersey Consumer Fraud Act ("New Jersey CFA") declares it to be an unlawful

practice for "any person" to use an "unconscionable commercial practice, deception, fraud, false

pretense, false promise, misrepresentation, or the knowing concealment, suppression, or

1192   omission of any material fact . . . in connection with the sale or advertisement of any

1193   merchandise." N.J.S.A. § 56:8-2.  "Thus, to state a claim under the CFA, a plaintiff must allege

1194   each of three elements: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the

1195   part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and

1196   the plaintiff's ascertainable loss." *N.J. Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super.

1197   8, 12 (App. Div. 2003); *see also Meshinsky v. Nichols Yacht Sales, Inc.*, 110 N.J. 464, 473

1198   (1988).  Under the CFA, "person" is defined broadly to include any natural person, partnership,

1199   corporation or company. N.J.S.A. § 56:8-1(d).  Dismissal for failure to state a claim, "in the

1200   [New Jersey] CFA context, is . . . appropriately approached with hesitation." *Schering-Plough*

1201   *Corp.*, 367 N.J. Super. at 13 (citing *Seidenberg v. Summit Bank*, 348 N.J. Super. 243, 249-50

1202   (App. Div. 2002)).

1203        Ford does not dispute that Plaintiffs properly allege the first element, unlawful conduct

1204   under the New Jersey CFA, and this Court finds that Plaintiffs' allegations satisfy this prong.  As

1205   the Court has already found, Plaintiffs allege fraudulent concealment of the E350 safety risks

1206   with regard to equitable tolling.  For similar reasons, Plaintiffs properly allege fraudulent

1207   behavior in the context of the New Jersey CFA.  However, again citing *Thiedemann*, 872 A.2d

1208   794, Ford contends that Plaintiffs fail to allege an "ascertainable loss" as mandated by the statute.

1209   For the reasons expressed earlier, *see supra* Section II.D.2, the Court finds this argument

1210   unavailing at this juncture.  *See Perkins v. DaimlerChrysler Corp.*, 383 N.J. Super. 99, 110-11

1211   (App. Div. 2006) ("[U]nlike *Thiedemann*, where the court reviewed a summary judgment, we

1212   cannot affirm the dismissal of the complaint based upon plaintiff's failure to provide evidence of

1213   a diminution in value."); *Lamont v. OPTA Corp.*, No. 2226-05, 2006 WL 1669019, at *7 (N.J.

54

1214    App. Div. June 16, 2006) ("There is nothing in *Thiedmann* that requires the pleading of an

1215    ascertainable loss element of a consumer Fraud Act cause of action with any special

1216    specificity.").

1217          Ford also challenges Plaintiffs' New Jersey CFA claim for lack of a causal nexus between

1218    the violation and the resulting loss.  Specifically, Ford argues that Plaintiffs pursue a "fraud on

1219    the market" theory of recovery to prove causation.  (Ford Br. at 66-67.)  Under that theory,

1220    "plaintiffs who purchased securities are permitted to demonstrate that they were damaged simply

1221    because defendant engaged in behavior otherwise prohibited and there was a change in price."

1222    *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 392

1223    (2007).  Yet, New Jersey courts "have rejected the fraud on the market theory as being

1224    inappropriate in any context other than federal securities fraud litigation."  *Id.*; *see also Kaufman*

1225    *v. i-Stat Corp.*, 165 N.J. 94, 118 (2000).  Thus, to the extent Plaintiffs indeed allege their New

1226    Jersey CFA claim under a fraud on the market theory, this theory cannot survive.  *See Schering-*

1227    *Plough*, 367 N.J. Super. at 16 (determining, on motion to dismiss, that fraud on the market theory

1228    has "no place as a part of the proofs required of plaintiffs in the CFA context").

1229          Here, however, Plaintiffs do not expressly, nor impliedly, plead such a theory.  Rather,

1230    the Court finds that Plaintiffs adequately allege causal nexus under circumstances distinguishable

1231    from fraud on the market.  Plaintiffs allege that "Ford's conduct herein is an unfair practice that

1232    has the capacity to, and did, deceive customers into believing that they were purchasing a vehicle

1233    that could be used safely, legally and practically to accommodate and transport 15 passengers."

1234    (Compl. ¶ 93.)  Construing Plaintiffs' allegations in a light most favorable to them, the

1235    Complaint charges that Ford's alleged violations led to Plaintiffs' damages by virtue of Ford's

1236   misrepresentations and omissions directed at Plaintiffs as direct customers.  These facts differ

1237   from fraud on the market, because under that theory, a plaintiff must allege "only that the price

1238   charged" for the product at issue "was higher than it should have been as a result of defendant's

1239   fraudulent marketing campaign[.]"  *Merck*, 192 N.J. at 392.  In other words, a party pursues fraud

1240   on the market, or "price inflation theory," when it alleges that "the fact of advertising the

1241   products caused the prices to rise both for the ones that are effective and for these, allegedly

1242   ineffective products as well."  *Schering-Plough*, 367 N.J. Super. at 15, 16.  Yet here, Plaintiffs

1243   allege that Ford's fraudulent acts and omissions caused Plaintiffs' damages in the form of

1244   diminution in value and loss of use.  They do not claim that the price charged for the allegedly

1245   unsafe vehicles was inflated by a broad advertising campaign.  Thus, unlike the plaintiffs in

1246   *Merck* and *Schering-Plough*, Plaintiffs here do not pursue the price inflation theory, nor

1247   otherwise allege circumstances associated with a "change in price" on the market.  *Merck*, 192

1248   N.J. at 392.  Given the "hesitation" urged by New Jersey courts in approaching motions to

1249   dismiss New Jersey CFA claims, and generally construing Plaintiffs' allegations with liberality,

1250   the Court cannot find that Plaintiffs plead fraud on the market as a matter of law.  Accordingly,

1251   for the reasons discussed with regard to Plaintiffs' California UCL claim, *supra* Section II.H.3,

1252   Plaintiffs properly plead a causal relationship between their loss and Ford's alleged unlawful

1253   conduct.

1254        Ford last argues that Plaintiffs' New Jersey CFA claim is nevertheless barred by the

1255   economic loss doctrine.  While the Supreme Court of New Jersey has excluded recovery in tort

1256   for purely economic losses that instead may be pursued under contract or warranty claims, *see*

1257   *Alloway v. Gen. Marine Indus., L.P.*, 695 A.2d 264, 275 (N.J. 1997), Ford cites no authority

1258    extending this doctrine to bar recovery under the New Jersey CFA.  Indeed, in *Alloway*, the court

1259    expressly recognized "the Consumer Fraud Act, which provides generous protection to defrauded

1260    consumers[,]" as an example of a statutory enactment granting consumers the right to recover

1261    economic losses.  *Id.* at 274; *see also Payne v. Fujifilm U.S.A., Inc.*, No. 07-385, 2007 WL

1262    4591281, at *10 (D.N.J. Dec 28, 2007) (rejecting defendant's economic loss doctrine argument

1263    and permitting New Jersey CFA and warranty claims to proceed); *First Valley Leasing, Inc. v.*

1264    *Goushy*, 795 F. Supp. 693, 699 (D.N.J. 1992) ("[T]he court believes that . . . the New Jersey

1265    Supreme Court would permit plaintiff to pursue its claims for tort [fraud and New Jersey CFA]

1266    damages against defendant" alongside UCC claims); *Coastal Group v. Dryvit Sys.*, 274 N.J.

1267    Super. 171*,* 180 (App. Div. 1994) ("Since this case must be remanded to the trial court to permit

1268    plaintiff to pursue its claims of fraud, misrepresentation and violation of the Consumer Fraud

1269    Act, we believe that the interests of justice will be served by also allowing plaintiff to amend its

1270    complaint to assert a claim against Dryvit under the UCC."); *Perth Amboy Iron Works v. Am.*

1271    *Home Assurance Co.*, 226 N.J. Super. 200, 226-27 (App. Div. 1988) (holding that commercial

1272    buyer of yacht could maintain Consumer Fraud Act and common-law fraud claims based on

1273    economic loss).

1274        Moreover, the UCC expressly preserves a buyer's right to maintain an action in fraud.

1275    *See* N.J.S.A. § 12A:1-103 ("Unless displaced by the particular provisions of this Act, . . . the law

1276    relative to . . . fraud . . .  shall supplement [the UCC's] provisions."), *aff'd*, 118 N.J. 249 (1990);

1277    *see also Delgozzo v. Kenny*, 266 N.J. Super. 169, 183 (App. Div. 1993) (noting that under

1278    N.J.S.A. § 12A:1-103, the UCC does not "preempt" either common law fraud or CFA claims).

1279    Thus, Plaintiffs properly plead a violation of the New Jersey CFA, an ascertainable loss, and a

1280    causal connection.  Accordingly, the Court concludes that Plaintiffs state a claim for relief under

1281    the New Jersey CFA.

1282

1283    **III.**    **CONCLUSION AND ORDER**

1284    For the foregoing reasons, Ford's motion to dismiss (Doc. No. 33) is GRANTED IN

1285    PART and DENIED IN PART.  Specifically,

1286        1.    Plaintiffs' First Cause of Action, breach of express warranty, is DISMISSED

1287        WITHOUT PREJUDICE as to the Alabama, Arkansas, and Illinois parties for

1288        failure to comply with notice requirements.  The First Cause of Action, however,

1289        remains at issue for Plaintiffs' California and New Jersey suits.

1290        2.    Plaintiffs' Second Cause of Action, breach of implied warranty, insofar as it is

1291        brought by the Alabama, Arkansas, and Illinois parties, is DISMISSED

1292        WITHOUT PREJUDICE for failure to comply with notice requirements.

1293        However, the Second Cause of Action remains pending as to Plaintiffs' California

1294        and New Jersey suits.

1295        3.    Ford's motion to dismiss Plaintiffs' Third Cause of Action, sounding in unjust

1296        enrichment, is DENIED.  Plaintiffs' Third Cause of Action shall endure as to all

1297        parties.

1298        4.    Plaintiff New Bethlehem's (Alabama) Fourth Cause of Action, brought under the

1299        Alabama DTPA, is DISMISSED for lack of standing.

1300        5.    Plaintiff Eleventh Street's (Arkansas) Fourth Cause of Action, brought under the

1301        Arkansas DTPA, is DISMISSED for lack of cognizable damages.

1302   6.   Plaintiff Greater All Nation's (California) Fourth Cause of Action, insofar as it is

1303        brought under the California CLRA theory, is DISMISSED for lack of standing.

1304        However, Plaintiff Greater All Nation's Fourth Cause of Action with regards to

1305        the California UCL and California FAL, remains in contention.

1306   7.   Ford's motion to dismiss Plaintiff Pentecostal Temple's (Illinois) Fourth Cause of

1307        Action, brought under the Illinois CFA, is DENIED.  Pentecostal Temple's Fourth

1308        Cause of Action remains at issue.

1309   8.   Ford's motion to dismiss Plaintiffs' Fourth Cause of Action, insofar as it sounds

1310        in the New Jersey CFA, is DENIED.  Plaintiffs' New Jersey CFA claim endures.

1311
1312   Dated: September 2, 2008
1313   Newark, New Jersey
1314
1315                                   /s/ Harold A. Ackerman,
1316                                   U.S.D.J.

59