**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

—————————————————————
                                               )
IN RE FORD MOTOR CO. E-350                     )    Civ. No. 03-4558 (HAA)
VAN PRODUCTS LIABILITY                         )    MDL 1687
LITIGATION (NO. II)                            )
—————————————————————)    **AMENDED OPINION & ORDER**[*]

Daniel R. Lapinski, Esq.
Kevin P. Roddy, Esq.
WILENTZ, GOLDMAN & SPITZER P.A.
90 Woodbridge Center Drive, Suite 900
Woodbridge, New Jersey 07095

Ira Press, Esq.
KIRBY MCINERNEY, LLP
825 Third Avenue, 16th Floor
New York, New York 10022
*Attorneys for Plaintiff*s

C. Scott Toomey, Esq.
Diane L. Scialabba, Esq.
CAMPBELL CAMPBELL EDWARDS & CONROY, P.C.
3 South Broad Street, Suite 2C
Woodbury, New Jersey 08096

Garrett W. Wotkyns, Esq.
S. Bradley Perkins, Esq.
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006

James D. Smith, Esq.
BRYAN CAVE LLP
Two North Central Avenue, Suite 2200
Phoenix, Arizona 85004
*Attorneys for Defendant*

———————————————

[*] This Amended Opinion & Order has been issued to correct a minor typographical error, and does not offer any substantive revision.

1

## TABLE OF CONTENTS

I.   BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.  ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     A.   Choice of Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     B.   Presence of an Express Warranty. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
     C.   Express and Implied Warranties: Pre-Litigation Notice. . . . . . . . . . . . . . 11
          1.   Alabama. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
          2.   Arkansas. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
          3.   California. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
          4.   Illinois. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
     D.   Express and Implied Warranties: Actual Injury. . . . . . . . . . . . . . . . . . . . 26
          1.   California. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
          2.   New Jersey. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
     E.   Express and Implied Warranties: Time Bar. . . . . . . . . . . . . . . . . . . . . . . 31
     F.   Implied Warranty. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
          1.   Implied Warranty: Failure to Allege Lack of Merchantability. . . . . . . 38
          2.   Implied Warranty: Durational Limitations. . . . . . . . . . . . . . . . . . . . 39
     G.   Unjust Enrichment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
     H.   State Consumer Fraud. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
          1.   Alabama. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
          2.   Arkansas. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
          3.   California. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
               a.   The California UCL . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
               b.   The California FAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
               c.   The California CLRA. . . . . . . . . . . . . . . . . . . . . . . . . . . 50
          4.   Illinois. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51
          5.   New Jersey . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

III. CONCLUSION AND ORDER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

**ACKERMAN,** **Senior District Judge:**

Before the Court is a motion (Doc. No. 33) by Defendant Ford Motor Company ("Ford")

to dismiss the Consolidated and Amended Class Action Complaint in this multidistrict litigation.

For the reasons set forth below, Defendant's motion to dismiss will be granted in part and denied

in part.

I.      BACKGROUND

On June 16, 2005, the Judicial Panel on Multidistrict Litigation ("MDL Panel")

transferred five actions[1] to this Court for consolidated pretrial proceedings pursuant to 28 U.S.C.

§ 1407.  *In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, 374 F. Supp. 2d 1353

(J.P.M.L. 2005).  Following the transfer to this Court, Plaintiffs filed on January 1, 2006, a

Consolidated and Amended Class Action Complaint ("Complaint").  In the Complaint, Plaintiffs

allege that their Ford E-350 "15-passenger" vans are defectively designed due to a high center of

gravity that leads to an unusually high rollover rate, and therefore an increased risk of death or

injury.  No Plaintiffs or members of the proposed class have actually suffered a rollover.

Plaintiffs, however, claim economic harm because the alleged defect makes the E-350 vans

unsuitable and unfit for transporting 15 passengers.

Plaintiffs bring the following causes of action: (1) breach of express warranty; (2) breach

of implied warranty; (3) unjust enrichment; and (4) violation of state consumer fraud statutes.

---

[1] *New Bethlehem Baptist Church v. Ford Motor Co.*, No. 2:05-519 (N.D. Ala.); *Eleventh Street Baptist Church v. Ford Motor Co.*, No. 4:05-4020 (W.D. Ark.); *Greater All Nation Pentecost Church of Jesus Christ v. Ford Motor Co.*, No. 2:05-1765 (C.D. Cal.); *Pentecostal Temple Church of God in Christ v. Ford Motor Co.*, No. 1:05-1340 (N.D. Ill.); *Social Clubhouse, Inc. v. Ford Motor Co.*, No. 2:03-4558 (D.N.J.).

Specifically, Plaintiffs seek damages for the alleged diminution in value of their vehicles as a result of the vehicles' alleged defects; the cost of purchasing or leasing additional vehicles and of training drivers; equitable relief requiring Ford to correct the alleged defect and enjoining Ford from selling any more extended passenger vans unless the alleged defect is corrected; restitution; disgorgement of revenues; and applicable statutory damages.

The Complaint asserts claims on behalf of eight named Plaintiffs, including: New Bethlehem Baptist Church (Alabama) ("New Bethlehem"), Eleventh Street Baptist Church (Arkansas) ("Eleventh Street"), Greater All Nation Pentecost Church of Jesus Christ (California) ("Greater All Nation"), Pentecostal Temple Church (Illinois) ("Pentecostal"), Faith Tabernacle Church (New Jersey) ("Faith Tabernacle"), Macedonia Free Will Baptist Church (New Jersey) ("Macedonia Free Will"), Greater Holy Trinity Baptist Church (New Jersey),[2] and Social Clubhouse, Inc. (New Jersey).  The Complaint also asserts claims on behalf of a putative nationwide class that includes: "all persons and entities who purchased or otherwise lawfully acquired E350 '15-passenger' vans (a/k/a E350 Super Club Wagons, Econoline '15-passenger' vans, or E350 Super Duty Extended Length passenger vans) manufactured by Defendant Ford Motor Company . . . model years 1991-2005, and who reside in the fifty states and/or the District of Columbia."  (Compl. ¶ 1.)  This class includes persons or entities who purchased new or used vans between January 1, 1991 and the date of the filing of the Complaint, inclusive.  The proposed class, however, specifically excludes those who claim damages for personal injury as a result of purchasing or leasing a Ford E350 van.  (Compl. ¶ 63.)

---

[2] On May 4, 2007, Greater Holy Trinity Baptist Church voluntarily dismissed its lawsuit.

## II.   ANALYSIS

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint, or a count therein, for failure to state a claim upon which relief may be granted.  In evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court "must accept as true all well-pleaded allegations of the complaint[] and construe them liberally in the light most favorable to the plaintiffs." *Labov v. Lalley*, 809 F.2d 220, 221 (3d Cir. 1987).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, – U.S. –, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).  A complaint must contain "enough facts to state a claim to relief that is plausible on its face," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 127 S. Ct. at 1965, 1974. A court need not accept "'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness," *Wyeth v. Ranbaxy Labs., Ltd.*, 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

As a general rule, a court "may only consider the pleading which is attacked by an FRCP 12(b)(6) motion in determining its sufficiency."  *Pryor v. NCAA*, 288 F.3d 548, 560 (3d Cir. 2002).  However, a court "may consider documents which are attached to or submitted with the complaint, as well as legal arguments presented in memorand[a] or briefs and arguments of

counsel." *Id.* (emphasis omitted).

A.     **Choice of Law**

At the outset, this Court must determine which law to apply to Plaintiffs' claims.  When a federal court is called upon to decide matters of state law, it must apply the choice-of-law rules of the state in which its sits.  *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  "New Jersey choice of law principles require an interest analysis, in which the forum court compares the interests of the states whose laws are potentially involved in the underlying action and determines which state has the greatest interest in having its law applied."  *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 347-48 (D.N.J. 1997) (citing *Gantes v. Kason Corp.*, 145 N.J. 478 (1996)).

Ford maintains that the laws of each Plaintiff's home state must be applied because those states have interests that outweigh the interests of any one state, such as Michigan, where the E350s were designed and manufactured.  In their pleading, Plaintiffs assert that "all 50 states and the District of Columbia" provide consumer protection laws, but in the alternative, Plaintiffs plead, if any one jurisdiction's law applies, that it is Michigan, "the state in which Ford is headquartered."  (Compl. ¶¶ 73, 96.)  In their brief, Plaintiffs do not otherwise seriously contest Ford's choice of law argument, citing law from all five jurisdictions where Plaintiffs reside in discussing Plaintiffs' claims on the merits.

The Court agrees with Ford.  As another court in this District determined upon similar facts:

> Each plaintiff's home state has an interest in protecting its consumers from in-state injuries caused by foreign corporations and in delineating the scope of recovery for its citizens under its own laws.

6

> These interests arise by virtue of each state being the place in which plaintiffs reside, or the place in which plaintiffs bought and used their allegedly defective vehicles or the place where plaintiffs' alleged damages occurred.
>
> While it might be desirable, for the sake of efficiency, to settle upon one state – like Michigan or New Jersey – and apply its laws in lieu of the other 49 jurisdictions, due process requires individual consideration of the choice of law issues raised by each class member's case before certification.  Since the laws of each of the fifty states vary on important issues that are relevant to plaintiffs' causes of action and defendants' defenses, the court cannot conclude that there would be no conflict in applying the law of a single jurisdiction, whether it be Michigan, or New Jersey, as the plaintiffs suggest.  Thus, the court will apply the law of each of the states from which plaintiffs hail.

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. at 348.  Similarly, this Court concludes that the states in which the plaintiffs reside have a greater interest in the underlying litigation than Michigan or any one state.  The named plaintiffs bringing the Complaint are residents of Alabama, Arkansas, California, Illinois, and New Jersey.  Except where there is no material difference, the Court "will apply the law of those states to determine whether the causes of action brought by these named plaintiffs are legally cognizable."  *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, Nos. 96-3125, -1814, -3198, 2001 WL 1266317, at *5 (D.N.J. Sept. 30, 1997).

### B.      Presence of an Express Warranty

In the First Cause of Action of their Complaint, Plaintiffs allege breach of express warranty under UCC § 2-313, as codified by each of the states at issue.  According to Plaintiffs, with each sale of an E350 van, Ford expressly warranted by its representations that the van could "legally and practically" accommodate "15-passenger[s.]"  (Compl. ¶ 78.)  In turn, Ford breached

its warranty by selling a defective vehicle which could not safely transport 15 passengers.  (*Id.* ¶ 79.)

In the instant motion to dismiss, Ford asserts that Plaintiffs have failed to properly allege the existence of any specific statement or affirmation that could support an express warranty claim.  Ford argues that many of the statements that Plaintiffs allege were made by Ford occurred after Plaintiffs had already purchased their respective vehicles, and thus could not have formed the basis for Plaintiffs' respective bargains.  Although Plaintiffs cite many of Ford's advertisements and public statements, Ford insists that such advertisements could not create express warranties.  In particular, Ford argues that its statements that the E350 van "is a very safe vehicle," and that the E350 van is "America's Most Trustworthy" constitute "classic examples of non-actionable opinion," or puffing.  (Def.'s Br. at 16.)  Notably, Plaintiffs do not suggest otherwise.  And courts have routinely deemed such statements non-actionable.  *See, e.g.*, *Lithuanian Comm. Corp., Ltd. v. Sara Lee Hosiery*, 214 F. Supp. 2d 453, 459 (D.N.J. 2002) ("[I]n contracts for the sale of goods governed by New Jersey's U.C.C., a seller's statement about the value of goods cannot create a warranty."); *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994) ("Advertising that amounts to 'mere' puffery is not actionable because no reasonable consumer relies on puffery."); *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 847 (Ill. 2005) ("Describing a product as 'quality' or as having 'high performance criteria' are the types of subjective characterizations that Illinois courts have repeatedly held to be mere puffing."); *Mason v. Chrysler Corp.*, 653 So.2d 951, 953-54 (Ala. 1995) (holding that a national advertising campaign referring to a vehicle's quality engineering, reliability and smooth riding was puffing); *Cornish v. Friedman*, 126 S.W. 1079, 1083 (Ark. 1910) ("[M]ere words of praise

and commendation or which merely express the vendor's opinion, belief, judgment, or estimate, do not constitute a warranty.").

Plaintiffs, however, do not concede Ford's argument in full.  Instead, Plaintiffs pin their express warranty claim on Ford's purported "core description" of the E350 van as a "15-passenger van."  Plaintiffs argue that "Ford does not deny that it advertised, described and labeled the E350 as a 15-passenger van . . . .  Indeed, Ford, simply by the act of outfitting the E350 with seats for fifteen passengers, expressly warrants that the van is in fact capable of transporting 15 passengers."  (Pls.' Br. at 9.)  Because the E350 vans "could not safely carry 15 passengers," Plaintiffs argue, Ford's express warranty that the vehicles were "15-passenger" vans was breached.

Section 2-313 of the UCC recognizes three general classes of statements or representations by which a seller may create an express warranty:

> (a)    Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
> (b)    Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
> (c)    Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

See Ala. Code § 7-2-313(1); Ark. Code Ann. § 4-2-313(1); Cal. Com. Code § 2313(1); Ill. Comp. Stat. Ann. § 5/2-313(1); N.J.S.A. § 12A:2-313(1).  Importantly, under the UCC, "[i]t is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty."  See, e.g., N.J.S.A. §

9

12A:2-303(2).  However, "an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."  *Id.*

Plaintiffs sufficiently allege that Ford's description of the E350 as a "15-passenger" van constitutes an express warranty under UCC § 2-313.  First, accepting Plaintiffs' allegations as true, Ford's representation that the E-350 van was capable of transporting 15 people was not a subjective statement relating to the good's value, but rather an objective representation warranting the van's design and safety.  Second, this Court observes that whether a given statement constitutes an express warranty is normally a question of fact for the jury.  *See Betaco, Inc. v. Cessna Aircraft Co.*, 32 F.3d 1126, 1130 (7th Cir. 1994) ("[Defendant] does not challenge the jury's determination that [its] representation as to the relative range of the CitationJet constituted an express warranty."); *Union Ink Co., Inc. v. AT&T Corp.*, 352 N.J. Super. 617, 645 (App. Div. 2002) ("Whether the advertisements contained material misstatements of fact, or were merely puffing, as alleged by defendants, presents a question to be determined by the trier of fact."); *Lucky Mfg. Co. v. Activation, Inc.*, 406 So. 2d 900, 905 (Ala. 1981) (recognizing that jury found express warranty as to written representation); *Greenman v. Yuba Power Products, Inc.*, 59 Cal. 2d 57, 60 (1963) ("The jury could also reasonably have concluded that statements in the manufacturer's brochure . . . constituted express warranties"); *Cornish*, 126 S.W. at 1083 ("[W]hether a particular assertion is an affirmance of a positive fact, or, on the other hand, only praise and commendation, opinion or judgment, is a question for the jury, where the meaning is ambiguous, and the intention of the parties may be gathered from the surrounding circumstances.") (citation omitted).

Here, several issues cannot be resolved on a motion to dismiss, including: whether Ford's description of the E350 van as a "15-passenger" van or Ford's outfitting the vans with seats for 15 passengers independently supports an express warranty; if so, whether any such warranty was the basis of the bargain between Plaintiffs and Ford; and whether Ford breached any such warranty.  Therefore, this Court will deny Ford's motion to dismiss Plaintiffs' express warranty claims.

### C.      Express and Implied Warranties: Pre-Litigation Notice

Ford argues that the breach of express and implied warranty claims asserted by Plaintiffs New Bethlehem (Alabama), Eleventh Street (Arkansas), Greater All Nation (California), and Pentecostal Temple (Illinois) must be dismissed based upon Plaintiffs' failure to allege compliance with the notice requirement of section 2-607(3)(a) of the Uniform Commercial Code.[3]

Defendant asserts that the laws of Alabama, Arkansas, California, and Illinois require a buyer, prior to the filing of a complaint, to notify a seller that there has been a breach; failure to provide such notice serves as a bar to suit.  *See Hart v. Yamaha-Parts Distribs., Inc.*, 787 F.2d 1468, 1474 (11th Cir. 1986); *Fieldstone Co. v. Briggs Plumbing Prods. Inc.*, 62 Cal. Rptr. 2d 701, 708-709 (Cal. Ct. App. 1997); *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 590 (Ill. 1996); *Williams v. Mozark Fire Extinguisher Co.*, 888 S.W.2d 303, 305-06 (Ark. 1994); *Parker v. Bell Ford, Inc.*, 425 So. 2d 1101, 1103 (Ala. 1983).

Nowhere in the Complaint does any Plaintiff plead that it provided direct notice of the

---

[3] Defendants do not argue that the New Jersey Plaintiffs' claims suffer from the same infirmity.

alleged breach to Defendant or any immediate seller of the vehicles.  However, according to Plaintiffs, the pre-litigation notice requirements of the state statutes at issue were satisfied because: (1) Ford had actual notice of the alleged defect of the E350 van model generally; (2) Ford had constructive notice of the alleged defect based upon the filing of the complaint; (3) Ford failed to allege any prejudice due to any lack of notice; and (4) the sufficiency of Plaintiffs' notice is a question of fact not to be decided on a motion to dismiss.  (Pls.' Br. at 33-36.)  For the reasons discussed below, this Court will grant Defendant's motion to dismiss for failure to plead pre-litigation notice as to the Plaintiffs from Alabama, Arkansas and Illinois, but not as to the California Plaintiff.  The breach of warranty claims that are dismissed are done so without prejudice and with leave to amend.  If Plaintiffs from Alabama, Arkansas and Illinois can allege that they provided pre-litigation notice to Ford in any way recognized under the respective laws of those states, they may do so in an amended complaint.

The pre-litigation notice requirement stems from § 2-607(3) of the Uniform Commercial Code, which provides: "Where a tender has been accepted (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."  This language has been adopted in the codes of each state at issue. Ala. Code § 7-2-607(3)(a); Ark. Code Ann. § 4-2-607-(3)(a); Cal. Com. Code. § 2607(3)(A); 810 Ill. Comp. Stat. 5/2-607(3)(a).

The notice requirement of § 2-607(3)(a) is supported by a number of justifications, such as to prevent stale claims, allow sellers to marshal evidence for a defense, and allow sellers to correct the defect or mitigate damages.  *See Hobbs v. Gen. Motors Corp.*, 134 F. Supp. 2d 1277, 1283 (M.D. Ala. 2001); *Jackson v. Swift-Eckrich*, 830 F. Supp. 486, 491 (W.D. Ark. 1993);

*Goldstein v. G.D. Searle & Co.*, 62 Ill. App. 3d 344, 350 (Ill. App. Ct. 1978), *holding limited by*

*Bd. of Educ. of City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428, 462 (Ill. 1989); *Pollard v. Saxe*

*& Yolles Dev. Co.*, 525 P.2d 88, 92 (Cal. 1974).

      With this background in mind, the Court first considers Plaintiffs' contention that direct

notice of the breach of warranty should be excused because Ford had actual notice of the alleged

defects of the E350 vans.  Specifically, Plaintiffs allege that Ford was "fully aware of the alleged

defect from the earliest stages of the E350's development, [and] was further warned by the NTSB

and NHTSA, to which agencies the Defendant gave extensive responses."  (Pls.' Br. at 33.)  To

be sure, Plaintiffs' Complaint alleges numerous occasions upon which Defendant likely became

aware of the possibility that its E350 vans contained design defects.  (Compl. ¶¶ 21-55.)  For

example, Plaintiffs allege that in April 2001, the NHTSA released a study that found that "'15-

passenger' vans manufactured and sold by Ford, when loaded with ten or more occupants,

exhibited a rollover rate in single vehicle crashes (crashes in which no other vehicle was

involved) that was nearly three times the rate of crashes involving vehicles that were 'lightly

loaded' (i.e., having just a driver and no passengers)."  (*Id.* ¶ 28.)  Plaintiffs also allege that in an

April 2002 recommendation to consumers, the NHTSA announced that 15-passenger vans should

be operated only by specially trained, experienced drivers, rather than ordinary or unskilled

drivers.  (*Id.* ¶ 31.)  According to Plaintiffs, Ford issued a September 5, 2002 press release in

response to this NHTSA recommendation in which Ford asserted that the E350 vans were "very

safe" vehicles, yet "warned its E350 van customers that 'it is important that 15-passenger vans be

operated by trained, experienced drivers,' that drivers should avoid 'sharp turns' and 'abrupt

maneuvers,' and that 'extra precautions should be taken.'" (*Id.*)  Plaintiffs assert that on two

occasions in 2002, the alleged hazards of Ford's E350 vans were the subject of segments on the television program "60 Minutes II." (*Id.* ¶¶ 38, 61.) Based upon these alleged events, among others, Plaintiffs insist that Defendant had actual, if not direct, notice of the alleged defects.

Plaintiffs contend that in a "majority of cases," actual notice sufficiently complies with the notice requirement of UCC § 2-607(3). (Pls.' Br. at 33 (citing James J. White & Robert S. Summers, Uniform Commercial Code 611 n.1 (4th ed. 1995); U.C.C. § 1-201(25).)[4] However, whether there exists a majority or minority position regarding the purpose of the UCC's notice requirement is of limited value. This Court is not writing on a blank slate; it must canvas the interpretation of the pre-litigation notice requirement in Alabama, Arkansas, California, and Illinois. As discussed above, choice-of-law analysis requires that this Court render a decision in accordance with the prevailing law of the appropriate forum state. Accordingly, the Court turns to an analysis of the laws in the four states at issue.

### 1.    Alabama

This Court finds that Alabama Plaintiff New Bethlehem failed to comply with the notice requirement. Defendant asserts that New Bethlehem's warranty claims are barred because the Complaint fails to allege compliance with Alabama Code § 7-2-607(3)(a), which describes a buyer's obligation upon learning of a defect in a product he has accepted:

> (3)    Where a tender has been accepted: (a) The buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of the breach or be barred from any remedy[.]

Ala. Code § 7-2-607(3)(a). The Alabama Supreme Court has recognized that, although this

---

[4] For this proposition, however, Plaintiffs cite no specific cases from, or applying the law of, Alabama, Arkansas, California, or Illinois.

provision "does not indicate what constitutes sufficient notice," the corresponding Committee Comment states that "[t]he notification which saves the buyer's rights under this Article need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation." *Jewell v. Seaboard Indus., Inc.*, 667 So.2d 653, 660 (Ala. 1995) (citing Ala. Code § 7-2-607 cmt. 4). The Court noted that UCC § 7-1-201(26) "provides that a person 'notifies or gives a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it.'" *Id.* Further, "[t]he question of sufficient notice 'must be tested in light of the facts of the particular case.'" *Id.*

The Alabama Supreme Court has recognized that pre-litigation notice, as required by Alabama Code § 7-2-607(3)(a), is a "condition precedent to recovery" for a breach of warranty action. *Parker*, 425 So. 2d at 1102; *see also Hart v. Yamaha-Parts Distribs., Inc.*, 787 F.2d 1468, 1474 (11th Cir. 1986) ("The Alabama courts have held that notice of breach is a condition precedent to bringing a breach of warranty action . . . which must be affirmatively pleaded in the complaint.") (citations omitted).

However, in certain circumstances, such as personal injury actions, the notice requirement for asserting warranty claims has been abrogated by Alabama courts. *Hobbs*, 134 F. Supp. 2d at 1283 (citing *Simmons*, 368 So. 2d 509 (Ala. 1979)). The court's departure in certain circumstances from strict enforcement of the UCC notice requirement evinces a policy on the part of the Alabama Supreme Court to evaluate the underlying justifications for notice in a given case. *See Hobbs*, 134 F. Supp. 2d at 1284. For example, according to the Alabama Supreme Court, the policies which support the notice requirement are not applicable to personal injury

actions where "notice is inconsequential in preventing or mitigating the harm since the injury has already occurred." *Simmons*, 368 So. 2d at 514.

Following a detailed discussion of the treatment by Alabama courts of the notice requirement under § 7-2-607(3)(a), a district court in Alabama held in *Hobbs* that a breach of warranty action against a car manufacturer was barred for failure to give timely notice.  The court in *Hobbs* acknowledged that another district court in Alabama had previously determined "albeit in dicta, that under Alabama law, if a plaintiff is a buyer, and not a third party beneficiary of a consumer warranty, the plaintiff must notify the seller of an alleged breach of warranty before being allowed to pursue a warranty action against the remote manufacturer." *Id.* at 1286 (citing *Snell v. G.D. Searle & Co.*, 595 F. Supp. 654 (N.D. Ala. 1984)).  Further distilling this idea, the court in *Hobbs* determined that under Alabama law:

> for remote manufacturers to be held liable for an unintentionally-created express warranty, as are sellers under the UCC, remote manufacturers should be afforded the same protections as sellers, either by way of notice provided directly to them, or through notice provided to them by the direct seller from the buyer.

*Id.* at 1285.  Therefore, the notice requirement applies to suits against car manufacturers, like Defendant Ford in the instant matter, as it does to sellers.

Notably, the court recognized that the Alabama Supreme Court's decision in *Parker* stands for the proposition that "in the context of economic harm rather than personal injury, the filing of a lawsuit is not considered to be sufficient notice under Alabama law." *Id.* at 1285 ("Notice must, therefore, precede the filing of the complaint."); *see also Rampey v. Novartis Consumer Health, Inc.*, 867 So. 2d 1079, 1086 (Ala. 2003).  Hence, New Bethlehem's argument that notice-by-suit is sufficient under Alabama's notice requirement is without merit.

The court in *Hobbs* recognized that as a general matter, "the issue of sufficiency of notice is a question of fact for a jury to determine.  Where, however, no notice is given, there is no issue of sufficiency for a jury to determine."  *Id.* (citing *Parker*, 425 So. 2d at 1103).  In other words, where no form of notice recognized under Alabama law is given, the issue of *sufficiency* of notice need not be determined by a jury; logically, no notice is insufficient notice.  *See id.* at 1286 n.3.  Thus, the issue remains one of law, not fact, and this Court may properly address the issue of notice on the instant motion to dismiss.

As noted above, Plaintiff New Bethlehem also challenges a strict application of the notice requirement under Alabama law where a defendant has "actual notice" of an alleged defect.  According to Plaintiff New Bethlehem, "[a]ll that is required is that the seller know that the transaction is still troublesome and must be watched."  (Pls.' Br. at 33-34 (internal quotation marks omitted).)  There are several problems with Plaintiff's argument.  Plaintiff New Bethlehem does not allege that Ford, or any immediate seller of its E350 van, knew that New Bethlehem's specific "transaction" was "troublesome and must be watched."  Additionally, the statement that "actual notice is sufficient to satisfy 2-607" is correct, but in a limited context.  After a careful inspection of the treatise to which Plaintiff cites, and specifically the footnote in which the authors suggest that a "majority of cases find actual notice to suffice," this Court is not persuaded that the Alabama Supreme Court would recognize such an exception to the notice requirement as Plaintiff New Bethlehem now pursues.  First, the authors rely on no Alabama case to support this proposition.[5]  Second, in no case relied upon by the authors does a court hold that absent

---

[5] The authors also do not cite to any case from Arkansas or California to support this proposition.

17

knowledge of problems with the product of a specific transaction, a manufacturer's general awareness of an alleged defect with a product line satisfies the notice requirement of § 2-607(3)(a).  Recognition of "actual notice" as an exception to the notice requirement, in the cases cited by the authors, and in every other case applying Alabama law of which this Court is aware, is limited to situations where a seller has actual knowledge of the defect of the product sold in a *particular transaction*, prior to the filing of a lawsuit.  Contrary to Plaintiffs' argument, generalized knowledge of alleged defects in a product line has not been held to suffice.

Evidently, prior to filing suit, New Bethlehem took no steps to notify Defendant regarding the alleged breach of warranties, or any problem it was having in connection with its E350 van.  As such, Defendant was not "afforded the same protections" under the UCC as are provided for sellers.  *See Hobbs*, 134 F. Supp. 2d at 1285.  Given its importance, this Court is not persuaded that the Alabama Supreme Court would create an exception to the notice requirement that exonerates plaintiffs from taking any affirmative steps to notify a seller that a particular transaction is problematic prior to bringing a claim for breach of warranty.  Similarly, this Court is not persuaded that the Alabama Supreme Court would waive the notice requirement where a defendant does not allege prejudice.

Therefore, New Bethlehem's claims for breach of warranty will be dismissed without prejudice.  If New Bethlehem can allege that it provided pre-litigation notice to Ford in any way recognized under Alabama law, it may do so in an amended complaint.

### 2.    Arkansas

Defendant argues similarly that Arkansas Plaintiff Eleventh Street's warranty claims are barred for failure to allege compliance with Arkansas Code § 4-2-607(3)(a), which provides that

a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." For the following reasons, this Court agrees with Defendant and will dismiss without prejudice Eleventh Street's warranty claims.

Plaintiff Eleventh Street's argument that notice by complaint satisfies the notice requirement under Arkansas law is without merit. *See Williams v. Mozark Fire Extinguisher Co.*, 888 S.W.2d 303, 306 (Ark. 1994) ("[N]otice must be more than a complaint." ); *see also Jackson,* 830 F. Supp. at 491 (W.D. Ark. 1993) (recognizing that although "notice need not be in writing," it nevertheless "must be more than a complaint"). The more difficult question, however, is whether the Supreme Court of Arkansas would recognize other exceptions to the pre-litigation notice requirement, such as actual notice. As a district court in Arkansas noted: "The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched." *Jackson*, 830 F. Supp. at 491. Here, the Court is unable to evaluate the "content of the notification," *i.e.*, whether Eleventh Street included a claim for damages, threatened litigation, or other resort to remedy, because Eleventh Street does not allege that it provided Defendant with *any* notification. Thus, prior to filing the Complaint, Plaintiffs pursued no course of communication that would have "open[ed] the way for negotiation of a normal settlement." *Id.*

In addition, the Arkansas Supreme Court has recognized that the purpose of the statutory notice requirement for breach "is twofold." *Mozark Fire Extinguisher*, 888 S.W.2d at 306. "First, it is to give the seller an opportunity to minimize damages in some way, such as by correcting the defect. Second, it is to give immunity to a seller against stale claims." *Id.* (citing *L.A. Green Seed*, 438 S.W.2d at 720). Although the seller in *Mozark Fire Extinguisher* could no

longer minimize damages because the system was destroyed, the Court noted that the "other statutory purpose," *i.e.*, immunity against stale claims, "is present." *Id.* Thus, the Court declined to ignore the statutory requirement. *See id.*

Here, unlike the destroyed fire extinguishing system in *Mozark Fire Extinguisher*, Eleventh Street alleges no comparable injuries to itself as a result of the E350 vans' alleged defect. Therefore, the first statutory purpose recognized by the Arkansas Supreme Court – providing a seller an opportunity to minimize damages in some way, such as by correcting the defect – remains present. Although the notice requirement under Arkansas law is "not stringent," *Jackson*, 830 F. Supp. at 491, for similar reasons as discussed above with respect to Alabama law, this Court is not persuaded that the Arkansas Supreme Court would adopt an exception based on a manufacturer's general awareness of the alleged warranty breaches for an entire line of products. This Court is aware of no case applying Arkansas law that requires, or even suggests, such an application of the statutory notice requirement of § 4-2-607(3)(a). Likewise, this Court is not persuaded that the Arkansas Supreme Court would waive the notice requirement where a defendant does not allege prejudice.

Plaintiff Eleventh Street also asserts that the question of sufficiency of notice "for purposes of § 4-2-607(3)(a), is a question of fact, inappropriate to be decided on a motion to dismiss." (Pls.'s Br. at 35 (citing *Jackson*, 830 F. Supp. at 491).) But, as discussed above, where a plaintiff alleges no pre-litigation notice at all, the issue of the notice's sufficiency is moot and appropriately can be decided as a matter of law at this stage. Eleventh Street's claims for breach of warranty will be dismissed without prejudice.

### 3.   California

Under California Commercial Code § 2607(3)(A), a "buyer must, within a reasonable time after he or she discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy." In certain circumstances, the Supreme Court of California has excused the notice requirement. For instance, in *Greenman v. Yuba Power Products*, a plaintiff who had been injured while using a power tool brought claims for breach of warranty against the retailer and manufacturer of the tool. 377 P.2d 897, 888 (Cal. 1963). The injured plaintiff actually provided the retailer and manufacturer written pre-litigation notice of the claimed breaches of warranties, but he only did so about ten months after he was injured. The manufacturer argued that the plaintiff had not provided notice within a reasonable time and was therefore barred by the statutory notice requirement.[6] *Id.* at 899. The Court held that the statutory notice requirement was "not an appropriate one for the court to adopt in actions by injured consumers against manufacturers with whom they have not dealt." *Id.* at 900. The Court reasoned:

> As between the immediate parties to the sale [the notice requirement] is a sound commercial rule, designed to protect the seller against unduly delayed claims for damages. As applied to personal injuries, and notice to a remote seller, it becomes a booby-trap for the unwary. The injured consumer is seldom "steeped in the business practice which justifies the rule," and at least until he has had legal advice it will not occur to him to give notice to one with whom he has had no dealings.

*Id.* (quoting William L. Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1099, 1130 (1960)) (citation omitted).

---

[6] At the time, the notice requirement appeared in section 1769 of the Civil Code, which provided that if a "buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor." *Id.*

By contrast, a California appellate court in *Fieldstone Co. v. Briggs Plumbing Products, Inc.*, held that a residential developer who had purchased sinks from plumbers, as opposed to the plaintiff in *Greenman*, was "a sophisticated development company which has built many thousands of homes over the last two decades." 62 Cal. Rptr. 2d 701, 708 (Cal. Ct. App. 1997). The court determined that the statutory notice provision should apply because the plaintiff in *Fieldstone* was not "unaware of his rights as against the manufacturer until he had received legal advice." *Id.* (citing *Presiding Bishop v. Cavanaugh*, 32 Cal. Rptr. 144 (Cal. Ct. App. 1963)).

Based on these two cases applying the California statutory notice requirement, and viewing Greater All Nation's allegations in a favorable light, this Court finds that Greater All Nation's position as a consumer is more analogous to the injured plaintiff in *Greenman*. According to the Complaint, Greater All Nation brings the instant action based upon its October 1999 purchase of one used E350 van. (Compl. ¶ 9.) Greater All Nation is a not-for-profit religious organization that apparently uses its E350 van "to transport church members to retreats, volunteer events and other community functions." (*Id.*) Thus, by any measure, Greater All Nation is not in the business of purchasing vans, and, as opposed to the residential developer in *Fieldstone*, likely was entirely unaware of its rights vis a vis Defendant Ford until it received legal advice. *See Fieldstone*, 62 Cal. Rptr. 2d at 708.

At the same time, this Court notes that *Greenman* is not directly analogous to this case. The injured plaintiff in *Greenman*, unlike California Plaintiff Greater All Nation, did in fact provide written pre-litigation notice of claimed breaches of warranties to the retailer and to the manufacturer. *Id.* at 898. Additionally, the decision in *Greenman* occurred in the context of a personal injury action. Thus, it is unclear whether the Supreme Court of California would have

22

arrived at the same broad conclusion in *Greenman* had the plaintiff not suffered any personal injury, and had the plaintiff not notified either the retailer or the manufacturer prior to bringing suit. Nevertheless, given the prior application of the statutory notice requirement in California cases, this Court is not persuaded that the Supreme Court of California would apply § 2607(3)(A) so strictly, and necessarily foreclose Greater All Nation from pursuing its breach of warranty claims. Therefore, Defendant's motion to dismiss on this ground will be denied.

### 4.      Illinois

Under 810 ILCS 5/2-607, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy[.]" Like other jurisdictions, Illinois recognizes several methods of notice.

In *Connick*, purchasers of a Samurai sport utility vehicle (SUV) sought to recover for, *inter alia*, breach of express and implied warranties based upon the allegation that the Samurais manufactured by defendant were "unsafe because [they] had an excessive risk of rolling over during sharp turns and accident avoidance maneuvers." 675 N.E.2d at 588. The Supreme Court of Illinois recognized that the notice requirement can be fulfilled either by direct notice or under two exceptions: when a "seller has actual knowledge of the defects of a particular product" or, in certain circumstances, when a "seller is deemed to have been reasonably notified by the filing of [a] buyer's complaint alleging breach of UCC warranty." *Id.* (citing *Malawy v. Richards Mfg. Co.*, 501 N.E.2d 376 (1986), and *Perona v. Volkswagen of Am., Inc.*, 684 N.E.2d 859, 863 (Ill. App. Ct. 1997)). Ultimately, however, the Court dismissed plaintiffs' breach of warranty claims, holding that the plaintiffs failed to allege direct notice to the defendant and, importantly, were unable to rely on either exception to the direct notice requirement. *Connick*, 675 N.E. 2d at 591.

The Court reasoned that, despite public reports of the product's general defects, the "complaint does not allege that Suzuki had actual knowledge of the alleged breach of the *particular* products purchased by the named plaintiffs in this lawsuit."  *Id*. at 590 (emphasis added).  In addition, the filing of a complaint did not suffice to constitute notice "where the breach has not resulted in personal injury" because "the UCC indicates a preference that the breach be cured without a lawsuit."  *Id.* at 591.

Here, Plaintiffs likewise assert compliance with the notice requirement of § 2-607 based upon Ford's actual or constructive notice of the alleged E350 van defects.  Plaintiffs' description of the events that necessarily would have informed Ford of the alleged defects of the E350 vans, *e.g.*, the NHTSA reports, Ford's response to the NHTSA recommendations, and the 60 Minutes II broadcasts, is comparable to the events the *Connick* plaintiffs claimed "separately or cumulatively" provided actual notice to the defendant manufacturer.  *Id.* at 589-90 (noting an unfavorable Consumers Union report, an investigation by seven states' attorneys general, and the commencement of the various actions).  According to the court in *Connick*, it was undisputed that the defendant was actually aware of the safety concerns of the Samurai SUV.  *Id.* at 590.  Nevertheless, the Court held that a manufacturer's awareness of problems with a *product line* is not a substitute for awareness problems "with the *particular* product purchased by a *particular* buyer."  *Id.* (emphasis added).  *Connick* also stands for the proposition that constructive awareness based upon the filing of a complaint is not an exception to the notice requirement in non-personal injury actions.[7]  *Id.* at 590-91.

_____

[7] Plaintiffs rely on a prior Illinois Supreme Court decision for the proposition that "the filing of a lawsuit by injured consumers constitutes sufficient notice."  (Pls.' Br. at 34 (citing *Goldstein v. G. D. Searle & Co.*, 378 N.E.2d 1083, 1088 (Ill. App. Ct. 1978).)  That decision was

In the instant matter, Plaintiffs have satisfactorily alleged that Defendant Ford was actually aware of the alleged design defects of the E350 van product line prior to the filing of Plaintiffs' Complaint.  There is, however, no indication from Plaintiffs' Complaint that, prior to the filing of the Complaint, Defendant was ever apprised of a problem with Pentecostal Temple's particular van, or of any potential warranty claims to be brought by Pentecostal Temple. Therefore, Pentecostal Temple's pleadings are insufficient pursuant to the limited scope of the actual notice exception as described by the Illinois Supreme Court.  And because Pentecostal Temple asserts only economic harm and no personal injuries, the limited exception of constructive notice, *i.e.*, notice-by-suit, is not available with regard to the Illinois notice requirement.

Relying on a decision from a district court in the Northern District of Illinois, Plaintiffs argue that dismissal is inappropriate because Defendant has failed to allege any prejudice due to lack of notice.  (Pls.'s Br. at 34 (citing *Blommer Chocolate Co. v. Bongards Creameries, Inc.*, 635 F. Supp. 911, 918 (N.D. Ill. 1985)).)  This Court finds instructive the fact that the Illinois Supreme Court in *Connick* did not specifically recognize lack of prejudice as one of the two noted exceptions to the direct notice requirement under 810 ILCS 5/2-607(3).  *Connick*, 675 N.E.2d at 589.  Additionally, in *Connick*, the court recognized that "the UCC indicates a preference that the breach be cured without a lawsuit."  *Id.* at 591.  This preference, therefore,

---

limited by the Illinois Supreme Court in *Board of Education of City of Chicago v. A, C and S, Inc.*, 546 N.E.2d 580, 596 (Ill. 1989), to cases involving personal injuries to consumers. *Brookings Mun. Utilities, Inc. v. Amoco Chem. Co.*, 103 F. Supp. 2d 1169, 1177 n.8 (D.S.D. 2000).  Here, Illinois Plaintiff Pentecostal Temple asserts economic harm, not personal injuries, and Plaintiffs' proposed class specifically excludes any person who claims damages for personal injury as a result of purchasing or leasing an E350 van.

militates against requiring that Defendant allege prejudice due to a lack of direct pre-litigation notice because, here, a lawsuit ensued nevertheless.  This Court, therefore, finds that Plaintiffs' "failure to allege prejudice" argument is unsupported under Illinois law as an exception to the notice requirement.  Accordingly, mindful of Court's holding in *Connick*, this Court is constrained to grant Defendant's motion to dismiss Plaintiff Pentecostal Temple's breach of warranty claims for failure to comply with the notice requirement of 810 ILCS 5/2-607(3).

To recap, this Court will dismiss the breach of express and implied warranty claims of the Alabama, Arkansas and Illinois Plaintiffs.  However, if they can allege that they provided pre-litigation notice to Ford in a manner recognized under the respective laws of those states, they may do so in an amended complaint.  As for California Plaintiff Greater All Nation, its breach of warranty claim will survive.

### D.     Express and Implied Warranties: Actual Injury

Ford also moves to dismiss Plaintiff's express and implied warranty claims for failure to adequately allege an actual injury.[8]  No Plaintiff has sustained a rollover or claimed any personal injury as a result of purchasing or leasing an E350 van.  In fact, the proposed Plaintiff Class expressly excludes anyone who claims personal injury damages.  (Compl. ¶ 63.)  Hence, although the Complaint alleges that the E350 vans "are defectively designed due to [the van's] high center of gravity leading to an unusually high rollover rate," (*id.* ¶ 17) Plaintiffs and members of the proposed Class, by definition, have never experienced a rollover-related accident or physical injury.  According to Plaintiffs, however, the alleged defect of the E350 vans resulted

---

[8] Other elements of Plaintiffs' implied warranty claims are discussed in greater detail later in this Opinion.  *See infra* Section II.F.

in "loss of use of the van's full capacity, diminishment of the van's resale value and increased insurance costs." (Pls.' Br. at 14.)

Because the Court will dismiss the warranty claims of the Alabama, Arkansas, and Illinois Plaintiffs for lack of pre-litigation notice, the Court will only examine the "actual injury" issue as it concerns the California and New Jersey Plaintiffs.

### 1.   California

Ford argues that, under California law, Plaintiff Greater All Nation's breach of warranty claims must be dismissed absent a present and manifest injury.  For the reasons discussed below, this Court does not find that California precedent mandates dismissal of Greater All Nation's breach of warranty claims on this ground.

In *American Suzuki Motor Corp. v. Superior Court*, a case relied upon by Ford, the issue before the California Court of Appeals was whether plaintiffs could state a cause of action for breach of implied warranty where "they have suffered no personal injury or property damage from a vehicle they claim is defectively designed, *and it is impliedly conceded that their vehicles have – since the date of purchase – remained fit for their ordinary purpose*."  44 Cal. Rptr. 2d 526, 527 (Cal. Ct. App. 1995) (emphasis added).  The California appellate court answered this question in the negative, reversing the trial court's class certification.  *Id.* at 531.

Importantly, Greater All Nation has not conceded that its Ford E350 has remained fit for its ordinary purpose.  Plaintiffs specifically allege that their "E350 vans were totally unfit to accommodate and safely transport 15 passengers, and, accordingly, Ford breached its implied warranty of merchantability in violation of UCC § 2-314."  (Compl. ¶ 84.)  Yet, whether a vast majority of Ford E350s "did what they were supposed to do for as long as they were supposed to

do it" – *i.e.*, whether they were fit for their ordinary purpose – remains an open question which

this Court cannot determine on a motion to dismiss, especially where, unlike plaintiffs in

*American Suzuki*, Greater All Nation does not concede merchantability.  *American Suzuki*,

therefore, does not mandate dismissal of Greater All Nation's breach of warranty claim.

The only other California case upon which Ford relies for this point is *Khan v. Shiley Inc.*,

266 Cal. Rptr. 106 (Cal. Ct. App. 1990).  There, the court suggested that "[n]o matter which

theory is utilized [including breach of express and implied warranty] where a plaintiff alleges a

product is defective, proof that the product has malfunctioned is essential to establish liability for

an injury *caused by the defect*."  *Id.* at 855.  (emphasis in original).  However, a more recent

California appellate court decision has challenged the propriety of the "sweeping language in

*Khan*," and in particular the quoted sentence.  *See Hicks v. Kaufman & Broad Home Corp.*, 107

Cal. Rptr. 2d 761, 771 (Cal. App. Ct. 2001).  "[T]hat sentence does not accurately reflect the

holding in *Khan* nor the state of the law on breach of warranty claims."  *Id.*  According to *Hicks*,

"the primary right alleged to have been violated in *Khan* was not the right to take a product free

from defect but the right to be free from *emotional distress* caused by worry the defect would

result in physical injury."  *Id.* (emphasis added).  Accordingly, *Hicks* held that a product's

malfunction is not an element of a cause of action for breach of warranty where "the primary

right alleged to have been violated . . . [is] the right to take a product free from defect."  *Id.* at

771; *see also id.* at 773 n.54.  Instead, to establish a breach of express or implied warranty, a

plaintiff must ultimately prove that a product contains an inherent defect that is "substantially

certain to result in malfunction during the useful life of the product."  *Id.* at 773.  ("We see no

reason why [plaintiff] should have to wait for the inevitable injuries to occur before recovering

damages to repair the defect and prevent the injuries from occurring."). A cause of action for breach of warranty "does not require proof the product has malfunctioned." *Id.* at 768.

In *Hicks*, plaintiffs pursued breach of warranty claims based upon the allegedly defective concrete foundations of their houses. It is unclear whether the "substantial certainty" requirement described in *Hicks* would necessarily apply in the instant matter. That is not something this Court need or should decide today. And this Court finds *Hicks*'s criticism of the sweeping language of *Khan* to be highly persuasive. A California court likely would not find that product malfunction is a necessary element of Greater All Nation's breach of warranty claims. *See id.* at 771-72. Hence, California Plaintiff Greater All Nation's breach of warranty claims will not be dismissed for failure to plead actual injury.

### 2.      New Jersey

Ford relies on several cases in support of its argument that New Jersey Plaintiffs' warranty claims should be dismissed for failure to allege actual injury. For example, in *Yost v. General Motors Corp.*, 651 F. Supp. 656, 657 (D.N.J. 1986), the district court dismissed the plaintiff's breach of warranty and fraud claims because the plaintiff failed to allege that he suffered any present damages: "All he is able to allege is that the potential leak is 'likely' to cause damage and 'may' create potential safety hazards." *Id.* By contrast, Plaintiffs here assert that the E350 van is presently defective, and that such defect currently creates a potential safety hazard. *See Connick*, 656 N.E. 2d at 178-79 (distinguishing *Yost* where plaintiffs did not allege the engine was actually defective). Additionally, Plaintiffs allege damages not discussed in *Yost*, including loss of use of the van's full capacity and increased insurance costs. Given these differences, this Court is not convinced that *Yost* mandates dismissal of Plaintiffs' breach of

warranty claims.

Ford next draws this Court's attention to *Walus v. Pfizer, Inc.*, 812 F. Supp. 41, 42 (D.N.J. 1993), for the court's assertion that "New Jersey courts have never allowed recovery based on a product that is and has been working normally." 812 F. Supp. at 42. Although *Walus* provides sweeping language regarding a product liability claim, that decision did not concern breach of warranty claims. Thus, *Walus* also does not mandate dismissal of Plaintiffs' claims.

In another case, *Thiedemann v. Mercedes-Benz USA, LLC,* 872 A.2d 783, 793 (2005), the Supreme Court of New Jersey affirmed a grant of summary judgment for a defendant car manufacturer based upon alleged violations of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. §§ 56:8-1 to -20. Specifically, plaintiff had alleged a defect in the fuel gauges in Mercedes-Benz vehicles. Although plaintiff had asserted a claim for breach of the implied warranty of merchantability under N.J.S.A. § 12A:2-314, the Court limited its review to the "enigmatic requirement of an 'ascertainable loss'" under the CFA. 872 A.2d at 786-87. Because plaintiff made no attempt to sell his vehicle, and did not "present any expert evidence to support an inference of loss in value notwithstanding the lack of any attempt to sell the vehicle, *i.e.*, that the resale market for the specific vehicle had been skewed by the 'defect,'" the court determined that plaintiff's CFA diminution in value argument was "too speculative." *Id.* at 795. Hence, even though the car owner could not satisfy his burden on summary judgment, the court in *Thiedemann* clearly acknowledged that diminution in value could qualify as an ascertainable loss under the CFA. *Id.* at 792.

*Thiedemann* does not mandate dismissal of the New Jersey Plaintiffs' breach of warranty claims at this juncture. *Thiedmann* dealt exclusively with the CFA's ascertainable loss

requirement; moreover, the Supreme Court of New Jersey certainly did not foreclose entirely the use of "diminution in value" as a form of ascertainable loss.  Apparently, the court contemplated the possibility of certain proofs of diminution in value such as "expert evidence directed to [a] defective vehicle's loss in value or some other similarly quantifiable lost benefit-of-the-bargain." *Id.*  Perhaps in the future this Court, on a full record at a later procedural stage, will determine whether the New Jersey Plaintiffs' diminution-in-value claim is "too speculative." *Thiedemann*, 183 N.J. 234, 238 (2005) *Id.* at 795.  That is not an appropriate inquiry, however, at this stage on a motion to dismiss.

For the reasons discussed above, Ford has not demonstrated that the New Jersey Plaintiffs' breach of warranty claims should be dismissed under New Jersey law for failure to allege actual injury, and this Court is aware of no New Jersey precedent that suggests dismissal.[9] Accordingly, Ford's motion to dismiss New Jersey Plaintiffs' breach of warranty claims for failure to plead actual injury will be denied.

To summarize, after an exhaustive review of caselaw from California and New Jersey, this Court is satisfied that the California and New Jersey Plaintiffs' warranty claims do not require dismissal for failure to plead actual injury as a matter of law.

### E.      Express and Implied Warranties: Time Bar

---

[9] *Sinclair v. Merck & Co.*, 195 N.J. 51 (2008), handed down on June 4, 2008, and cited by Ford in supplemental briefing, is inapposite.  There, the Supreme Court of New Jersey dismissed a Products Liability Act ("PLA") claim for failure to allege a "physical injury" as required by the statute.  *Id.* at 64.  Here, Plaintiffs do not pursue a PLA claim, in part because, by design, the PLA "except[s] actions for harm caused by breach of an express warranty[,]" which Plaintiffs expressly allege.  N.J.S.A. § 2A:58C-1b(3).  The *Sinclair* Court also does not mandate dismissal of unjust enrichment and state consumer fraud claims where a party does not plead a PLA claim. *See Sinclair*, 195 N.J. at 65.

Defendant moves to dismiss the breach of express and implied warranty claims of Plaintiffs Eleventh Street (Arkansas), Greater All Nation (California), Pentecostal Temple (Illinois), and the New Jersey parties on the grounds that they are barred by their states' relevant statute of limitations.[10]  Again, because the Court will dismiss the breach of warranty claims alleged by the Alabama, Arkansas, and Illinois Plaintiffs for failure to comply with notice requirements, the Court will here only address Ford's time bar argument as to the California and New Jersey Plaintiffs.

A district court may "dismiss a complaint for failure to state a claim, based on a time-bar, where 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'"  *Bieregu v. Ashcroft*, 259 F. Supp. 2d 342, 355 n.11 (D.N.J. 2003) (quoting *Bethel v. Jendoco Constr. Co.*, 570 F.2d 1168, 1174 (3d Cir. 1978)).  The Court looks to the allegations of the complaint when assessing a dismissal on statute of limitations grounds: "When reviewing a Rule 12(b)(6) dismissal on statute of limitations grounds, we must determine whether the time alleged *in the statement of a claim* shows that the cause of action has not been brought within the statute of limitations."  *Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989) (emphasis in original).  Although a statute of limitations defense is not included in the enumerated defenses listed in Rule 12(b)(6), the defense may be raised in a motion to dismiss where it is clear on the face of a complaint that the action is not brought within the statute of limitations.  *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994).  District courts are cautioned, however, that "[i]f the bar

---

[10] Ford does not move to dismiss Plaintiff New Bethlehem's (Alabama) warranty claims based on statute of limitations grounds.

is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (internal citation and quotation marks omitted).

Section 2-725 of the Uniform Commercial Code provides the relevant statute of limitations:

> (1)   An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued.
>       . . . .
> (2)   A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made[.]
>       . . . .
> (4)   This Section does not alter the law on tolling of the statute of limitations . . . .

This language has been adopted without change in California and New Jersey. *See* Cal. Com. Code. § 2725; N.J.S.A. § 12A:2-725. According to this provision, Plaintiffs' claims for breach of warranty accrued when "tender of delivery" was made for their E350 vans. Thus, at the latest, the four-year statute of limitations commenced against each named Plaintiff when they actually obtained their individual vehicles. This analysis, however, is substantially complicated by the fact that Plaintiffs do not clearly specify the model year or purchase date of every E350 at issue in the instant matter. The Court gathers the following information from paragraphs 6-12 of the Complaint:

- Greater All Nation (California) purchased a used E350 van of unspecified model year on October 29, 1999;

- Faith Tabernacle (New Jersey) purchased a used E350 van of unspecified model year on August 30, 2001;

- Macedonia Free Will (New Jersey) purchased two new 2002 E350 vans on an unspecified date; and,

- Social Clubhouse (New Jersey) purchased five different E350 vans including those from model years 1993, 1994, 1997, and 2002.  The 1997 model was purchased on August 8, 2002, and the 2002 model was purchased on April 9, 2003.

Unless otherwise specified, it is also unclear whether each E350 van was purchased in new or used condition.

The earliest complaint filed by any individual Plaintiff in the instant matter was that of Social Clubhouse, which filed its original complaint in the Superior Court of New Jersey on August 11, 2003.  Greater All Nation, which purchased a van on October 29, 1999, first filed suit in California state court on February 17, 2005.  Thus, Greater All Nation filed suit more than 4 years after purchasing its respective vehicles.  As listed above, only some of the vans purchased by New Jersey Plaintiffs appear to have been purchased less than four years prior to filing suit.

Plaintiffs propose several reasons why their breach of warranty claims are not barred by the relevant statutes of limitations.  Plaintiffs' chief argument is that Ford's fraudulent concealment tolled the statute of limitations.  Due to Ford's false and misleading statements, Plaintiffs argue that their causes of action accrued only when Ford's breach was or should have been discovered.  "Here, Plaintiffs had no reason to discover Defendant Ford's false and misleading statements because the problems with the E350 were not publicized until shortly before the plaintiff filed suit."  (Pls.' Br. at 38.)  The Official Comment to UCC § 2-725 states: "Subsection (4) makes it clear that this Article does not purport to alter or modify in any respect

34

the law on tolling of the Statute of Limitations as it now prevails in the various jurisdictions."

Thus, Plaintiffs' warranty claims are not time-barred if they allege proper grounds for equitable

tolling.  *See* Cal. Com. Code. § 2725(4); *Mills*, 108 Cal. App. 4th at 641 (enforcing statute of

limitations for breach of warranty claim "subject to tolling or estoppel"); *Simpson v. Widger*, 311

N.J. Super. 379, 390 (App. Div. 1998) ("[T]he presence of fraud may toll the running of the

statute" for breach of warranty claims); *see also Foodtown v. Sigma Mktg Sys., Inc.*, 518 F. Supp.

485, 488 (D.N.J. 1980).

        To establish fraudulent concealment for the purposes of tolling a statute of limitations,

the Ninth Circuit has recognized that, applying California law, a "complaint must show: (1) when

the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the

plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of

fact sufficient to put him on inquiry."  *Conerly v. Westinghouse Electric Corp.*, 623 F.2d 117,

120 (9th Cir. 1980) (citing *Baker v. Beech Aircraft Corp.*, 114 Cal. Rptr. 171, 175 (Cal. Ct. App.

1974)).  New Jersey law sets forth comparable elements.  *See Dewey v. Volkswagen AG*, – F.

Supp. 2d –, Nos. 07-2249, -2361, 2008 WL 878324, at *13 (D.N.J. Apr. 1, 2008).

        Defendant argues that Plaintiffs have failed to plead the fraudulent concealment elements

necessary to avoid a limitations-based dismissal.  Specifically, Defendant argues that Plaintiffs

must allege "actual reliance" on statements made by Defendant.  It is true that "reliance" is an

element of a claim for misrepresentation.  For example, in *Simpson*, a case cited by Plaintiffs,

"[a] misrepresentation amounting to actual legal fraud consists of a material representation of a

presently existing or past fact, made with knowledge of its falsity and with the intention that the

other party rely thereon, *resulting in reliance by that party to his detriment.*"  311 N.J. Super. at

392 (citing *Jewish Ctr. of Sussex County v. Whale*, 432 A.2d 521 (N.J. 1981)) (emphasis added).

Although Plaintiffs could have done so with greater precision, this Court finds that for the purposes of withstanding a motion to dismiss, Plaintiffs have sufficiently pled reliance on Defendant's alleged misrepresentation and omissions. Notably, in the Complaint, Plaintiffs allege that Defendant's conduct constituted acts of "deception, fraud, false pretenses, false promises, misrepresentation and/or a knowing concealment, suppression, or omission of material facts with the intent that Plaintiffs . . . would *rely* upon such concealment, suppression, or omission in connection with the sale, marketing, advertisement and subsequently performance of the E350 van." (Compl. ¶ 93.) (emphasis added). In addition, Plaintiffs assert that Ford's conduct "ha[d] the capacity to, and did, deceive consumers into believing that they were purchasing a vehicle that could be used safely, legally and practically to accommodate and transport 15 passengers." (*Id.*)

The Court finds that the California and New Jersey Plaintiffs allege a claim for fraudulent concealment in the context of tolling the statute of limitations. Although Ford proffers that claims for breach of warranty accrue on the date of delivery rather than on the date of discovery, it fails to articulate why the principles of equitable tolling premised on fraudulent concealment are not available to Plaintiffs as a matter of law. Assuming the truth of Plaintiffs' allegations, and drawing inferences in a light most favorable to them, Plaintiffs sufficiently contend that they discovered Ford's alleged fraudulent concealment between the years 2002 and 2005, under circumstances owing to the revelation of the alleged defects by the media and other public reports. For instance, Plaintiffs allege that the television program "Sixty Minutes II" publicized the concerns regarding the vans' safety on September 9, 2002, and that a former Ford test driver

36

testified to the vans' defects in January 2003.  (Compl. ¶ 23.)  Furthermore, Plaintiffs allege that they are not at fault for failing to discover the alleged defects earlier because Ford acted wrongfully by issuing repeated assurances of the vans' safety despite Ford's alleged knowledge of the falsity of their warranty.  (*Id.* ¶¶ 2, 22-23, 31, 36-37, 48-52, 54.)  Thus, looking first at Greater All Nation, its 2005 filing does not run afoul of the four-year statute of limitations because Plaintiffs allegedly discovered the breach within four years prior to 2005.  Similarly, the earliest filing by a New Jersey Plaintiff was in 2003, also well within four years of Plaintiffs' supposed discovery of Defendant's alleged concealment.

In sum, reading Plaintiffs' Complaint with latitude, the California and New Jersey Plaintiffs' warranty claims are not barred by the relevant statutes of limitations and exceptions thereto because "the bar is not apparent on the face of the [C]omplaint."  *Robinson*, 313 F.3d at 135 (internal citation and quotation marks omitted).  Ford's motion to dismiss the California and New Jersey Plaintiffs' warranty claims on statute of limitations grounds will be denied.

### F.   Implied Warranty

In the second cause of action of their Complaint, Plaintiffs allege breach of implied warranty under UCC § 2-314, as codified by each of the states at issue.  Because the Court has already dismissed the warranty claims brought by Plaintiffs New Bethlehem (Alabama), Eleventh Street (Arkansas), and Pentecostal Temple (Illinois) for failure to comply with notice requirements, the Court examines only the California and New Jersey Plaintiffs' Second Cause of Action on the merits.

According to Plaintiffs:

83.    .  .  .  Ford impliedly warranted that the E350 vans were

37

> merchantable and w[ere] fit for the ordinary purposes for which a 15-passenger van is used.

> 84.   The E350 vans were totally unfit to accommodate and safely transport 15 passengers, and accordingly, Ford breached its implied warranty of merchantability on [sic] violation of UCC § 2-314.
>        . . . .
> 86.   Plaintiffs and members of the Class have been damaged as a result of the conduct complained of herein, and the conduct continues and the harm or risks of harm is ongoing.

(Compl. ¶¶ 83-84, 86.)

Defendant argues that Plaintiffs' claims for breach of the implied warranty of merchantability should be dismissed for several reasons in addition to those discussed previously, including: failure to allege the E350 vans were not merchantable at the time of sale; enforceability of the durational limitations of Ford's implied warranty, and lack of privity. (Def.'s Br. at 28-29.)  For the following reasons, Defendant's motion to dismiss the California and New Jersey Plaintiffs' implied warranty claims will denied.

### 1.      Implied Warranty: Failure to Allege Lack of Merchantability

Section 2-314 of the Uniform Commercial Code has been adopted by California and New Jersey.  Cal. Com. Code § 2314; N.J.S.A. § 12A:2-314.  As both parties acknowledge, to state a claim for breach of the implied warranty of merchantability under § 2-314 of the UCC, a plaintiff must allege (1) that a merchant sold goods, (2) which were not "merchantable" at the time of sale, (3) injury and damages to the plaintiff or its property, (4) which were was caused proximately and in fact by the defective nature of the goods, and (5) notice to the seller of injury. *See* 1 James J. White & Robert S. Summers, Uniform Commercial Code § 9-7, at 510-11 (4th ed. 1995) (footnote omitted).

38

Pursuant to the implied warranty of merchantability, a merchant warrants that goods sold are fit for the ordinary purposes for which the goods are used. *See, e.g.*, N.J.S.A. § 12A:2-314. Merchantability does not mean that the goods are perfect or that they are exactly as the merchant described them to be, but only that they are "reasonably fit for the purpose intended." *Jakubowski v. Minn. Mining & Mfg. Co.*, 199 A.2d 826, 831 (N.J. 1964). The implied warranty of merchantability need not be specifically mentioned in a contract; instead, it arises by operation of law. *See, e.g.*, N.J.S.A. § 12A:2-314.

Ford argues that Plaintiffs' implied warranty of merchantability claims should be dismissed for failure to allege "that their vehicles were not merchantable at the time of sale." (Def.'s Br. at 30.) Plaintiffs, however, alleged in the second cause of action in their Complaint that due to a design defect, "the E350 vans were *totally unfit* to accommodate and safely transport 15 passengers and, accordingly, Ford breached its implied warranty of *merchantability* in violation of UCC § 2-314." (Compl. ¶ 84 (emphasis added).) Based upon the aforementioned language of the Complaint, this Court finds that Plaintiffs have sufficiently alleged a breach of the implied warranty of merchantability. Specifically, Plaintiffs assert that at the time of the sale, their E350 vans they were "totally unfit," *i.e.*, not reasonably fit for their intended purpose of safely transporting 15 passengers, and, therefore, not merchantable. Hence, this requirement has been sufficiently pled.

### 2.    Implied Warranty: Durational Limitations

Ford argues that by virtue of the limited written warranties that come with each E350 van, it has limited its liability for breach of the implied warranty of merchantability to vehicle

malfunctions that occur during the warranty coverage period.  (Def.'s Br. at 31.)  Section 2-316

of the UCC provides that parties may limit or exclude entirely the warranty of merchantability

that is otherwise implied in a contract for a sale of goods.[11]

     In the Second Cause of Action of the Complaint, Plaintiffs allege that "[a]ny express

limitation or negation of Ford's implied warranties that E350 vans were fit to accommodate and

safely transport 15 passengers, when such was not the case, would be unreasonable and

unconscionable and, accordingly, is unenforceable pursuant to UCC § 2-316."  (Compl. ¶ 85.)

Pursuant to § 2-302(a) of the UCC, this Court may strike a clause of a contract "[i]f the court as a

matter of law finds the contract or any clause of the contract to have been unconscionable at the

time it was made[.]"  *See* Cal. Com. Code § 2302; N.J.S.A. § 12A:2-302.  Further, § 2-302(b)

provides that "[w]hen it is claimed or appears to the court that the contract or any clause thereof

may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence

as to its commercial setting, purpose and effect to aid the court in making the determination."

*See id.*

     As noted above, Plaintiffs alleged that the durational limitations on the implied warranty

---

[11] The following language has been codified by California and New Jersey law:

(2) Subject to subsection (3), to exclude or modify the implied warranty of
merchantability or any part of it the language must mention merchantability
and in case of a writing must be conspicuous, and to exclude or modify any
implied warranty of fitness the exclusion must be by a writing and
conspicuous.  Language to exclude all implied warranties of fitness is
sufficient if it states, for example, that "There are no warranties which extend
beyond the description on the face hereof."

*See* Cal. Com. Code § 2316; N.J.S.A. § 12A:2-316.

of merchantability that accompanied Plaintiffs' E350s are "unreasonable and unconscionable and, accordingly, [are] unenforceable."  Based on UCC § 2-302(b), this Court cannot make this determination at the motion to dismiss stage.  *See In re Ford Motor Co. Ignition Switch Products Liability Litig.*, Nos. MDL No. 1112, Civ. A. 96-3125,  96-1814, 1999 WL 33495352, at *12 (D.N.J. May 14, 1999) ("[The court is] unable at this juncture to determine, as a matter of law, whether or not Ford's durational limitation of the implied warranty of merchantability that accompanied plaintiff's Ford vehicles at the time of their original retail sale was unconscionable.") (vacated in part on other grounds by July 27, 1999 order).  Accordingly, Ford's motion to dismiss on this ground will be denied, and the California and New Jersey Plaintiffs' implied warranty claim shall remain at issue.

G.     **Unjust Enrichment**

In the Third Cause of Action of their Complaint, Plaintiffs allege unjust enrichment on the part of Ford.  Generally, to claim unjust enrichment, a plaintiff must allege that "(1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it."  *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004).  Although there may exist slight variations in various state claims for unjust enrichment, any differences are not material to the instant motion to dismiss on the grounds proffered by Ford.  *See In re Terazosin Hydochloride*, 220 F.R.D. 672, 697 n.40 (S.D. Fla. 2004) ("The standards for evaluating each of the various states classes' unjust enrichment claims are virtually identical.  Courts have recognized that state claims of unjust enrichment are universally recognized causes of action that are materially the same throughout the United States.") (citation and quotation marks omitted).

41

Essentially, Plaintiffs allege that they purchased a defective product that was marketed and sold by Ford or its agents for the price of a non-defective product and that, as a consequence, Ford received a benefit from the sales at Plaintiffs' expense. While Plaintiffs do not explicitly allege the presumed difference in value between a defective and non-defective van, Plaintiffs do contend that a defective van's value is "greatly reduced" from the value of a non-defective van. (Compl. ¶ 88.) Plaintiffs also allege that Ford obtained additional benefits in the form of revenues from repairs to E350 vans that failed after the expiration of the 90-day "Limited Warranty." "As a result Ford has been unjustly enriched, having retained the benefits of its sales of defective E350 vans and payment for repair services." (Compl. ¶ 90.) Based on these statements, Plaintiffs sufficiently allege a claim for unjust enrichment.

Ford argues that Plaintiffs' unjust enrichment claims must be dismissed because Plaintiffs have not alleged any cognizable injury. However, Ford cites no case dismissing an unjust enrichment claim for failure to plead a cognizable injury. Thus, this Court does not find that Plaintiffs' unjust enrichment actions merit dismissal for failure to plead injury.

Next, Ford asserts that unjust enrichment is not a cause of action in California, and thus Greater All Nation's claim for unjust enrichment should be dismissed. (Def.'s Reply Br. at 25.) In *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1100 (N.D. Cal. 2006), a district court observed that uncertainty exists as to whether a court applying California law may recognize a claim for unjust enrichment as a separate cause of action. The *Nordberg* court concluded, however, that causes of action labeled as "unjust enrichment" may nonetheless be understood as claims for restitution. *Id.* ("Although their Eighth cause of action is entitled 'unjust enrichment' it is clear that plaintiffs are seeking restitution."). Thus, although Plaintiffs' cause of action as it

relates to Greater All Nation and members of the putative Class from California may have mischaracterized the legal theory underlying this claim, Ford's argument for dismissal is unavailing.

Ford also argues that unjust enrichment is based on quasi-contract, and that such equitable proceedings are barred when there are adequate remedies at law. Although Plaintiffs allege breach of express and implied warranty in the first and second causes of action of the Complaint, the Court, at this juncture, cannot resolve these legal issues. *See In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004) ("Plaintiffs, however, are clearly permitted to plead alternative theories of recovery. Consequently, it would be premature at this stage of the proceedings to dismiss the . . . unjust enrichment claims on this basis."). Therefore, the presence of these potential remedies at law does not mandate dismissal of Plaintiffs' unjust enrichment claims. *See, e.g.*, *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069, 1104 (S.D. Ind. 2001), *rev'd on other grounds*, 288 F.3d 1012 (7th Cir. 2002).

Accordingly, Ford's motion to dismiss with regard to Plaintiffs' unjust enrichment claim will be denied.[12]

**H.      State Consumer Fraud**

In their Fourth Cause of Action, Plaintiffs allege that Ford violated state consumer fraud statutes. "State consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules." *In re*

---

[12] According to Ford, Plaintiffs' unjust enrichment claims are also time barred. Although Plaintiffs failed to address this issue in their opposition brief, Ford also did not articulate why principles of fraudulent concealment or equitable tolling, as methods of tolling the relevant statutes of limitations, are not available to Plaintiffs in connection with their unjust enrichment claims.

*Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568-73 (1996)).  Thus, this Court will examine Plaintiffs' fourth claim separately under the law of each relevant jurisdiction: Alabama, Arkansas, California, Illinois, and New Jersey.

### 1.    Alabama

The Alabama Deceptive Trade Practices Act ("Alabama DTPA") provides a cause of action for a "consumer," Ala. Code § 8-19-10, who is defined as "any natural person who buys goods or services for personal, family or household use."  Ala. Code § 8-19-3(2).  "Only 'consumers' have private rights of action under this section."  *Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1399 (N.D. Ala. 1997).  Plainly, Plaintiffs are not natural persons; nor have they purchased the E350 vans for personal, family or household use.  Plaintiffs offer no argument or authority to the contrary, and this Court finds as a matter of law that Alabama Plaintiff New Bethlehem lacks standing to bring this claim.  *See EBSCO Indus., Inc. v. LMN Enter., Inc.*, 89 F. Supp. 2d 1248, 1266 (N.D. Ala. 2000) (dismissing Alabama DTPA claim for lack of standing); *see also In re Bextra and Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 495 F. Supp. 2d 1027, 1036 (N.D. Cal. 2007) ("It is undisputed that the [plaintiffs] are not 'natural persons,' and thus they do not have a private right of action [under the Alabama DTPA].") (quoting Ala. Code § 8-19-3(2)).  Thus, New Bethlehem's Alabama DTPA claim will be dismissed.

### 2.    Arkansas

Eleventh Street fails to state a cognizable claim under the Arkansas Deceptive Trade Practices Act ("Arkansas DTPA").  Under that statute, the responsibility for civil enforcement

rests largely with the Attorney General.  *See* Ark. Code Ann. § 4-88-113(a)-(e).  A private cause

of action is limited to instances where a person has suffered "actual damage or injury as a result

of an offense or violation as defined in this chapter."  Ark. Code Ann. § 4-88-113(f).

Defendant cites *Wallis v. Ford Motor Co.*, 208 S.W.3d 153, 159 (Ark. 2005) for the

proposition that Plaintiffs fail to plead actionable injury to sustain a claim under the Arkansas

DTPA.  208 S.W.3d at 159.  In that case, the Supreme Court of Arkansas held that an DTPA

claim could not be maintained where an SUV owner's only alleged injury was a diminution in

value of the vehicle.  Plaintiff had sought to certify a class consisting of Ford Explorer owners

and lessees based upon Ford's alleged concealment of a design defect that caused Explorers to

roll over under normal operations.  *Id.* at 154.  Like Plaintiffs in the instant matter, "Wallis [did]

not allege any personal injury or property damage caused by the design defect, nor [did] he allege

that the Explorer malfunctioned in any way."  *Id.*  Wallis's entire damages claim instead rested

on his assertion that his Explorer's value had been "substantially diminished" as a result of the

design defect.  *Id.* at 155.  Yet the Court noted that "actual damage or injury is sustained when

the product has actually malfunctioned or the defect has manifested itself."  *Id.* at 161.

Accordingly, the Court held that Wallis did "not state a cognizable cause of action under []DTPA

where the only injury complained of is a diminution in value of the vehicle."  *Id.*

*Wallis* is squarely on point here.  Plaintiffs' allegation of damages for diminution of value

is insufficient as a matter of law under the Arkansas DTPA.  In addition, even though Plaintiffs

also cite "loss of use" damages, *Wallis* elaborated that "actual damage or injury is sustained when

the product has actually malfunctioned or the defect has manifested itself."  *Id.* at 161.  Here,

Plaintiffs do not allege damages resulting from any malfunction or manifest defect.  In other

words, Plaintiffs do not adequately allege *actual* damages as required for an Arkansas DPTA claim under *Wallis*. Because Arkansas law bars private rights of action under the Arkansas DPTA where no actual damages are alleged, this Court must dismiss Eleventh Street's statutory consumer fraud claim.

### 3.   California

Plaintiff Greater All Nation asserts claims under three California statutes: the California Unfair Competition Law ("California UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; the California False Advertising Law ("California FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*; and the California Consumers Legal Remedies Act ("California CLRA"), Cal. Civ. Code § 1750, *et seq.* For the following reasons, the Court will dismiss Plaintiffs' claim under the California CLRA, but permit Plaintiffs' claim under the California UCL and FAL to proceed.

### a.   The California UCL

The California UCL permits civil recovery for "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code, § 17200. The UCL's purpose is to protect both consumers and competitors from unlawful, unfair or fraudulent business practices "by promoting fair competition in commercial markets for goods and services." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002). Until the UCL was amended in 2004, the statute "authorized 'any person acting for the interests of itself, its members or the general public' . . . to file a civil action for relief." *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 228 (2006) (quoting former § 17204). As Plaintiffs argue, standing to bring such an action did not depend on a showing of injury or damage. *See Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211 (1983)

("Allegations of actual deception, reasonable reliance, and damage are unnecessary."),

*superseded by statute*, Cal. Bus. & Prof. Code § 17204 (2004), *as recognized in Mervyn's*, 39

Cal. 4th at 228.

Now amended, however, the California UCL defines who may sue to enforce the statute:

any "association, or . . . person who has suffered *injury in fact and has lost money or property* as

a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204 (emphasis added); *see also*

*Standfacts Credit Servs. v. Experian Info. Solutions, Inc.*, Nos. 04-0358, -1055, 2006 WL

4941834, at *1-2 (C.D. Cal. Oct. 12, 2006) ("[S]ince [the plaintiff] has failed to allege that it . . .

has lost money or property, it lacks standing to bring its UCL claims.") (internal quotation marks

omitted); *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 852 (Cal. Ct. App. 2008) ("Proposition 64,

approved by the voters at the November 2, 2004, General Election, changed the standing

requirements for a UCL claim to create a two-prong test: A private person now has standing to

assert a UCL claim only if he or she (1) 'has suffered injury in fact,' and (2) 'has lost money or

property as a result of such unfair competition.'").

This Court must determine whether Plaintiffs allege injury in fact and money or property

damages within the meaning of amended § 17204.  The Court finds that they do.  Since § 17204

was amended, few California courts have had occasion to directly address what constitutes injury

in fact and loss of money or property as a result of unfair competition for purposes of

determining standing.  Among those courts that have interpreted the new standing requirements,

§ 17204 has been interpreted to permit UCL suits when a plaintiff has: (1) expended or lost

money (or property), *see, e.g.*, *Monarch Plumbing Co. v. Ranger Ins. Co.*, No. 06-1357, 2006

WL 2734391, at *6 (E.D. Cal. Sept. 25, 2006); or (2) been denied money to which it has a right,

47

*see, e.g.*, *Starr-Gordon v. Mass. Mut. Life Ins. Co.*, No. 03-68, 2006 WL 3218778, at *6-7 (E.D. Cal. Nov. 7, 2006) ("[D]isgorgement [under the UCL] is permissible only to the extent that it constitutes restitution") (internal quotation omitted); *see also Hall*, 158 Cal. App. 4th at 854-55 (collecting cases).

Admittedly, none of the allegations in these cases resemble those before the Court here, where Plaintiffs allege diminution in value and loss of use damages.  However, the California Court of Appeal decision in *Hall v. Time, Inc.* offers instructive guidance.  In *Hall*, a customer agreed to try a book from a publisher for a "free trial period" and later paid for it via a collection agency after the free trial period expired.  158 Cal. App. 4th at 850.  The customer subsequently brought a California UCL action, alleging that the publisher used fraudulent tactics to trick customers into believing that they were not obligated to pay for the book.  *Id.* at 850-52.  The court held that there was no injury in fact, in part because the customer did *not* allege that "the book was unsatisfactory, or [that] the book was worth less than what he paid for it."  *Id.* at 855.  In reaching this conclusion, the court also noted that a common dictionary definition for "[a] loss is '[a]n undesirable outcome of a risk; the disappearance *or diminution of value*, usu[ally] in an unexpected or relatively unpredictable way.'"  *Id.* (quoting Black's Law Dict. 963).

*Hall* is readily distinguishable from this case because here, Plaintiffs allege injury in fact and money or property damages based on their contentions, as enumerated earlier, that the E350 vans have diminished in monetary value because they are incapable of safely transporting 15 passengers.  In other words, the E350 vans are "unsatisfactory" or "worth less" than what Plaintiffs paid for them.  Furthermore, liberally construing Plaintiffs' allegations, Plaintiffs sufficiently allege that Ford's fraudulent behavior *caused* Plaintiffs pecuniary damages.  (Compl.

¶ 62 ("*As a result of* . . . the actual risks posed by operation of the defective E350 vans, Plaintiff

and Class members have sustained economic losses including, but not limited to, a significant

diminution in the value of their vans.") (emphasis added); *id.* ¶ 93 ("Ford's [fraudulent] conduct .

. . did[] deceive consumers into believing that they were purchasing a vehicle that could be used

safely, legally, and practically to accommodate and transport 15 passengers.").)  Given that

Plaintiffs allege that the E350 vans are unsatisfactory and have diminished in value, this Court

cannot find, as a matter of law, that Plaintiffs fail to plead a proper UCL claim.  Thus, the Court

will deny Ford's motion to dismiss Plaintiffs' California UCL claim.[13]

> b.    *The California FAL*

In order to state a claim under the California FAL, Plaintiffs must allege that statements

or other representations appearing on Defendant's product labels are "likely" to deceive a

reasonable consumer.  *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995).  If an alleged

misrepresentation would not deceive a reasonable person or amounts to mere puffery, then this

claim may be dismissed, as a matter of law, on a motion to dismiss.  *Haskell v. Time, Inc.*, 857 F.

Supp. 1392, 1399 (E.D. Cal. 1994).  The term "likely" indicates that deception must be probable,

not just possible.  *Freeman*, 68 F.3d at 289.  California courts have defined the "reasonable

---

[13] Ford's argument that Plaintiffs' California UCL claim is barred by the statute of limitations is unavailing.  The discovery rule is inapplicable to a UCL claim, but as found earlier, Plaintiffs state a proper claim for "equitable tolling based on fraudulent concealment."  *Stutz Motor Car of Am., Inc. v. Reebok Int'l., Ltd.*, 909 F. Supp. 1353, 1364 (C.D. Cal. 1995); *see also Suh v. Yang,* 987 F. Supp. 783, 795 n.8 (N.D. Cal. 1997) ("The doctrine of equitable tolling suspends the running of the statute of limitations if the plaintiff proves that the defendant fraudulently concealed the existence of the cause of action so that the plaintiff, acting as a reasonable person, did not know of its existence.") (internal quotation omitted).

consumer" as an ordinary member of the public who acts reasonably in the situation presented.

*Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 510, 512 (Cal. App. 2003).  A California

FAL claim must be pled with particularity, *Bennett v. Suncloud*, 56 Cal. App. 4th 91, 97 (Cal. Ct.

App. 1997), here in accordance with Rule 9(b), *see* Fed. R. Civ. P. 9(b) ("[A] party must state

with particularity the circumstances constituting fraud[.]").

This Court finds that Plaintiffs properly plead a cause of action under the California FAL.

In addition to Plaintiffs' exhaustive, particularized allegations discussed by the Court in Section

II.E, *supra*, describing the circumstances surrounding Ford's alleged fraudulent concealment,

Plaintiffs allege that "Ford's conduct herein is an unfair practice that has the capacity to, and did,

deceive customers into believing that they were purchasing a vehicle that could be used safely,

legally and practically to accommodate and transport 15 passengers."  (Compl. ¶ 93.)  This Court

has already found that Plaintiffs adequately allege an express warranty claim based on Ford's

description of the E350 vans as a "15 passenger" van.  *See supra* Section II.B.  Based on that

determination, and the Court's finding that Plaintiffs sufficiently allege fraudulent concealment

in the context of equitable tolling, the Court finds that Plaintiffs adequately allege that Ford's

description is "likely" to deceive a reasonable customer into believing the E350 was capable of

safely transporting 15 passengers.  Accordingly, Plaintiffs' California FAL claim withstands

Ford's motion to dismiss.

c.      *The California CLRA*

Ford challenges Plaintiffs' California CLRA claim on the ground that Greater All Nation

lacks standing.  The California CLRA applies to any contract "undertaken by any person in a

transaction intended to result or which results in the sale or lease of goods or services to any

consumer." Cal. Civ. Code § 1770(a). Section 1761(d) defines "consumer" to mean "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." Cal. Civ. Code § 1761(d). "Accordingly, the CLRA does not apply to commercial or government contracts, or to contracts formed by nonprofit organizations and other non-commercial groups." *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003); *see also Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1303 (S.D. Cal. 2003). Plaintiff Greater All Nation, a nonprofit church organization, does not fit within the CLRA's limited definition of "consumer," and thus does not have standing to file suit. The Court will dismiss Plaintiffs' California CLRA claim.

### 4.    Illinois

Ford challenges Plaintiffs' claim brought under the Illinois Consumer Fraud Act ("Illinois CFA"), 815 ILCS § 505/1, *et seq.* To state a claim under the Illinois CFA, Plaintiffs must allege (1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce. *Siegel v. Levy Org. Dev. Co.*, 153 Ill.2d 534, 542 (1992); *see also First Midwest Bank, N.A. v. Sparks*, 289 Ill. App. 3d 252, 257 (Ill. App. Ct. 1997) ("Concealment is actionable where it is employed as a device to mislead and the concealed fact must be such that had the other party been aware of it, he would have acted differently."). Plaintiffs need not allege reliance, *see Harkala v. Wildwood Realty, Inc.*, 200 Ill. App. 3d 447, 453 (Ill. App. Ct. 1990), though a proper claim must allege that the consumer fraud proximately caused Plaintiffs' injury, *see Wheeler v. Sunbelt Tool Co.*, 181 Ill. App. 3d 1088, 1109 (App. Ct. 1989). Plaintiffs' Illinois CFA claim must be pled with particularity. *Connick*, 675 N.E.2d at 593.

The Court finds that Plaintiffs sufficiently state a claim under the Illinois CFA.  As previously detailed in this Opinion, Plaintiffs allege that Ford deceived Plaintiffs by withholding information concerning the safety of E350 vans, that Ford intended that Plaintiffs rely, and that this deception occurred during the course of commerce.[14]  (Compl. ¶¶ 2, 14-17, 48-54, 93, 98.) Ford argues that a claim sounding in fraudulent concealment requires an allegation of a fiduciary duty, *see Lionel Trains, Inc. v. Albano*, 831 F. Supp. 647, 650 (N.D. Ill. 1993), but Ford "has not directed the court to any persuasive authority holding that these requirements of common law fraud are incorporated into a claim of statutory fraud under Illinois' Consumer Fraud Act," *Celex Group, Inc. v. Executive Gallery, Inc.*, 877 F. Supp. 1114, 1129 (N.D. Ill. 1995).  The Court finds this requirement inapplicable in this context.  *See id.* at 1130 (concluding "that the common law requirement of a duty to disclose is not required in order for an omission or concealment to be actionable under the Consumer Fraud Act"); *see also White v. DaimlerChrysler Corp.*, 368 Ill. App. 3d 278, 285 (Ill. App. Ct. 2006) ("Defendant . . . reads into the [Illinois CFA] a duty requirement that does not exist."); *Miller v. William Chevrolet/GEO, Inc.*, 326 Ill. App. 3d 642, 658 (Ill. App. Ct. 2001) ("[C]ourts have recognized that the common law duty requirements do not appear in the Act's broad language.").  That the Illinois CFA has less restrictive elements than common law fraud is no accident, given its broader scope and remedial legislative purpose. *See Eshaghi v. Hanley Dawson Cadillac Co., Inc.*, 214 Ill. App. 3d 995, 1001 (Ill. App. Ct. 1991) ("In interpreting the Consumer Fraud Act, courts have declined to use the restrictive elements of common law fraud and have been willing to give effect to the legislative goals behind enactment

---

[14] Ford's arguments that the statute of limitations bars Plaintiffs' claim, and that Plaintiffs failed to plead with particularity, lack merit.  *See supra* Sections II.H.2; II.H.3.a.

of this genre of consumer protection legislation."). Without clear state authority requiring Plaintiffs to plead a fiduciary relationship with Ford under the Illinois CFA, the Court here declines to legislate an additional element from the bench.

Moreover, Illinois courts have regularly found actionable CFA claims in like circumstances to this case, where a plaintiff brings suit against an automobile manufacturer for allegedly deceiving the consumer about safety risks. *See, e.g.*, *Lipinski v. Martin J. Kelly Oldsmobile, Inc.*, 325 Ill. App. 3d 1139, 1143 (Ill. App. Ct. 2001) (finding proper claim under Illinois CFA where plaintiff alleged that defendant knowingly concealed a defect in vehicle prior to sale, thus constituting an actionable omission); *Perona v. Volkswagen of Am., Inc.*, 292 Ill. App. 3d 59, 67-69 (Ill. App. Ct. 1997) (holding that plaintiffs properly stated a claim under the Illinois CFA in class action brought against car manufacturer for concealing safety risks); *Connick*, 675 N.E.2d at 594 ("Plaintiffs alleged that Suzuki was aware of the Samurai's safety problems, including its tendency to roll over and its inadequate protection for passengers. . . . Plaintiffs further alleged that Suzuki failed to disclose these defects."); *Totz v. Cont'l Du Page Acura*, 236 Ill. App. 3d 891, 903 (Ill. App. Ct. 1992) (holding that failure of a used car dealer to disclose a known history of vehicle damage was actionable under the Illinois CFA, regardless of the existence of a common law duty to disclose). The Court will deny Ford's motion to dismiss Plaintiffs' Illinois CFA claim.

### 5.    New Jersey

The New Jersey Consumer Fraud Act ("New Jersey CFA") declares it to be an unlawful practice for "any person" to use an "unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or

omission of any material fact . . . in connection with the sale or advertisement of any merchandise." N.J.S.A. § 56:8-2. "Thus, to state a claim under the CFA, a plaintiff must allege each of three elements: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." *N.J. Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 12 (App. Div. 2003); *see also Meshinsky v. Nichols Yacht Sales, Inc.*, 110 N.J. 464, 473 (1988). Under the CFA, "person" is defined broadly to include any natural person, partnership, corporation or company. N.J.S.A. § 56:8-1(d). Dismissal for failure to state a claim, "in the [New Jersey] CFA context, is . . . appropriately approached with hesitation." *Schering-Plough Corp.*, 367 N.J. Super. at 13 (citing *Seidenberg v. Summit Bank*, 348 N.J. Super. 243, 249-50 (App. Div. 2002)).

Ford does not dispute that Plaintiffs properly allege the first element, unlawful conduct under the New Jersey CFA, and this Court finds that Plaintiffs' allegations satisfy this prong. As the Court has already found, Plaintiffs allege fraudulent concealment of the E350 safety risks with regard to equitable tolling. For similar reasons, Plaintiffs properly allege fraudulent behavior in the context of the New Jersey CFA. However, again citing *Thiedemann*, 872 A.2d 794, Ford contends that Plaintiffs fail to allege an "ascertainable loss" as mandated by the statute. For the reasons expressed earlier, *see supra* Section II.D.2, the Court finds this argument unavailing at this juncture. *See Perkins v. DaimlerChrysler Corp.*, 383 N.J. Super. 99, 110-11 (App. Div. 2006) ("[U]nlike *Thiedemann*, where the court reviewed a summary judgment, we cannot affirm the dismissal of the complaint based upon plaintiff's failure to provide evidence of a diminution in value."); *Lamont v. OPTA Corp.*, No. 2226-05, 2006 WL 1669019, at *7 (N.J.

App. Div. June 16, 2006) ("There is nothing in *Thiedmann* that requires the pleading of an ascertainable loss element of a consumer Fraud Act cause of action with any special specificity.").

Ford also challenges Plaintiffs' New Jersey CFA claim for lack of a causal nexus between the violation and the resulting loss.  Specifically, Ford argues that Plaintiffs pursue a "fraud on the market" theory of recovery to prove causation.  (Ford Br. at 66-67.)  Under that theory, "plaintiffs who purchased securities are permitted to demonstrate that they were damaged simply because defendant engaged in behavior otherwise prohibited and there was a change in price." *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 392 (2007).  Yet, New Jersey courts "have rejected the fraud on the market theory as being inappropriate in any context other than federal securities fraud litigation." *Id.*; *see also Kaufman v. i-Stat Corp.*, 165 N.J. 94, 118 (2000).  Thus, to the extent Plaintiffs indeed allege their New Jersey CFA claim under a fraud on the market theory, this theory cannot survive.  *See Schering-Plough*, 367 N.J. Super. at 16 (determining, on motion to dismiss, that fraud on the market theory has "no place as a part of the proofs required of plaintiffs in the CFA context").

Here, however, Plaintiffs do not expressly, nor impliedly, plead such a theory.  Rather, the Court finds that Plaintiffs adequately allege causal nexus under circumstances distinguishable from fraud on the market.  Plaintiffs allege that "Ford's conduct herein is an unfair practice that has the capacity to, and did, deceive customers into believing that they were purchasing a vehicle that could be used safely, legally and practically to accommodate and transport 15 passengers." (Compl. ¶ 93.)  Construing Plaintiffs' allegations in a light most favorable to them, the Complaint charges that Ford's alleged violations led to Plaintiffs' damages by virtue of Ford's

misrepresentations and omissions directed at Plaintiffs as direct customers.  These facts differ

from fraud on the market, because under that theory, a plaintiff must allege "only that the price

charged" for the product at issue "was higher than it should have been as a result of defendant's

fraudulent marketing campaign[.]"  *Merck*, 192 N.J. at 392.  In other words, a party pursues fraud

on the market, or "price inflation theory," when it alleges that "the fact of advertising the

products caused the prices to rise both for the ones that are effective and for these, allegedly

ineffective products as well."  *Schering-Plough*, 367 N.J. Super. at 15, 16.  Yet here, Plaintiffs

allege that Ford's fraudulent acts and omissions caused Plaintiffs' damages in the form of

diminution in value and loss of use.  They do not claim that the price charged for the allegedly

unsafe vehicles was inflated by a broad advertising campaign.  Thus, unlike the plaintiffs in

*Merck* and *Schering-Plough*, Plaintiffs here do not pursue the price inflation theory, nor

otherwise allege circumstances associated with a "change in price" on the market.  *Merck*, 192

N.J. at 392.  Given the "hesitation" urged by New Jersey courts in approaching motions to

dismiss New Jersey CFA claims, and generally construing Plaintiffs' allegations with liberality,

the Court cannot find that Plaintiffs plead fraud on the market as a matter of law.  Accordingly,

for the reasons discussed with regard to Plaintiffs' California UCL claim, *supra* Section II.H.3,

Plaintiffs properly plead a causal relationship between their loss and Ford's alleged unlawful

conduct.

Ford last argues that Plaintiffs' New Jersey CFA claim is nevertheless barred by the

economic loss doctrine.  While the Supreme Court of New Jersey has excluded recovery in tort

for purely economic losses that instead may be pursued under contract or warranty claims, *see*

*Alloway v. Gen. Marine Indus., L.P.*, 695 A.2d 264, 275 (N.J. 1997), Ford cites no authority

extending this doctrine to bar recovery under the New Jersey CFA.  Indeed, in *Alloway*, the court expressly recognized "the Consumer Fraud Act, which provides generous protection to defrauded consumers[,]" as an example of a statutory enactment granting consumers the right to recover economic losses.  *Id.* at 274; *see also Payne v. Fujifilm U.S.A., Inc.*, No. 07-385, 2007 WL 4591281, at *10 (D.N.J. Dec 28, 2007) (rejecting defendant's economic loss doctrine argument and permitting New Jersey CFA and warranty claims to proceed); *First Valley Leasing, Inc. v. Goushy*, 795 F. Supp. 693, 699 (D.N.J. 1992) ("[T]he court believes that . . . the New Jersey Supreme Court would permit plaintiff to pursue its claims for tort [fraud and New Jersey CFA] damages against defendant" alongside UCC claims); *Coastal Group v. Dryvit Sys.*, 274 N.J. Super. 171, 180 (App. Div. 1994) ("Since this case must be remanded to the trial court to permit plaintiff to pursue its claims of fraud, misrepresentation and violation of the Consumer Fraud Act, we believe that the interests of justice will be served by also allowing plaintiff to amend its complaint to assert a claim against Dryvit under the UCC."); *Perth Amboy Iron Works v. Am. Home Assurance Co.*, 226 N.J. Super. 200, 226-27 (App. Div. 1988) (holding that commercial buyer of yacht could maintain Consumer Fraud Act and common-law fraud claims based on economic loss).

Moreover, the UCC expressly preserves a buyer's right to maintain an action in fraud. *See* N.J.S.A. § 12A:1-103 ("Unless displaced by the particular provisions of this Act, . . . the law relative to . . . fraud . . .  shall supplement [the UCC's] provisions."), *aff'd*, 118 N.J. 249 (1990); *see also Delgozzo v. Kenny*, 266 N.J. Super. 169, 183 (App. Div. 1993) (noting that under N.J.S.A. § 12A:1-103, the UCC does not "preempt" either common law fraud or CFA claims). Thus, Plaintiffs properly plead a violation of the New Jersey CFA, an ascertainable loss, and a

causal connection.  Accordingly, the Court concludes that Plaintiffs state a claim for relief under the New Jersey CFA.

### III.   CONCLUSION AND ORDER

For the foregoing reasons, Ford's motion to dismiss (Doc. No. 33) is GRANTED IN PART and DENIED IN PART.  Specifically,

1. Plaintiffs' First Cause of Action, breach of express warranty, is DISMISSED WITHOUT PREJUDICE as to the Alabama, Arkansas, and Illinois parties for failure to comply with notice requirements.  The First Cause of Action, however, remains at issue for Plaintiffs' California and New Jersey suits.

2. Plaintiffs' Second Cause of Action, breach of implied warranty, insofar as it is brought by the Alabama, Arkansas, and Illinois parties, is DISMISSED WITHOUT PREJUDICE for failure to comply with notice requirements. However, the Second Cause of Action remains pending as to Plaintiffs' California and New Jersey suits.

3. Ford's motion to dismiss Plaintiffs' Third Cause of Action, sounding in unjust enrichment, is DENIED.  Plaintiffs' Third Cause of Action shall endure as to all parties.

4. Plaintiff New Bethlehem's (Alabama) Fourth Cause of Action, brought under the Alabama DTPA, is DISMISSED for lack of standing.

5. Plaintiff Eleventh Street's (Arkansas) Fourth Cause of Action, brought under the Arkansas DTPA, is DISMISSED for lack of cognizable damages.

6.       Plaintiff Greater All Nation's (California) Fourth Cause of Action, insofar as it is brought under the California CLRA theory, is DISMISSED for lack of standing. However, Plaintiff Greater All Nation's Fourth Cause of Action with regards to the California UCL and California FAL, remains in contention.

7.       Ford's motion to dismiss Plaintiff Pentecostal Temple's (Illinois) Fourth Cause of Action, brought under the Illinois CFA, is DENIED. Pentecostal Temple's Fourth Cause of Action remains at issue.

8.       Ford's motion to dismiss Plaintiffs' Fourth Cause of Action, insofar as it sounds in the New Jersey CFA, is DENIED. Plaintiffs' New Jersey CFA claim endures.

Dated: September 3, 2008
Newark, New Jersey

/s/ Harold A. Ackerman,
U.S.D.J.

59